STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, Nevada 89511
Telephone: (775) 786-7600
E-Mail: steve@harrislawreno.com
Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

\* \* \* \* \*

IN RE:

JULIANA MAYER LOZA,

Debtor.

_____/

Case No. 21-50466-btb
(Chapter 13)

**DEBTOR'S MOTION FOR
RECONSIDERATION OF ORDER [DE
17], TO AMEND JUDGMENT, FOR
NEW HEARING, OR
ALTERNATIVELY, FOR ADDITIONAL
FINDINGS PURSUANT TO
FRBP 9023, 9024 AND 7052**

Hearing Date:    TBD
Hearing Time:
Est. Time:        30 minutes
Set by:            Calendar Clerk

JULIANA MAYER LOZA ("Debtor"), by and through her attorney, STEPHEN R. HARRIS, ESQ., of HARRIS LAW PRACTICE LLC, hereby files her DEBTOR'S MOTION FOR RECONSIDERATION OF ORDER [DE 17], TO AMEND JUDGMENT, FOR NEW HEARING, OR ALTERNATIVELY, FOR ADDITIONAL FINDINGS PURSUANT TO FRBP 9023, 9024 AND 7052 ("Motion"). This Motion is based on the papers and pleadings on file in this case of which the Court may take judicial notice under Fed. R. Evid. 201, the following points and authorities and any oral argument presented by counsel.

## BACKGROUND

1.    Debtor filed a voluntary petition for Chapter 13 bankruptcy relief on June 22, 2021, at approximately 6:18 p.m. PDT (*See* DE 1).

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

1

2.      At the time the Debtor's case was filed, she owned a legal, equitable, and beneficial interest in the real property located at 429 Panorama Drive, Stateline, Douglas County, NV 89449 ("Real Property").

3.      The Debtor, her deceased husband, Ray Warren Exley, M.D., and their pension plan, Athena Medical Group Defined Contribution Pension Plan and Trust Number Three ("Athena"), all have a long and tortured litigation history with Leverty & Associates Law Chtd., a Nevada corporation ("Leverty") and in particular one of its principals, Vernon E. Leverty, Esq. ("Mr. Leverty"). As a result, there were, and are, several state and federal civil actions involving Leverty and the Debtor in her capacity as Co-Trustee or Special Administrator.

4.      Despite having actual notice of the bankruptcy petition and knowledge that the Debtor had a legal, equitable, and beneficial interest in the Real Property individually and in her various capacities because of her roles as trustee, special administrator, and beneficiary, Leverty and Allied Foreclosure Services ("Allied") willfully foreclosed on the Real Property on June 23, 2021. The foreclosure sale violated the 11 U.S.C. § 362 automatic stay which was immediately in force and effect upon commencement of this Chapter 13 case.

5.      As a result of Leverty and Allied's blatant and willful violation of the 11 U.S.C. § 362(a) automatic stay, the Debtor had to file an emergency DEBTOR'S MOTION FOR SANCTIONS AGAINST LEVERTY & ASSOCIATES LAW, CHTD. AND ALLIED FORECLOSURE SERVICES FOR WILLFUL VIOLATION OF THE §362(a) AUTOMATIC STAY AND TO DECLARE FORECLOSURE SALE VOID AB INITIO (DE 7) ("Sanctions Motion"). The Debtor also sought a hearing on the Sanctions Motion on shortened time, because of the urgency in determining that the foreclosure sale was void. As a result, this Court entered its Order Shortening Time (DE 11), scheduling the hearing on the Sanctions Motion for June 25, 2021, at 10:00 a.m. and making any oppositions due by 9:00 a.m. on June 25, 2021. *See* DE 11. On June 25, 2021, Leverty and Allied filed their Opposition to the Sanctions Motion (DE 14).

6.      On June 25, 2021, at 10:00 a.m., this Court held the hearing on the Sanctions Motion and listened to oral argument for and against the relief requested. The Court did not make a ruling at the time and took the matter under advisement. A transcript of the June 25, 2021,

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

2

hearing on the Sanctions Motion is attached hereto as **Exhibit A** ("Transcript").

7.     On July 23, 2021, the Court then entered its ORDER REGARDING DEBTOR'S MOTION FOR SANCTIONS AGAINST LEVERTY & ASSOCIATES LAW, CHTD. AND ALLIED FORECLOSURE SERVICES FOR WILLFUL VIOLATION OF THE §362(a) AUTOMATIC STAY AND TO DECLARE FORECLOSURE SALE VOID AB INITIO (DE 17) ("Order"). The Order denied the Sanctions Motion, holding that at the time of the Debtor's bankruptcy filing on June 22, 2021, title to the Real Property was in the name of Ray Warren Exley, M.D., and that the Debtor had no legal or equitable interest in the subject Real Property at the time of the bankruptcy filing and/or foreclosure sale. The Debtor now seeks reconsideration of the Court's Order, an amended judgment, a new hearing, or alternatively, additional findings so that the Debtor may have a record of the Court's reasoning for appeal. The relief is requested under Fed. R. Bankr. P. 9023, 9024, and 7052.

8.     The basis for this Motion is an error of law, mistake, to present new evidence, and to prevent manifest injustice, because if the Court found that the Real Property was held in the name of Ray Warren Exley, M.D., there is no doubt that the Debtor held a legal and equitable interest in the Real Property under 11 U.S.C. § 541(a)(5)(A) as Dr. Exley's sole beneficiary. On the Petition Date, the Debtor also held legal and equitable interests in the Real Property in her various other capacities, including all community property interests in the Real Property under 11 U.S.C. § 541(a)(2) as Dr. Exley's spouse of several years in Nevada and California—both community property states.

9.     The Debtor appreciates that the Sanctions Motion was heard on extremely short notice because of the urgency in seeking an order to void the foreclosure sale. But if the Court believed the Real Property was held in Dr. Exley's name rather than in the Debtor's name as she contended, then an evidentiary hearing should have been scheduled if it was not self-evident that the Debtor has a legal and equitable interest in the Real Property as Dr. Exley's spouse, widow, and beneficiary.

10.     For these reasons, the Debtor respectfully requests an amended order, new hearing, or additional findings explaining the Court's reasoning as to how the Debtor does not have a legal

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

3

1    and equitable interest in inherited property and community property subject to the automatic stay

2    when 11 U.S.C. §§ 541(a)(2), (a)(5)(A), and 11 U.S.C. § 362(a) expressly say otherwise.

3                                    **LEGAL ARGUMENT**

4        **A. Reconsideration and amendment of the Order is warranted due to an error of law,**

5            **mistake, new evidence, and to prevent manifest injustice.**

6        The Federal Rules of Civil Procedure, as incorporated by the Federal Rules of Bankruptcy

7    Procedure do not per se recognize a motion for reconsideration. *Captain Blythers, Inc. v.*

8    *Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 539 (B.A.P. 9th Cir. 2004). However,

9    the rules recognize a motion to alter or amend a judgment, Fed. R. Civ. P. 59, Fed. R. Bankr. P.

10   9023, and a motion for relief from judgment Fed. R. Civ. P. 60, Fed. R. Bank. P. 9024. Courts

11   will therefore consider motions under FRBP 9023 or 9024 as "motions for reconsideration." *See*

12   *In re Walker*, 332 B.R. 820, 826–832 (Bankr. D. Nev. 2005). Wright, Miller & Kane have set

13   forth four grounds upon which a motion under Rule 59 may be granted:

14       First, the movant may demonstrate that the motion is necessary to correct manifest

15       errors of law or fact upon which the judgment is based. Second, the motion may

16       be granted so that the moving party may present newly discovered or previously

17       unavailable evidence. Third, the motion will be granted if necessary to prevent

18       manifest injustice….Fourth, a Rule 59(e) motion may be justified by an intervening

19       change in controlling law.

20   *Id.*, citing, 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE,

21   FEDERAL PRACTICE & PROCEDURE: CIVIL 2D §2810.1 (1995).

22       Other courts have likewise agreed that a motion to reconsider under FRBP 9023 must rely

23   on one of three major grounds: "(1) an intervening change in controlling law; (2) the availability

24   of new evidence; or (3) the need to correct clear error [of law] or prevent manifest injustice." *In*

25   *re Integrated Health Servs.*, 258 B.R. 96 (Bankr. D. Del. 2001) (quoting *Natural l Resources*

26   *Defense Council v. United States Envtl. Protection Agency*, 705 F. Supp. 698, 702 (D.D.C. 1989);

27   *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 908 (3d Cir. 1985)) ("The purpose of a motion for

28   reconsideration is to correct manifest errors of law or fact or to present newly discovered

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

4

1    evidence"); *Dentsply Int'l., Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 417 (D. Del. 1999)

2    ("[motions for reargument] should be granted sparingly and should not be used to rehash

3    arguments already briefed or allow a 'never-ending' polemic between the litigants and the

4    Court").

5        Here, the Debtor was not aware before she filed her Sanctions Motion that Leverty and

6    Allied were going to claim the Real Property was still held in Dr. Exley's name because that was

7    not the reason their counsel gave Debtor's counsel as their excuse for refusing to postpone the

8    foreclosure sale on June 23, 2021, nor is said excuse consistent with their filings in other cases

9    regarding the subject property.

10        Indeed, after the foreclosure sale, attended by Patrick Leverty, Esq. of the Leverty Law

11    Firm and Debtor's co-counsel, Gene Kaufman, Esq., the two spoke wherein Mr. P. Leverty was

12    adamant that Leverty and Allied did not violate the automatic stay because the property was not

13    assigned to the Debtor individually, despite Quitclaim Deeds recorded on June 21, 2021, due to

14    issues of the order in which the deeds were signed[1].

15        Then suddenly in its Opposition on the date of the hearing of the Sanctions Motion,

16    Leverty instead argued that title to the Real Property was still legally held in Dr. Exley's name

17    rather than being held by Athena, a qualified ERISA Pension Plan and Trust which was owner as

18    well as holder of a Deed of Trust against the property, which the recorded Quitclaim Deeds sought

19    to rectify.

20        However, if the issue was that Dr. Exley was the legal owner of the Real Property, then

21    the Debtor's legal and equitable interest in the Real Property was even more self-evident because

22    the Debtor is Dr. Exley's surviving widow in a community property state.

23        In light of the fact that Leverty was now contending at the June 25 hearing that the Real

24    Property still belonged to Dr. Exley, the Debtor formally lodged Dr. Exley's wills on July 22,

25    2021, with the Ninth Judicial District Court, Douglas County, Nevada, in the case entitled *In the*

26    _____

[1]. Leverty contended the transfer from Exley's estate to Athena and then to Loza was invalid solely because of the
**order in which the documents were signed.** Specifically, Leverty contended the Quitclaim Deed granting the
27    property from Dr. Exley's Estate to Athena was not signed until after the Quitclaim Deed granting the Real
Property from Athena to Debtor, and thus Athena did not hold any interest to transfer because Athena did not
28    accept its interest in the Real Property until the next day after it had assigned the rights to Debtor. *See Sanctions
Motion* at 6:4–16. This contention is belied by NRS 111.160 (after-acquired title passes to grantee).

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

5

1    *Matter of the Estate of Ray Warren Exley, Deceased*, Case No. 20-PB-00129. *See Notice of*

2    *Lodged Wills* attached hereto as **Exhibit B**. This evidence was not available at the time of the

3    hearing on the Sanctions Motion because the wills had not yet been lodged.

4          The Debtor also owns a community interest in the Real Property. In Nevada, all property

5    acquired after marriage by either spouse or both spouses are community property unless otherwise

6    provided. NRS 123.220. And except as otherwise provided, upon the death of either spouse an

7    undivided one-half interest in the community property is the property of the surviving spouse and

8    his or her sole separate property. NRS 123.250. Thus, even without knowing the details of Dr.

9    Exley's wills which named the Debtor as his sole beneficiary, the Debtor owned some presumed

10   community property interest in the Real Property. This is so even if some interest in the Real

11   Property may have been Dr. Exley's separate property before the marriage because community

12   earnings were presumed to be used to maintain the property during the parties' marriage.

13         None of the parties dispute that the Debtor and Dr. Exley were married or that they resided

14   in both Nevada and/or California, which are both community property states. And the subject

15   Real Property is in Nevada. Therefore, if the Court determined that the Real Property was legally

16   titled in Dr. Exley's name, then at a minimum the Court was required to next determine what kind

17   of community property or other beneficial interest the Debtor had in the Real Property as Dr.

18   Exley's widow and presumptive heir. But the Court's Order does not explain its reasoning for

19   how it could conclude that the Real Property was held in Dr. Exley's name on the Petition Date,

20   but that the Debtor did not have any legal or equitable interest in the Real Property.

21         Due to Leverty's extensive litigation history with Exley, Loza and Athena, Leverty was

22   well informed as to the status of Dr. Exley and Ms. Loza and their Real Property. For example,

23   on March 12, 2021, Leverty filed a Writ of Execution in Nevada U.S. District court case 3:17-cv-

24   0175. In Leverty's Motion for a Writ of Execution  [ECF 181-1 case 3:17-cv-0175], Leverty

25   states:

26             "[A]ction, in favor of Leverty & Associates Law Chtd. as Judgment

27             Creditor and against **Ray Warren Exley,** deceased and **Juliana Loza**

28             **as Judgment Debtors. . ."** [ECF 181-1 at 1:18-19 case 3:17-cv-0175 ]

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

6

(emphasis added).

> **Said assets include real property of said <u>debtors</u>,** including Douglas
> County Assessor Parcel Number 1318-25-111-017, real property
> situated in the County of Douglas, State of Nevada, commonly known
> by its physical address of 429 Panorama Drive, Stateline, Nevada
> 89449. [ECF 181-1 at 3:3-5 case 3:17-cv-0175 ] (emphasis added).

Thus, when Leverty asked the U.S. District Court to include the Real Property to satisfy its judgment which a Ninth Circuit appellate ruling[2] had excluded, Leverty was unconcerned with differentiating between Loza and Exley, stating they were both **"judgment debtors,"** specifically with respect to the subject Real Property. After making those judicial admissions, Leverty cannot now claim that the Debtor, Ms. Loza, has no interest in the Real Property.

## B. The Court impermissibly shifted the burden of proof on the Debtor to invoke the automatic stay.

Upon the filing of a bankruptcy case, § 362(a) imposes an automatic stay on all creditor collection activities against the debtor. *See* 11 U.S.C. § 362(a). Section 362(a) provides in part: "A petition filed under section 301, 302 or 303 . . . operates as a stay, applicable to all entities, of . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. . . ." The stay likewise applies to "any act to . . . enforce any lien against property of the estate." and "any act to . . . enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before commencement of the case." 11 U.S.C. §§ 362(a)(4) and (5).

As the Debtor stated in her Sanctions Motion, the purpose of the automatic stay is to give the debtor a breathing spell from his or her creditors, to stop all collection efforts, harassment, and foreclosure actions. *First Nat'l Bank of Anchorage and Alaska Title Guaranty Co. (In re Roach )*, 660 F.2d 1316, 1318 (9th Cir. 1981) (citations omitted). And "functionally the automatic

---

[2] The Ninth Circuit affirmed the district court's order expunging the 2018 lis pendens recorded by Leverty against the subject Real Property and rejected the assertion that the district court's order enforcing the settlement agreement with Exley gave Leverty a legal interest in the Real Property. [*See* ECF 178 case 3:17-cv-0175]

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

7

stay is a combination of a temporary restraining order and a preliminary injunction." *In re Henry*, 266 B.R. 457 (Bankr. C.D. Cal. 2001). But importantly, the automatic stay differs from a temporary restraining order and a preliminary injunction in six ways: (1) it is automatic upon the filing of a bankruptcy petition and does not require a court order; (2) **a debtor is not required to carry any burden of proof or provide any level of evidence to obtain it**; (3) a creditor is not entitled to be heard, or even to be given notice, before it is imposed; (4) it requires no bond; (5) it is binding on all creditors, whether or not they have notice of it, and lack of notice is chiefly a defense to punitive damages. *Id.* (emphasis added).

It is impossible to know from the Court's Order what its reasoning was for finding that the automatic stay did not protect the Real Property, especially when the Debtor maintained that she had a legal and equitable interest in the Real Property in her various roles regardless of who held legal title. *See Sanctions Motion* at 3:12–15, 6:25–28. The Debtor's co-counsel, Mr. Kaufmann, also advised the Court at the hearing that the Debtor had an equitable interest in Dr. Exley's estate as his widow. *See Transcript* at 53:16–21. What is more, Debtor's counsel also cited Ninth Circuit binding precedent holding that contingent interests are property of the estate under § 541. *See Transcript* at 46:22–47:11.

It is true that Leverty's counsel, Mr. Rinehart, argued that the Debtor had only filed a "bare bones petition" and that the Court "must have actual documentary evidence for Debtor Loza to claim an interest." *See Transcript* at 29:19–23. But that is not correct because the Debtor does not sustain any burden of evidence for the § 362 stay to be automatically imposed. Mr. Rinehart also cited no legal authority to support his pronouncement—either in oral arguments or in the Opposition. *See Opposition* at 12:5–11. But even if it were true that the Debtor was required to provide evidence for the automatic stay to apply, then the Court should have scheduled an evidentiary hearing before issuing a ruling.

Also importantly, Leverty admitted that the Debtor was special administrator of Dr. Exley's estate. *See Transcript* at 21:2–4. This in and of itself gives the Debtor an equitable interest in the Real Property, but Leverty argued that the stay did not apply because the Debtor "filed bankruptcy in her personal name, not in her appointed role as a special administrator." *See*

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

8

1    *Opposition* at 12:21–15. But that argument misunderstands bankruptcy law. When individuals

2    file bankruptcy, all of their legal and equitable interests become property of the estate under 11

3    U.S.C. § 541 unless specifically excluded. Debtors do not file bankruptcy in their "appointed

4    roles." Moreover, the automatic stay protects the debtor and property of the debtor even if it is

5    not property of the estate under § 541. *See* 11 U.S.C. §§ 362(a)(1), (2), (5), (6) and (7).

6          Finally, Debtor's counsel pointed out at the hearing that Leverty foreclosed on a note and

7    deed of trust in which Ray Warren Exley, M.D. Nevada Family Trust was the obligor, and the

8    Debtor was the surviving successor trustee. *See Transcript* at 46:11–21. Thus, the act to enforce

9    the note and deed of trust was a proceeding or claim against the Debtor, in her capacity as a

10   trustee, in violation of 11 U.S.C. §§ 362(a)(1) and (6).

11         In summary, it appears that perhaps the Court was persuaded by Leverty's allegations

12   about purported fraudulent transfers of the Real Property based on a state court default judgment.

13   Indeed, Mr. Rinehart argued, without providing legal authority, that a "default judgment satisfies

14   the actual litigated basis requirement for the judgment to have preclusive effect." *See Transcript*

15   at 23:6-9. But that is not correct.

16         A United States Bankruptcy Court determines the issue-preclusive effect of a state court

17   judgment by the law of the court that rendered the judgment. *See Gayden v. Nourbakhsh (In re*

18   *Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995); *In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir.

19   2003). In Nevada, issue preclusion prevents relitigation of an issue decided in an earlier action,

20   even though the later action is based on different causes of action and distinct circumstances. *Five*

21   *Star Capital Corp. v. Ruby*, 194 P.3d 709 (2008). Four factors must be met for issue preclusion

22   to apply:

23              (1) the issue decided in the prior litigation must be identical to the issue

24              presented in the current action; (2) the initial ruling must have been on the

25              merits and have become final; (3) the party against whom the judgment is

26              asserted must have been a party or in privity with a party to the prior litigation;

27              and (4) the issue was actually and necessarily litigated.

28   *Id*. at 713 (internal quotation and citation omitted). Issue preclusion only applies to issues that

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

9

1   were *actually and necessarily litigated* and on which there was a final decision on the merits.

2   *Howard v. Sandoval (In re Sandoval)*, 232 P.3d 422 (Nev. 2010), citing, *Five Star Capital Corp.*

3   *v. Ruby*, 194 P.3d at 713 (emphasis added).

4        Some courts interpret the requirement of "actually litigated" to mean a fair opportunity to

5   litigate, *Cantrell*, 329 F.3d at 1124; *Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 627 A.2d 374,

6   380 (Conn. 1993), abrogated on other grounds by *Macomber v. Travelers Property & Cas. Corp.*,

7   261 Conn. 620, 804 A. 2d 180 (Conn. 2002), or hold that if the court made express findings, then

8   the issues were actually litigated and there is no requirement that the party have participated in

9   the case. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) (the record must

10  "show an express finding upon the allegation for which preclusion is sought").

11       However, Nevada's *Five Star* requirement that an issue be "actually and necessarily

12  litigated" before issue preclusion will attach recognizes that there are a number of legitimate

13  reasons why a party  may not have previously litigated an issue.   For those reasons, the Nevada

14  Supreme Court has concluded that Nevada's issue-preclusion test requires that an issue be

15  "actually litigated" and not simply that a party had an opportunity to litigate the issue.  *Howard*

16  *v. Sandoval*, 232 P. 3d at 425. For that reason, the default judgment was not actually litigated and

17  the issues there about purported fraudulent transfers have no preclusive effect in this bankruptcy

18  case.

19       But even if the state court default judgment had a preclusive effect and was a possible

20  basis for relief from stay because of a purported scheme to hinder or defraud creditors under 11

21  U.S.C. § 362(d)(4), such relief still first requires a motion, notice, and hearing. *See* 11 U.S.C. §

22  362(d) ("On request of a party in interest and after notice and a hearing. . . ."). Yet Leverty never

23  filed a motion for relief from stay under § 362(d)(4). Instead, <u>Leverty became his own self-</u>

24  <u>appointed bankruptcy judge</u> ruling in his self-interest, deciding that Leverty and Allied should

25  proceed with the foreclosure sale in spite of the Debtor's bankruptcy filing and the necessity of a

26  decision by an *actual bankruptcy Judge* being required.

27       Indeed, this is the crux of Debtor's Sanctions Motion. If Leverty did not believe the

28  automatic stay was applicable, or that it was entitled to relief from stay for whatever reason, it

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE:  (775) 786-7600

10

1  was required to first seek an order from this Court and not pursue his preferred form of vigilante

2  justice.

3       Now, this Court's Order was based on errors of law, mistake, and rewards a creditor who

4  blatantly disregarded the bankruptcy automatic stay. If the Order is allowed to stand, it will result

5  in a manifest injustice and undermines this Court's authority with all other creditors.

6       **C. Alternatively, if the Court chooses to stand by its Order, then the Debtor seeks**

7       **additional findings to include the Court's reasoning to have a proper record for**

8       **appeal.**

9       Ultimately, the Debtor will of course respect this Court's decision if this Motion is denied,

10  and the Court decides to stand by its Order. But because the Court did not include any findings

11  on the record to explain the basis for its ruling, the Debtor requests amended or additional findings

12  from the Court pursuant to Fed. R. Bank. P. 7052. Rule 7052 applies to both judgments and orders

13  under Rule 5003(a), and the Debtor is filing this motion seeking amended or additional findings

14  within the required fourteen days after entry of the Order.

15       **<u>CONCLUSION</u>**

16       Based on the foregoing, the Debtor respectfully requests that this Court reconsider its

17  previously entered Order (DE 17) for all the reasons set forth above and amend its Order to grant

18  the relief requested by the Debtor in her Sanctions Motion as follows: (1) Compelling Leverty

19  and Allied to cancel any trustee deeds issued at the Real Property foreclosure sale; (2) finding

20  that the Real Property foreclosure sale was conducted in violation of the 11 U.S.C. § 362(a)

21  automatic stay and is void and of no effect; (3) finding that Leverty and Allied knowingly and

22  willfully violated  the automatic stay; (4) awarding Debtor emotional distress damages in the

23  amount of $50,000; (5) awarding Debtor punitive damages in the amount of $50,000, or more;

24  (6) awarding Debtor her actual attorneys' fees and costs incurred in recovering her Real Property,

25  estimated at $10,000.00, to be determined after this Motion is fully adjudicated. Alternatively, the

26  Debtor respectfully requests that this Court hold a new hearing so that the parties may present

27  evidence as to the Debtor's interests in the Real Property, or that the Court provide additional

28  findings explaining the basis for its ruling, and for such other relief as this Court deems proper.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

11

1    DATED this 6th day of August 2021.

2

3                                  STEPHEN R. HARRIS, ESQ.
                                   HARRIS LAW PRACTICE LLC
4
                                   /s/ Stephen R. Harris
5
                                   _____
6
                                   Attorney for Debtor
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT A

25
26
27
28

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (RENO)

IN RE:                           .    Case No. 21-50466-btb
                                 .    Chapter 13
JULIANA MAYER LOZA,              .
                                 .    300 Booth Street
                Debtor.          .    Reno, NV  89509
                                 .
                                 .    Friday, June 25, 2021
. . . . . . . . . . . . . . .    .    10:09 a.m.


     TRANSCRIPT OF MOTION FOR SANCTIONS FOR VIOLATION OF THE
AUTOMATIC STAY AND TO DECLARE FORECLOSURE SALE VOID AB INITIO
FILED BY STEPHEN R. HARRIS ON BEHALF OF JULIANA MAYER LOZA [7]
  BEFORE THE HONORABLE BRUCE T. BEESLEY (VIA TELECONFERENCE)
            UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

For the Debtor:           Harris Law Firm
                          By:  STEPHEN R. HARRIS, ESQ.
                          6151 Lakeside Drive, Suite 100
                          Reno, Nevada  89511
                          (775) 786-7600

For Leverty &             Leverty & Associates Law Chartered
Associates Law            By:  JESS P. RINEHART, ESQ.
Chartered and             832 Willow Street
Automatic Fund            Reno, Nevada  89501
Transfer Services dba     (775) 624-5276
Allied Trustee
Services:




Audio Operator:           Illuminada Starzyk, ECR


Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46048
                          (855) 873-2223
                          www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

1          (Proceedings commence at 10:09 a.m.)

2          THE COURT:  The first, and I think only matter we

3    have on the ten o'clock calendar is the case of Juliana Mayer

4    Loza, case number 21-50466.  Appearances please.

5          MR. HARRIS:  Your Honor, Steve Harris.  I represent

6    the debtor, Juliana Loza, in this Chapter 13.  Ms. Loza is on

7    the telephone and also, her state court counsel, Gene Kaufmann,

8    Esq., is also on the phone.

9          THE COURT:  Thank you.  Mr. Kaufmann, welcome.

10          MR. KAUFMANN:  Good morning, Your Honor.

11          MR. RINEHART:  Good morning, Your Honor.  This is

12    Jess Rinehart, counsel for Leverty and Associates Law Chartered

13    and Automatic Fund Transfer Services dba Allied Trustee

14    Services , a Seattle corp doing business (audio interference).

15          THE COURT:  So I --

16          MR. HARRIS:  Your Honor --

17          THE COURT:  Wait.  Just wait.

18          MR. HARRIS:  Your Honor --

19          THE COURT:  Just one -- just a second.  Hang on.

20          Sir, could you please say that again.  It was kind of

21    garbled.  I'm sure that's not your fault --

22          MR. RINEHART:  Yes, Your Honor.

23          THE COURT:  Say again.  What's your name, sir?

24          MR. RINEHART:  Yes.  Jess Rinehart, counsel (audio

25    interference) Associates Law Chartered and Automatic Funds

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

3

1  (audio interference) Services, a Seattle corp doing business as
2  Allied Trustee Services.
3          MR. HARRIS:  Your Honor, this is Steve Harris.  I
4  think there's a problem with Mr. Rinehart because the speech is
5  being interrupted on the phone or the phone connection.
6          THE COURT:  Mr. Rinehart, let's hang on here for a
7  second and see if we can get you a better --
8          THE CLERK:  Thank you, Your Honor.  It'll be on his
9  end as all the other callers are clear.
10          THE COURT:  Okay.
11          THE CLERK:  If he'd like -- it -- Mr. Rinehart, are
12  you on a cell phone?
13          MR. RINEHART:  No, I'm on a land line.
14          THE CLERK:  Okay.
15          MR. RINEHART:  And I'm not on speaker phone.  I have
16  it against my --
17          THE CLERK:  Let's have you --
18          MR. RINEHART:  -- my phone --
19          THE CLERK:  -- let's have you disengage and redial in
20  and see if we can't get a better line.
21          MR. RINEHART:  Okay.
22          THE CLERK:  And we'll wait for you to join us before
23  we continue with any further appearances.
24          MR. RINEHART:  Okay.  Thank you.
25          THE COURT:  Thanks.

4

1      (Pause)

2           MR. LEVERTY:  While we're waiting for Mr. Rinehart to

3  join us, this is Gene Leverty.  I also wanted to make known my

4  appearance.  I am in trial in Las Vegas, and the trial's

5  ongoing as we speak.  I had to step out to participate in this

6  hearing, but I wanted the Court to know that I'm on the line.

7  Thank you.

8           THE COURT:  Thank you very much.

9      (Pause)

10          MR. RINEHART:  Your Honor, this is Jess Rinehart.

11 I'm back.  I don't know if it's any better on that side or if

12 we're cutting out.  I guess (audio interference) try cell phone

13 if Your Honor would prefer.

14          THE CLERK: Okay.  Let's try the cell phone --

15          THE COURT:  Let's try the cell phone, because we're

16 not getting a very good feed from you.

17          MR. RINEHART:  Okay.  I'll (audio interference)

18 myself.  Thank you.

19     (Pause)

20          MR. RINEHART:  This is Jess Rinehart.

21          THE COURT:  Much, much better, sir.  Thank you.  Go

22 ahead.

23          MR. RINEHART:  Well, of course.

24          THE COURT:  Okay.  And then Mr. Leverty.

25     (No audible response)

1          THE COURT:  Okay.

2          MR. LEVERTY:  Yes, Your Honor.

3          THE COURT:  All right.  Mr. Harris, please go ahead.

4          MR. HARRIS:  Yes.  Your Honor, Steve Harris

5     representing the debtor.  This is the debtor's motion for

6     sanctions under -- it's Document Number 7.  It was filed

7     yesterday morning around 11:10 a.m.  And the reason for the

8     motion is that there was a trustee's foreclosure sale conducted

9     by Allied Foreclosure Services or whatever there name is now.

10    Seattle -- apparently, they're Seattle Automatic Funds Transfer

11    Services, a Seattle corporation, dba Allied Trustee Service.

12    And Mr. Leverty or his law firm is the assignee of a deed of

13    trust, and they were -- had a foreclosure sale set for 1:00

14    p.m. in Douglas County on June 23rd.  And so to stop that

15    foreclosure sale, the note that Mr. Leverty was foreclosing on

16    as a beneficiary, he was owed approximately 250,000, give or

17    take.  The property is located in Stateline.  It's on -- in the

18    Kingsbury Grade area.  It's worth approximately $1.4 million.

19    The market is extremely hot up in the Tahoe area.  And in order

20    to preserve the equity in the property, my client as a special

21    administrator of -- for the -- for her late husband's estate,

22    Dr. Exley, executed the quit claim deed to a trust, Athena

23    Trust.  And Athena Trust then, in turn, executed a quit claim

24    to Ms. Loza personally, and these documents were recorded on

25    the evening of June 22nd.  And on that -- several hours after

6

1  the recording of these quit claim deeds, I filed a Chapter 13
2  on behalf of Ms. Loza to preserve -- to impose the stay and to
3  preserve this property for payment to all creditors of Ms. Loza
4  and any valid creditors of the estate.  We did not want this
5  property to be lost at a foreclosure sale for a reduced value.
6          On the evening of Tuesday night, I sent emails to
7  Mr. Leverty's associates and attorneys in his office.  I also
8  sent an email to Allied Foreclosure Services noticing and
9  giving them notice of the bankruptcy filing.  I included the
10 petition and the quit claim deeds and in fact, the -- I also
11 had communication by email with Mr. Gin (phonetic) on Wednesday
12 morning before the sale was conducted at 1 p.m.
13         Notwithstanding that, notwithstanding the bankruptcy
14 file and the imposition of the automatic stay, the Allied
15 Foreclosure Services, as the trustee, foreclosed on the
16 property and Mr. Kaufmann was at the trustee's sale down in
17 Minden and warned everybody of the bankruptcy filing and that
18 it was in violation of the stay.
19         I filed the motion yesterday to basically ab initio
20 the sale at the trustee's foreclosure sale -- to void the sale
21 to the buyer.  I believe the buyer was Kamma, K-A-M-M-A, LLC,
22 and to void that sale so we can properly sell this property,
23 quiet title to the property, and not only pay Mr. Leverty his
24 note and deed of trust amount owing but also pay him the
25 attorneys' fees and costs that he's rightfully owed.

7

1    And so based on the violation of the stay, I filed
2  the debtor's motion for sanctions alleging a wilful violation
3  of the automatic stay.

4    My primary goal in filing this motion is to declare
5  the trustee's foreclosure and any trustee's deed emanating
6  therefrom as void ab initio so that we can go back to square
7  one and try to sell this property for the benefit of all
8  creditors.

9    I've also asked for damages but I have a -- we can
10  maybe get to that part -- second part after the Court hears
11  from Mr. Leverty or Allied Foreclosure Services.  Thank you.

12    THE COURT:  Thank you.  Who's next?

13    MR. RINEHART:  Your Honor, this is Jess Rinehart.  I
14  know I was cutting out earlier, so I'm here on behalf of
15  Leverty & Associates Law Chartered and Automatic Fund Transfer
16  Services, a Seattle corp, doing business as Allied Trustee
17  Services.

18    This -- Your Honor, this is a -- not a simple,
19  straight forward violation of the stay as Debtor Lozer -- Loza
20  motion suggests in (indiscernible) portrayed on the phone.
21  There's a significant history involved that we must get into to
22  fully apprise the Court.

23    But before I dive into my opposition and that
24  history, I'd like -- I would be remiss if I did not inform the
25  Court that I am working on a couple hours sleep.  Our office

8

1   was notified at 4 p.m. yesterday that an opposition was due to

2   the Court by nine o'clock this morning.  I have concerns about

3   due process that our office had a fair opportunity to brief

4   this matter before this morning's hearing.  That being said,

5   I'd like to start to get into that history.  Like I said, it's

6   quite extensive and it portrays a whole different situation

7   than a simple stay.

8           This matter before the Court is based upon debtor's

9   ongoing and continued fraud executed to avoid paying for legal

10  services rendered.  The Ninth Judicial District Court has

11  already entered a judgment finding four separate instances of

12  fraudulent transfer of this subject property that they were

13  intended to hinder, delay, or defraud creditors of Ray Warren

14  Exley, MD, including Leverty & Associates.

15          The latest fraudulent transfers -- there's two of

16  them -- by Debtor Loza or the attempted filings of two quit

17  claim deeds on a parcels of property just three hours prior to

18  the filing of the bankruptcy matter in order in an attempt to

19  transfer Ray Warren Exley, MD's property away from known

20  creditors and into Ms. Loza's bankruptcy estate.  Simply put,

21  the debtor is defrauding this Court with her bad faith failing

22  for an improper purpose and once gain, debtor has attempted to

23  transfer real properties in order to hinder, delay, or defraud

24  creditors of Ray Warren Exley, MD.  Their (indiscernible)

25  should not be able to collaterally attack a valid Nevada state

9

1    court judgment through the commencement of a bad faith,

2    improper filing.

3          Now to get into a little bit of history.  Like I

4    said, Your Honor, it's quite extensive.  This matter started by

5    commencing --

6          THE COURT:  So just go slowly.  I can't write as fast

7    as you speak.

8          MR. RINEHART:  Oh, of course, Your Honor.

9          THE COURT:  Go ahead.

10         MR. RINEHART:  Your Honor, commencing -- okay.  Your

11    Honor, commencing from about April 2014 through about February

12    2017, Ray Warren Exley was a client of our office, Leverty &

13    Associates.  We represented Mr. Exley and provided legal

14    services in a property ownership lawsuit concerning the subject

15    property.  What was going on was him and his ex-wife were named

16    on the property.  It was -- it had been the property in their

17    name for quite a while.  What ended up happening, this is a

18    matter before the Ninth Judicial District Court in -- for

19    Douglas County, and I can give you the case number.  It is

20    14-cv-0130.

21         THE COURT:  0130?

22         MR. RINEHART:  Ultimately, our office --

23         THE COURT:  Is that the -- 0130?

24         MR. RINEHART:  Yes.

25         THE COURT:  Thank you.

1          MR. RINEHART:  0130.  Yes, Your Honor.

2          From this litigation, Exley was ultimately successful

3 in his suit and our office was able to give him an award of 100

4 percent ownership interest in the subject property.  Despite

5 the success that we got him in his entire property the was

6 looking to get, the relationship between our office and Exley

7 deteriorated because of his attempts with the aid and direction

8 of Debtor Loza to void paying for any legal services provided

9 by Leverty.

10          Thereafter, in approximately February of 2017, our

11 office filed an attorney's lien on the subject property with

12 the Douglas County Recorder.

13          On May 3rd, Leverty filed a motion to adjudicate

14 Leverty's rights and to enforce lien for attorneys' fees.  In

15 the prayer for relief, our office asked for a -- we

16 respectfully requested a judgment be entered against Exley,

17 which attaches to this subject property.  Seeing the writing on

18 the wall with regard to the judgment attaching to the subject

19 property, on May 12th, 2017, only ten days later after

20 Leverty's motion to adjudicate was filed with the Court, Ray

21 Warren Exley deeded the subject property title in his name to

22 his family trust with himself as trustee.

23          Thereafter on Mar -- May 24th, 2017, the Ninth

24 Judicial District granted a judgment in favor of Leverty, which

25 attaches to the subject property.

1           In an effort to enforce this judgment lien, on or
2   about February 12th, 2017 [sic], our office filed a complaint
3   against Exley which was removed to the United States District
4   Court, and I have that case number if Your Honor would like it.
5           THE COURT:  Please.
6           MR. RINEHART:  It's 3:17-cv-0175-MMDVPC.
7           THE COURT:  I'm sorry.  After 0175, what did you say?
8           MR. RINEHART:  MMD, like Mary, Mary, Don, and then
9   VPC.
10          THE COURT:  VPC?  Okay.  Thank you.
11          MR. RINEHART:  Yes, Your Honor.
12          Okay.  And then after that, on or about July 27th,
13  2017, Federal Court Magistrate Judge Kirk held a mediation in
14  the matter in which the parties reached a settlement which was
15  binding upon Exley.
16          Thereafter, Mr. Exley and Debtor Loza fired their
17  counsel and announced their intention not to comply with the
18  settlement agreement agreed upon in the court.  Our office was
19  then forced to file a motion to compel with settlement
20  agreement.  On February 12th, 2018, a hearing on the motion to
21  enforce the settlement was held wherein Magistrate Cook was
22  forced to read virtually all the transcript that was made
23  recording the terms of the settlement agreement previously
24  agreed upon by Exley and Debtor Loza.
25          From the bench, Magistrate Judge Cook stated she'd be

12

1  issuing a written report and recommendation that the terms of

2  the settlement agreement previously agreed up on related to the

3  subject property would be affirmed and Exley and Debtor Loza's

4  attempt to renege on the settlement agreement were baseless,

5  and Exley was sanctioned $45,045 for his inappropriate conduct,

6  and I have -- that's that same matter as before, Your Honor.

7          THE COURT:  Okay.

8          MR. RINEHART:  The -- that's the one that's at 00175.

9          In keeping with the spirit of attempting to pay our

10 office for legal services concerning the successful subject

11 property lawsuit, on February 23rd, 2018, only two days after

12 Magistrate Judge Cook stated her intention to uphold the

13 settlement agreement, Exley signed a quit claim deed

14 transferring the subject property for non-consideration to

15 Athena Medical Group to Find Contribution, Plan, and Trust #3,

16 and I'll -- and if it's okay with Your Honor, I'll just call it

17 Athena at this point moving forward.

18         On March 19th, 2018, Federal Judge Cook issued a

19 report and recommendation confirming the settlement agreement

20 affecting the property which was accepted and adopted by U.S.

21 District Judge Du on February 29th, 2019.

22         On February 25th, 2019, United States District Court

23 issued a judgment in a civil case which was recorded against

24 the subject property on March 5th, 2019, (indiscernible)

25 recording, it's -- it was down at the Douglas County Recorder,

13

1  just to put everyone on notice that there is a judgment.

2         Thereafter, in an effort to secure payment on amounts

3  owed to Leverty, Leverty -- (indiscernible) -- Leverty --

4  Leverty & Associates, on or about June -- I mean, January 22nd

5  of 2021 purchased and took an assignment of a deed of trust

6  recorded against the subject property, which was related to a

7  promissory note dated May of 2017.

8         Consistent with her prior conduct, Athena, which is

9  one of the numerous entities of Mr. Exley, countered Leverty's

10 purchase of the deed of trust with another transfer of the

11 subject property to avoid a judgment in a civil case.  On or

12 about January 22nd, '21, the subject property once again quit

13 claimed for no consideration.  This time it went to Debtor

14 Loza.  Thereafter, on March 12th, 2021, Leverty obtained a writ

15 of execution against Ray Warren Exley and Debtor Loza from the

16 United States District Court of Nevada.

17        It's important to state that it was -- the writ,

18 initially, went to the Clerk for Debtor Loza but the Court,

19 after a hearing, clarified that the writ was against Ray Warren

20 Exley and his estate, not Loza individually, that she is not a

21 debtor in this matter.  This is all about Mr. Exley.

22        Pursuant to the writ obtained, a U.S. Marshall was

23 permitted to seize the subject property to satisfy the judgment

24 against Mr. Exley.

25        On March 23rd, 2021, we also filed -- our office also

14

1 filed a fraudulent transfer complaint against numerous

2 Exley-affiliated defendants in the Ninth Judicial District

3 Court, and I have that case number if Your Honor would like.

4          THE COURT:  Please.

5          MR. RINEHART:  It's 2021-cv-00057.

6          THE COURT:  Okay.

7          MR. RINEHART:  And so after this fraudulent transfer

8 complaint and the writ of execution, as the Court might now

9 come to expect from our limited conversation here, the subject

10 property was once again transferred to hinder, delay, and/or

11 defraud Leverty as a judgment creditor of Mr. Exley.

12          On March 30th, 2021, less than two weeks after the

13 writ of execution and only seven days after the fraudulent

14 transfer complaint was filed, Debtor Loza quit claimed the

15 property out of her name and provided in the quit claim deed

16 she rejected the January 22nd, 2021, transfer from Athena to

17 herself stating said conveyance was in error.  There -- and so

18 then she quit claimed it back to Athena.

19          Thereafter, Leverty, our office, filed an application

20 for judgment by default against the numerous Exley affiliated

21 defendants in the Ninth Judicial District Court and that's that

22 same case, 2021 that ends with 57.

23          Having come before the Court and with the Court

24 having reviewed this file, pleadings are in, argument of

25 counsel, and everything presented, the Court issued on

1 May 25th, 2001 [sic] judgment by default.  The judgment by

2 default found those four prior transfers done everything that

3 Ex -- Leverty's office got into position to retain -- I mean

4 get their attorneys' fees.  The judge found that all the

5 aforemention -- those four transfers on the subject property

6 were fraudulent and intended to hinder, delay, or defraud

7 creditors of Exley in accordance with the provisions the Nevada

8 Revised Statute, Chapter 112, which is the fraudulent transfer

9 statute of the Uniform Act.

10      The Court then ordered the four transfers were

11 thereby void and the subject property thereby reverted back to

12 and is entitled back in the name of Ray Warren Exley, M.D.,

13 where it initially started.

14      In accordance with the May's -- with the Court's

15 order on June 11th, our office filed a judgment by default with

16 the Douglas County Recorder, thereby transferring title,

17 pursuant to the Court's order, back into the name of Mr. Exley.

18      On June 22nd of 2021, the night before the

19 foreclosure at seven o'clock the night before the foreclosure,

20 counsel for Debtor Loza, Mr. Harris, provided a written letter

21 via electronic mail.  It should be no surprise to the Court

22 that Loza, once again, attempted to fraudulently transfer the

23 subject property to hinder, delay, or defraud Leverty as a

24 judgment creditor of Exley and the foreclosing party on the

25 subject property.

16

1          The fraudulent transfer dated -- there -- it was the

2     first -- there's two different fraudulent transfers.  The first

3     fraudulent transfer dated June 21st, 2021, is when it was

4     signed, and it was a quit claim purported to transfer title

5     from Athena into the name of Debtor Loza in her individual

6     capacity.  The second (indiscernible) Athena to Debtor Loza,

7     even though it was titled in the name of Exley.

8          The second fraudulent transfer was dated, signed,

9     June 22nd, 2021, in order to quit claim deed trying to

10    purporting to transfer title from Special Administrator Loza as

11    special administer to the estate of Ray Warren Exley, and she

12    tried transferring to Athena.  Just three hours after these two

13    fraudulent transfers, Debtor Loza then declared bankruptcy.

14         On June -- and so she transferred it from Exley to

15    herself and then declared bankruptcy.  Took it out of his

16    estate and known creditors.

17         On June 23rd, '21, the foreclosure sale took place

18    and the subject property went to the highest bidder.  It's

19    worth nothing that Mr. Harris mentioned that the first lien

20    would -- I mean that the property was valued at approximately a

21    hundred and -- 1.4 million, I believe he said.  Further note

22    that we don't have anything before the Court to evidence that

23    present value but the property did go for approximately

24    979,000, and that's with the idea that the house would have to

25    be gutted on the inside, fully taken care of.  No one lived

17

1  there for a long time.  It just sat up there not taken care of.

2  And there's also a first on the property of 194 -- there was

3  approximately 194,000.  So if you add those up, those get to

4  about a hundred -- 1.4 million.  But there was that first and

5  there was going to be -- extensive repairs need to be done on

6  the property.

7        And so that takes us to this motion, essentially.

8  That brings us up with the facts, for the most part.  There's

9  additional court matters out there with regard to this.

10  There's a bunch of litigation but with a 15-page limit, Your

11  Honor, I wasn't able to explain everything that's gone on in

12  this matter, especially given the very short time frame.

13        So this matter is before the Court under the debtor's

14  motion, which is arguing the debtor's bankruptcy automatic --

15  the Debtor Loza's bankruptcy automatically stayed the

16  foreclosure action on the subject property by imposing an

17  automatic stay against the debtor and the debtor's property.

18  (Indiscernible) hey, it's her property.

19        Of issue is the fact that the subject property was

20  titled in the name of Exley at the time of the commencement of

21  the debtor's bankruptcy.  She did not have a legal or equitable

22  interest in the subject property at the time of the

23  commencement of the foreclosure action or at the time of the

24  June 23rd, 2021, foreclosure sale.  So she had no time at that

25  snapshot when she filed that bankruptcy action, she didn't own

1  it and neither did she -- she didn't at the time of the

2  foreclosure sale either.

3          The legal standards for this, Your Honor, I can just

4  cite to you.  I don't know if you're interested in, but they're

5  11 U.S.C. Section 362 and 11 U.S.C. Section 541(a) --

6          THE COURT:  Thank you.

7          MR. RINEHART:  -- which provides that all legal and

8  equitable interest of the debtor and property becomes -- at the

9  commencement -- at the time of the commencement, the estate

10  becomes her equitable -- I mean becomes her bankruptcy estate.

11          And so first I'd like to address the fact that with

12  the -- the debtor has no legal interest in the subject property

13  and not the equitable but legal.  And, as I stated, Your Honor,

14  that is not part of her debtor's estate.  As provided -- as we

15  previously spoke about, on May 25th, 2021, the Ninth Judicial

16  District Court entered a judgment related to the ownership of

17  the property.  Pursuant to the Court's order, the four

18  fraudulent transfers were found to be fraudulent because they

19  were intended to hinder, delay, or defraud creditors pursuant

20  to Nevada Revised Statute, Chapter 112, the Fraudulent

21  Transfers Act, and the Court ordered those void reverting the

22  property back directly into the name of Mr. Exley.  And then

23  once again, we filed a lien on that -- I mean, we filed that

24  document with the county recorder, went to the county assessor

25  and changed title into the name of Exley.

19

1       On June 22nd, the night before the foreclosure, we
2  got the written correspondence from Mr. Harris and along with
3  that correspondence, we found out that they once again --
4  Ms. Loza, Debtor Loza, once a try -- again tried to
5  fraudulently transfer the subject property to hinder, delay,
6  and/or defraud Leverty of the judgment creditor of Exley and
7  the foreclosing party in this matter.

8       The first fraudulent transfer occurred on June 21st,
9  2021 when it, like I said, when they tried transferring it from
10 Athena to Loza in her individual capacity, and it's stated that
11 way.  And the second transfer, then tried to go from Special
12 Administration of Loza as Lo -- the Special Administrator Loza
13 of the Estate of Exley then to Athena.  And then just three
14 hours later after those subject -- those fraudulent transfers,
15 they declared bankruptcy.

16      There are a number of reasons why the two fraudulent
17 transfers did not -- that legal title in the name of Debtor
18 Loza and put it into Debtor Loza's estate that's argued in
19 debtor's motion.  First that we spoke about, the order recently
20 put it into the name of Exley.  This is at the time of the --
21 there was a valid court order and enforceable.  At the time of
22 the bankruptcy, title was in the -- with the Douglas County
23 Assessor's Office was in the name of Exley.  At the time of the
24 foreclosure action, title was in the name of Mr. Exley.  As of
25 yesterday when I was working on it -- began working on this

20

1  motion, it was in the name of Dr. Exley.

2  And then, as well, I called down there.  Not only did

3  I look at the Douglas -- yesterday, did not only did I look at

4  the Douglas County Assessor's website, which mentioned Exley, I

5  called up the office -- the assessor's office to talk about the

6  two attempted quit claim deeds the night before -- I mean, just

7  hours before the bankruptcy.  I was informed by the assessor's

8  office that the filings were deficient and did not transfer

9  title to the subject property as purported by defendant Loza --

10  Debtor Loza, should I say, in her petition.

11  Second, Debtor Loza should not be able to

12  collaterally attack a valid Nevada State Court judgment.

13  That's committing fraud and using bankruptcy court to do so.

14  The second dated fraudulent transfer from the Exley probate to

15  the Athena states Loza, as Special Administer, contests the

16  validity of the default judgment and contend that legal title

17  remains vested with Athena.  That was in the quit claim deed.

18  So while she might not be happy with the Ninth

19  Judicial valid and enforceable judgment, she can't just turn

20  around and change the property out of that time.  It does not

21  allow her to just transfer the property out of the name of

22  Exley and into a probate estate, and out of his probate estate

23  where there are known creditors in his probate estate and

24  creditor notices have been filed in this estate.  So with that

25  known, she tried transferring out of that estate with known

21

1 | creditors filed.

2 |       And then it's important to note that that's a special

3 | administration that has not been converted in any way to

4 | probate.  The subject property was going to be the only asset

5 | of real value in the estate.  And so by transferring that out,

6 | it's defrauding of all the creditors to the estate.

7 |       Debtor Loza's recent fraudulent transfers and bad

8 | faith bankruptcy filing were an attempt to have this Court

9 | collaterally attack a valid and enforceable judgment in the

10 | Ninth Judicial District Court.  And I can cite to some lwa,

11 | Your Honor, but 28 U.S.C. Section 1378 provides that judicial

12 | proceedings of any court shall have the same full faith in

13 | credit in every court of the United States as they have the law

14 | or usage in the course of such state.  And so they must be

15 | given the same preclusive effect that those judgments would

16 | enjoy under the law in which the judgment is rendered.  And I

17 | have a case to that.  That's at 247 F.3d. 986 at Page 993.

18 |       THE COURT:  At what page?  I'm sorry?  93?

19 |       MR. RINEHART:  993, Your Honor.

20 |       THE COURT:  Okay.  Thank you.

21 |       MR. RINEHART:  And then there's another case, as

22 | well.  It's at 335 B.R. 130 at Page 138.

23 |       THE COURT:  Go ahead.

24 |       MR. RINEHART:  To the extent that debtor -- I'm

25 | sorry, Your Honor.  Are you ready?

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

22

1          THE COURT:  Oh, yeah.  Go ahead.

2          MR. RINEHART:  Okay.  To the extent that Debtor Loza

3   contends that both the previous federal judgments -- we -- and

4   that's where I didn't get a chance to explain that we have

5   other judgments against him including the first on the property

6   via federal judgment, and the settlement, and the Ninth

7   Judicial District Court, those holdings should not be set

8   aside.  That's impermissible collateral attack on those

9   judgments.

10         This is especially true given the fact that pursuant

11  to that judgment before the Ninth Judicial Court, all money

12  from the foreclosure sale to be paid in the Ninth Judicial

13  District Court were proper allocation, distribution, and

14  supervision.  So this matter is going to be going -- this money

15  from this when -- Mr. Harris mentioned, oh, you want to make

16  sure this gets sold for the benefit of creditors.  It's been

17  taken from the creditors.  This sale of this property would

18  allow the monies then to go into the Ninth Circuit into his

19  estate to the actual creditors.  That's the most simple way to

20  doing this versus trusting them not to make more fraudulent

21  transfers on this property.

22         And then also, Your Honor, a state court judgment

23  entered against the debtor in a civil suit is entitled to

24  preclusive effect in the bankruptcy proceeding.  I have some

25  cases for you on that, Your Honor.

23

1           THE COURT:  Okay.  I've got --

2           MR. RINEHART:  202 --

3           THE COURT:  I've got it in your pleading, so that's

4    fine.

5           MR. RINEHART:  Okay.  Perfect.

6           And then another to that, Your Honor, in a default --

7    a default judgment satisfies the actual litigated basis

8    requirement for the judgment to have a preclusive effect, as

9    well.

10          Third -- the third reason why there's not legal title

11   in it is Nevada Revised Statute, Chapter 140 entitled Special

12   Administrators, does not prevent special administrator Loza

13   from transferring the real property from Exley's probate estate

14   without a prior court approval.  Like I mentioned earlier, Your

15   Honor, this isn't a general administration estate.  This is a

16   special administration where Juliana Loza was solely the

17   special administrator for the purpose of litigation that was,

18   at the time, pending in the Nevada Supreme Court and in the

19   Ninth Circuit Court of Appeals.  And I have those case numbers

20   and they're at the bottom of the pleading, Your Honor, on Page

21   9.

22          THE COURT:  Okay.  Let me take --

23          MR. RINEHART:  Judge, I don't know -- would you like

24   those case numbers?

25          THE COURT:  Yeah, hold on for one second.  So Page 9,

24

1  where?

2          MR. RINEHART:  Of course, Your Honor.  Page 9.  It's

3  a footnote.

4          And so what happened, Your Honor, was Mr. Exley

5  passed away in June of 2020, and Ms. Loza basically -- once he

6  passed away, someone had to be put in his stead, so Ms. Loza

7  applied for special administration in the estate for the

8  purposes of being named in place of him so she could defend the

9  lawsuit on his behalf.

10          THE COURT:  So hang on for just a second.  I'm

11  looking at -- let's see.  This one.  Page 9.  What number on

12  Page 9.  Sorry.

13          MR. RINEHART:  At the bottom of the footnote --

14  there's a footnote, 4 and 5, and those are the cases in the --

15          THE COURT:  I see.

16          MR. RINEHART:  -- Ninth Judicial District Court and

17  Nevada Supreme Court.

18          THE COURT:  Okay.  Thank you.

19          MR. RINEHART:  Of course, Your Honor.

20          And like I said, at no time have these general

21  letters administration been issued.  This is a special

22  administration.  And pursuant to the powers under Chapter 140,

23  she does not have the power to transfer these on her own.  She

24  does not have that legal power.  This is because a quit claim

25  deed can only transfer pursuant to the rights of the

25

1  transferor.  And obviously, Chapter 140, and is well

2  established under Nevada law that a grantor cannot convey more

3  title than they have.

4           THE COURT:  Okay.

5           MR. RINEHART:  And so after the Court's order,

6  neither Loza nor Athena had an interest to the transfer and

7  because the purported transfer is done via quit claim deed, the

8  purported transfers do not actually transfer any interest.  The

9  only transfers transferred, like I stated to Your Honor

10 earlier, the County Assessor confirmed that.  There is no --

11 it's titled under the name of Mr. Exley, not Ms. Loza, not

12 Athena, not anyone else.  Therefore, the sole purpose of

13 bringing this bankruptcy petition was to infamously

14 collaterally attack the state court judgments that

15 (indiscernible) known creditors to Exley's estate who have

16 filed creditor claims against the probate estate.  And Your

17 Honor, by fraudulently transferring the property from the

18 estate when she just did this on June -- or attempted to do it

19 on June 22nd, like I said, the County Assessor says they were

20 deficient in transfer title, but like fraudulently attempting

21 to transfer the property, she is once again defrauding known

22 creditors and these are fraudulent transfers pursuant to Nevada

23 law and void.

24          And, Your Honor, I don't know if you'd like me to get

25 into the elements of the fraudulent transfer, but I have a

26

1  couple Nevada statutes on the matter, but it's worth noting

2  that -- I guess it is probably worth getting into.  I

3  apologize.

4        THE COURT:  Sure.  Why don't you give them to me.

5        MR. RINEHART:  It -- okay.  Your Honor, a transfer --

6  and this is pursuant to Nevada law.  A and this -- I'm going to

7  be citing NRS 112.180(1).

8            "A transfer made or obligation incurred by a debtor

9            is fraudulent as to a creditor, whether the

10           creditor's claim arose before or after the transfer

11           was made or the obligation was incurred, if the

12           debtor made the transfer or incurred the obligation:

13           "(a) With actual intent to hinder, delay, or defraud

14           any creditor of the debtor" --

15  -- which, like I said, Your Honor, the judges previously found

16  they'd done that four other times --

17           "or,

18           "(b) Without receiving a reasonably equivalent

19           compensation in exchange.

20           "In determining a party's actual intent to hinder,

21           delay, or defraud a creditor, the following factors

22           or to be evaluated:

23           You can look for the transfer or obligation was --

24  you know, was it to an insider;

25           Whether the debtor retained possession or control of

27

1 the property after the transfer; or,

2          The transfer or obligation was disclosed or

3 concealed;

4          Whether the transfer was made or obligation was

5 incurred, the debtor had been sued or threatened with suit;

6          The -- whether the transfer was of substantially all

7 the debtor's assets;

8          Whether the debtor absconded;

9          Whether the debtor removed or concealed assets;

10          The value of the consideration received by the

11 debtor, whether it's reasonably equivalent to the value of the

12 asset transferred;

13          Whether debtor was insolvent or became insolvent

14 shortly after the transfer was made; or,

15          The transfer occurred shortly before or shortly after

16 a substantial debt was incurred; or,

17          Whether the debtor transferred the essential assets

18 who then transferred it to an insider of the debtor.

19          Here, Ms. Loza's attempt as a Special Administrator

20 to fraudulently transfer to Exley's estate real property out of

21 his estate and the only asset of the estate -- only asset in

22 the estate was valued for the known creditors was done with the

23 sole intent to hinder, delay, or defraud known creditors to the

24 estate.  The transfer was to an insider.  She transferred it

25 from herself as Special -- she attempted to transfer it from

1  herself as Special Administrator to her, individually.  The

2  transfer of this property was substantially all of the assets

3  of the estate.  Once she did this, it wipes out the creditors

4  that Mr. Harris is concerned about others and earlier, that we

5  want to make sure we get this property sold for the benefit of

6  those creditors.  Put all these creditors' assets -- I mean,

7  their only asset with substantial value away from the estate.

8  And it was intent -- and was the attempt to entirely move that

9  sole asset despite the fact that the Court ordered recently

10  that title is in the name of Exley.  Through that attempt to

11  transfer, like I'd mentioned, the estate became insolvent and

12  it's unable to pay the creditors who have filed creditor claims

13  with the estate.

14          The attempt to transfers were not made for reasonably

15  equivalent value.  The first transfer was done with no listed

16  consideration, whatsoever.  The second transfer was done

17  without any type of value in the consideration listed.

18          And finally, Your Honor, sort of (indiscernible) it's

19  a farce that Debtor Loza now claims title to this subject

20  property when under three months ago on March 30th, she filed a

21  quit claim deed rejecting a transfer from Athena to herself

22  stating that was done in error.  Now she's doing the -- trying

23  to do the exact same conveyance but three months ago, she's no,

24  I don't want it, when we were going -- when we were going to be

25  able to potentially take it from -- I mean, go after monies

29

1  from when it was her.  She then sent it away.  Now she wants it

2  back again, because she's declaring bankruptcy.  I mean,

3  it's -- very much sticks out as fraudulent transfers.

4         So simply put, she does not have a legal interest in

5  it and not only that, Your Honor, now, I'd like to get into the

6  equitable estate.  Part of the debtor's estate is also the

7  equitable estate.

8         THE COURT:  Okay.

9         MR. RINEHART:  It does not -- her estate does not

10  include any equitable interest.  First and foremost, Your

11  Honor, you've got to look at Debtor Loza's motion provided no

12  evidence to the Court that she has any equitable interest or

13  beneficial interest in the subject property.  She just claims

14  it in about a sentence or two.  Mere statements that she has an

15  interest are not sufficient and provide the Court, Leverty &

16  Associates, and Allied Trustee Services nothing to work with.

17  The Court cannot determine property belonging in Debtor Loza's

18  bankruptcy estate through these mere allegations.

19         Further, the bankruptcy petition is nothing but a

20  bare bones petition before the Court.  It provides no schedule

21  of assets listing alleged legal or equitable interest.  The

22  Court must have actual documentary evidence for Debtor Loza to

23  claim an interest.

24         Second, as provided above, the subject property that

25  defendants argued in the motion that they have equitable

30

1  interest because she's a beneficiary of Athena but as we talked

2  about before, she -- oh, and that's -- that was included in

3  debtor -- the counsel -- Mr. Harris's June 22nd to Leverty, in

4  quotes, "Ms. Loza also has a beneficiary interest in Athena

5  Medical Group defying contribution (indiscernible)."

6      However, as we have already gone over, pursuant to

7  the Ninth Judicial valid enforceable order, property is not in

8  the name of Athena.  It's in the name of Exley.  She cannot

9  claim property in the name of the debtor's estate based upon an

10 alleged beneficiary interest in Athena, an entity without any

11 legal title the property.  It does not matter that Loza's

12 fraudulent quit claim deed from Exley (indiscernible) Athena

13 can -- contests.  It does not matter that she's contesting the

14 validity of the judgment in the -- she states that in the quit

15 claim deed.  What matters is that the Court has a valid and

16 enforceable judgment that's entitled in the name of Exley.

17     Third, they mention that she might have an equitable

18 interest as a Special Administrator.  They provided no case

19 law, nothing showing that a special administrator has their own

20 individual equitable beneficial interest in property of the

21 probate estate such as the property is considered that person's

22 estate property of the debtor.

23     Further, she filed bank -- just was note -- she filed

24 bankruptcy in her personal name, nothing to do with her

25 appointment as special administrator.

1          Based on all these fraudulent transfers, clear bad

2   faith by them, Your Honor, we are requesting our own award of

3   sanctions as the responding party.  That is both Leverty and

4   Allied.  11 U.S.C. Section 9011, Your Honor, provides that a

5   court may impose sanctions upon the attorneys, law firms, or

6   parties if they violate 11 U.S.C. Section 9011(b).  Such

7   sanctions do not have a safe harbor rule when the filing party

8   to withdraw -- with -- they don't have a safe harbor rule, Your

9   Honor, where they have 21 days to correct it.  As -- in quotes,

10  this limitation does not apply if the conduct alleged is the

11  filing of a petition in violation of Subsection (b).

12  Subsection (b) of 9011(b)(1) provides that certifying a filing

13  with the court is to the best of the person's knowledge,

14  information, and belief formed after an inquiry under the

15  circumstances that the filing it -- in quotes, not being

16  presented for any improper purpose, such as harass or to cause

17  undue delay or to needlessly increase the cost of litigation.

18  **[TRANSCRIBER'S NOTE:  I did not put the above in actual quotes**

19  **because it is not verbatim of the statute.  Following is the**

20  **link I referenced.**

21  **https://www.law.cornell.edu/rules/frbp/rule 9011**

22

23          Here the facts clearly show a bankruptcy petition

24  presented for an improper purpose.  The facts outline a clear

25  history that we spoke about of fraudulent transfer of the

32

1  subject property in order to hinder, delay, or defraud

2  creditors of Exley including Leverty & Associates.  The Ninth

3  Judicial Court, I believe, feel the same way pursuant to their

4  May 25th, 2001 -- 2021 judgment.  The judges found the four

5  transfers that we talked about were fraudulent and intended to

6  hinder, delay, or defraud creditors.

7          Similar to the four transfers, the fraud, the two

8  transfers recently done were done for the same purpose.  They

9  were done just three hours after they were transferred --

10 they -- three hours after the attempt to transfers, should I

11 say, Your Honor, the bankruptcy filing of the petition right

12 away to hide the -- I mean, to safeguard the asset from the

13 estate to rightfully owner and those creditors. This is --

14 that -- to me, doesn't seem like a not so subtle attempt to

15 conceal the subject property from those known creditors of the

16 estate.

17         Additionally, as I had previously -- this was

18 commenced as a bare bone filing that the debtor has -- where

19 the debtor has filed no scheduled assets or statements of

20 financial affairs showing this was done on a rush matter.

21 Let's get this -- let's -- the property.  Let's get it -- let's

22 get the (indiscernible), do everything we can to get it out of

23 the estate and out of creditors' hands and the (indiscernible)

24 and once again, Your Honor, the payment of the monies was

25 supposed to go back to the Ninth Judicial Court where they

33

1  could then be watched upon and distributed to creditors.

2          The debt is -- worth also mentioning, Your Honor, the

3  debtor has improperly filed this case in the State of Nevada.

4  She is a resident of the State of California and she's a

5  long-time resident of the State of California.  She lives at

6  9504 High Ridge Place in Beverly Hills, California.  This is --

7  in contrary to plain -- I mean to debtor's motion, this is not

8  a family home in an emotionally distressful situation as argued

9  in the motion.  She didn't live there.  She hadn't lived there.

10 The property had been sitting there being neglected.  This

11 isn't a property she's staying at.  It's just sitting up there.

12 In fact -- and like I mentioned, Your Honor, in fact, when

13 Leverty became involved up through about 2017, the -- Exley's

14 ex-wife's name was on the property.  Not Loza's.  So this

15 bankruptcy filing is clearly intended for an improper purpose.

16 And this is especially evident because three months ago, she

17 rejected a quit claim from Athena into her individual name, the

18 exact same thing that she's now, on June 22nd, attempting to

19 do.  And the reason behind this is very obvious.  In both

20 circumstances, Leverty & Associates were in a position to

21 collect upon monies owed, and so she transferred the title

22 again.  That's her MO.  She's being doing it over and over

23 again.  That makes six fraudulent transfers adding these two

24 newest ones of June 22.

25          And it's worth noting also that there's a -- it

34

1    wasn't provided in debtor's motion and it's hard to get into

2    too much because of the page limit, but there's another

3    litigation on this property filed by Exley -- one of Exley's

4    Athena entities and that's before the Ninth -- I mean, before

5    the United States District Court, State of Nevada, and I have a

6    case number for Your Honor.

7              THE COURT:  Please.

8              MR. RINEHART:  And it's 3:21-cv-00274.

9              THE COURT:  And what's the name?

10             MR. RINEHART:  And that is entitled -- it's <u>Athena</u>

11   <u>Number 3 v. Leverty & Associates</u>.  And the complaint was filed

12   in an attempt to avoid a foreclosure sale and the novel theory

13   behind this complaint was Athena committed a fraud by

14   encumbering the property and Athena's entitled to keep the

15   money.  Essentially what it was, there was a subrogation

16   agreement.  Loza ended up getting 150,000 to apparently pay

17   Leverty back so in order to pay this, the foreclosure sale will

18   get Leverty -- I mean, this -- we're putting into bankruptcy to

19   pay Leverty.  She got a loan for 150,000 apparently to pay

20   Leverty back, which she didn't pay upon, which allowed us --

21   our office to foreclose.  But part of it was a subrogation

22   agreement where one of the liens jumped the other lien.  And

23   she had stated that that was improper and it was an improper --

24   even though she took the money, was involved in the entire

25   scheme, she is now saying it's illegal, you can't foreclose on

1  the property because of something I did, that unclean hands.

2           Once again, that is another strong indicator that

3  Debtor Loza and actually that this bankruptcy -- that Debtor

4  Loza's bankruptcy petition is part of the scheme to delay,

5  hinder, or defraud creditors.  And that's --

6           THE COURT:  Okay.  Thank you --

7           MR. RINEHART:  And pursuant to 11 U.S.C. 362(d)(4)

8  that's shown by a transfer of all part of a ownership of or

9  other interest in the real property without the consent of

10 creditors or court approval.

11          The responding parties believe sanctions are

12 appropriate against Debtor Loza, Mr. Harris individually, and

13 his law practice for the filing of the bankruptcy petition for

14 a clearly improper purpose.  Responding parties respectfully

15 request the Court to impose a sanction, in quotes, pursuant to

16 11 U.S.C. Section 9011(b)(1), want a sanction that, in quotes,

17 sufficient to deter repetition of such conduct or comparable

18 conduct by other parties similarly situated.  Pursuant to 11 --

19 pursuant to 11 U.S.C. Section105, the federal court, including

20 bankruptcy courts, have an inherent power to impose sanctions

21 for a broad range of wilful or improper conduct.  And I have a

22 case for Your Honor for that.

23          THE COURT:  What's the case, please?

24          MR. RINEHART:  322 F.3d 1178 at 1196.

25          THE COURT:  Okay.  Thank you.

36

1          MR. RINEHART:  And Your Honor, a federal court is not
2    forbidden to sanction bad faith conduct by means of the
3    inherent power simply because conduct could also be sanctioned
4    under other statutes and rules.  And I have another case for
5    you on that, Your Honor.
6          THE COURT:  Sure.  Please.
7          MR. RINEHART:  It's 501 U.S. 32 at 50.
8          THE COURT:  At 50 you said?
9          MR. RINEHART:  At 50.  Yes, Your Honor.
10          THE COURT:  Thank you.
11          MR. RINEHART:  And I have a quote here for you from
12    another matter.
13          THE COURT:  Okay.
14          MR. RINEHART:  In quotes, in reviewing sanctions
15    under the court's inherent power, our cases have specifically
16    focused on bad faith.  A specific finding of bad faith must
17    precede any sanction under the court's inherent powers.  And
18    the Ninth Circuit updated the court may impose sanctions
19    pursuant to its inherent authority when it finds willful
20    actions including recklessness when combined with an additional
21    factor, such as frivolous, harassment, or on an improper
22    purpose, which we've clearly gone over this bankruptcy for an
23    improper purpose.
24          As we've talked about, all these fraudulent tantures
25    [sic] -- I mean transfers for the sole purpose of defrauding a

37

1  credit -- I mean actually the estate's known creditors amounts
2  to bad faith.

3          THE COURT:  All right.  Thank you.

4          MR. RINEHART:  Yeah.  Debtor Loza's bankruptcy is
5  clearly brought for an improper purpose, Your Honor, and the
6  responding parties respectfully (indiscernible) sanctions be
7  awarded in this matter.  Like I said, the responding party
8  respectfully requests sanctions be awarded against Debtor Loza,
9  Mr. Harris individually, and the Harris law practice by either
10 11 U.S.C. Section 9011 or the Court's inherent power under 11
11 U.S.C. Section 105.

12         THE COURT:  Okay.

13         MR. RINEHART:  What our office -- what the responding
14 parties would like, we respectfully request a dismissal of her
15 bankruptcy matter or in the alternative, declaring the subject
16 property is not part of the debtor's estate allowing the
17 foreclosure sale to proceed as is, currently the status quo.

18         Additionally, the responding parties request an award
19 of 10,000 for the attorneys' fees and costs for needing to
20 defend themselves in this fraudulent matter.

21         Further, Your Honor, the responding parties
22 respectfully Court issue a motion to stay -- a motion for stay
23 as to any further filings by Debtor Loza, her -- Loza as a
24 special administrator to -- of Exley or of any Exley-related
25 entities.  They have a history of transferring this to get it

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

38

1   out.  We don't want them continuing to transfer.  Debtor's

2   motion hints that there may be additional attempts as to

3   fraudulent transfer of the subject property away from the

4   estate and the known creditors in the future again since they

5   know that the first ones were deficient.

6          THE COURT:  Thank you.

7          MR. RINEHART:  So Your Honor, we would like -- we

8   respectfully request the Court deny Loza's motion in her

9   entirety and grant the responding parties' request for

10  sanctions and a stay in this matter.

11         THE COURT:  Okay.  Thank you.

12         I'm going to take a short break here for just a

13  moment.  We'll be in recess.

14      (Recess taken at 11:02 a.m.)

15      (Proceedings resumed at 11:08 a.m.)

16         THE CLERK:  Thank you, Your Honor.  Now, we are.

17         MR. RINEHART:  Your Honor.

18         THE COURT:  Mr. Harris.

19         MR. RINEHART:  Your Honor, this is --

20         THE COURT:  Yeah.

21         MR. RINEHART:  Your Honor, this is Jess Rinehart.  I

22  would like to clarify a couple points with Your Honor just to

23  make sure everything is clear on a few issues if you don't

24  mind.

25         THE COURT:  Okay.  But go ahead, please.

1          MR. RINEHART:  One of the things mentioned, like I

2    said, is Mr. Harris has mentioned we're doing this for the

3    benefit of the creditors so, you know, we make sure they get

4    their interest by putting it into this (indiscernible)

5    creditors.  What's important -- very important analysis, it's

6    very important is this property is actually sole and separate

7    property.  This is not Loza's.  Leverty is a creditor of the

8    husband, not of Ms. Loza, because we wouldn't be able to go

9    after that asset and it's also attempting to take away

10   creditors of actually the estate's which are a different set of

11   creditors than are listed with Loza.  So totally different

12   creditors and so there -- the creditors won't be paid off.

13          And also, I wanted to clarify that the -- Your Honor,

14   I mentioned that our office had a first on the property, and I

15   just want to make sure to let the Court know that this went up

16   to the Nevada Supreme Court, was upheld.  Leverty & Associates'

17   lien on the property so along with the sale price of 975, plus

18   the second on the prop, plus the foreclosure amount, and the

19   first on the property, it essentially sold for approximately

20   12 -- 1,275,000.  Of course, that does not factor in the fact

21   that the person buying it is going to have to gut the inside

22   because it's poorly taken care of and spend a lot of money

23   redoing that.  And do this property sold for a significant

24   value at the foreclosure sale when you add the first, the

25   foreclosure amount, the bid amount, when you put all those

40

1  together.

2          THE COURT:  Okay.  Thank you.

3          MR. RINEHART:  And also, Your Honor, on one of my

4  exhibits, I wanted to see if the Court would take judicial

5  notice of as I attached the Douglas County Assessor's -- it's

6  like parcel detail and what the parcel detail provides, and

7  it's supported by my attached declaration, that yesterday when

8  I printed that out, that was part of -- I mean that was titled

9  in the name of Ray Warren Exley himself and like I said, I

10  already informed the Court that (indiscernible) judicial motion

11  (audio interference) set aside.

12          THE COURT:  Sir --

13          MR. RINEHART:  (Indiscernible).

14          THE COURT:  Sir, something is going wrong and we

15  can't understand what you're saying.  I apologize.

16          MR. RINEHART:  (Indiscernible) I want to file it

17  today.  Can you hear me?  I apologize.

18          THE COURT:  Just wait a second here, please.

19          THE CLERK:  Your Honor, it sounds as though --

20          MR. RINEHART:  Okay.

21          THE CLERK:  -- another line with people talking in

22  the background.  If they could please mute if they're not

23  speaking, that would be helpful.  Let's try that, Your Honor.

24          THE COURT:  Okay.  Go -- so which --

25          MR. RINEHART:  Your Honor, I rewind a little bit --

41

1           THE COURT:  Which exhibit are you referring to?

2           MR. RINEHART:  If you can give me a second, Your

3   Honor.

4           THE COURT:  Sure.  Since I got all of these at

5   about -- I don't know -- two hours ago, it's -- I don't know

6   where it is.

7           MR. RINEHART:  Okay, Your Honor, it is Exhibit Number

8   11.

9           THE COURT:  So hang on here.

10          MR. RINEHART:  And it's a -- yes, Your Honor.

11          THE COURT:  Okay.  Exhibit 11.  Hang on here.

12          MR. RINEHART:  Yes, Your Honor.

13          THE COURT:  I apologize.  I hadn't -- I --

14          MR. RINEHART:  And what that is is it's a Douglas

15  County, Nevada, Assessor's -- it comes from the Assessor's

16  Office --

17          THE COURT:  I see.

18          MR. RINEHART:  -- printed from the Assessor's Office

19  showing that title's in the name of Exley.  You can see it on

20  the first page.  It says Assessed Owner Name --

21          THE COURT:  Well, hang on for just a second --

22          MR. RINEHART:  -- and then the second --

23          THE COURT:  Just hang on for a second.

24          MR. RINEHART:  Yeah.

25          THE COURT:  So I've got Douglas County, Nevada,

42

1  Assessor's Office.  Location --

2          MR. RINEHART:  Yeah, it's a parcel detail --

3          THE COURT:  Partial detail?  Oh, parcel detail --

4          MR. RINEHART:  -- is what it's called.

5          THE COURT:  Okay.  I got that.

6          MR. RINEHART:  Yeah, for the subject property.  So

7  when you go to the Assessor's, that way you can see okay, who

8  owns it, a little bit about the location of it, description of

9  the property, assessed values, taxation things, who's the

10 owner, who's the legal owner, what's the mailing address.  It

11 includes things along those lines.  And on the second page, it

12 shows the ownership history of it, and on the ownership history

13 in the top left, you see who the current owner is listed as.

14 It's Exley, Ray Warren, M.D.  And it's worth noting that that

15 address listed is also the address that Ms. Loza lives at in

16 Beverly Hills, California, even though she filed her petition

17 in the State of Nevada.

18         THE COURT:  Okay.

19         MR. RINEHART:  And --

20         THE COURT:  Go ahead.

21         MR. RINEHART:  And Your Honor, we think the Court

22 should take judicial notice of this given the fact that the --

23 this fact is not in reasonable dispute, because it can be

24 accurately and readily determined from sources whose accuracy

25 cannot be reasonably questioned.  And that's pursuant to the

43

1   Federal Rules of Evidence, Section 201.

2           THE COURT:  Okay.  Thank you.

3           MR. RINEHART:  And Your Honor, I don't know when it

4   cut off or what you were able to hear, so I apologize if I'm

5   going to repeat something --

6           THE COURT:  Oh, no.

7           MR. RINEHART:  -- but I just wanted to confirm --

8           THE COURT:  No problem.  That's fine.  I appreciate

9   that.

10          MR. RINEHART:  I just -- thank you, Your Honor.

11          THE COURT:  Thank you.

12          MR. RINEHART:  I just want to confirm that that sales

13  price, like I said, is the foreclosure amount on it, which was

14  approximately -- I think 224.  Then there was a 975 bid it went

15  for.  There's a first on the property.  It's a lien in our

16  favor upheld by the Nevada Supreme Court, and that's at

17  approximately, you know, 195,000.  Somewhere in that range

18  right now.  And so when that all together, that means the

19  property effectively sold for almost 1.3 million.  I think it's

20  1.275, approximately.  And like I said, that doesn't count

21  whoever's buying this property is going to have to put

22  significant money into it.  It was left in disrepair.  No one

23  lives there.  It just sits up there all year long not being

24  taken care of.  And so they're going to have to put significant

25  money for that 1.275, once you start putting the money into it,

44

1  all of a sudden, it climbs up pretty quick.

2           THE COURT:  Yeah.  Okay.  Anything further?

3           MR. RINEHART:  Not at this time, Your Honor.

4           THE COURT:  Thank you, counsel.

5           Mr. Harris.

6           MR. HARRIS:  Yes, Your Honor.  Steve Harris.  Thank

7  you very much.

8           As the Court can understand by itself, there's a

9  tortuous history between Dr. Exley, who died last year,

10 Ms. Loza, and the -- Mr. Leverty and his law firm.  But as I

11 recall, I think effective January 2nd, 2011, the United States

12 Court of Appeals for the Ninth Circuit appointed the Honorable

13 Bruce Beesley to hear bankruptcy matters and decide bankruptcy

14 code issues in the United States Bankruptcy Court located in

15 Northern Nevada.  And as I last checked, I think, you know, the

16 United States Bankruptcy Judge Bruce Beesley still has the

17 authority to make decisions under the Code.  And it's not

18 the -- within the province of Mr. Leverty, or Mr. Leverty's law

19 firm, or members of his law firm, or Allied Foreclosure

20 Services to decide on their own whether or not the automatic

21 stay applies.

22          I filed a quit claim deed as an exhibit to my motion,

23 and that quit claim deed shows that June 22nd, 2021, at 3:03

24 p.m., Document Number 2021-969516, Juliana Mayer Loza, an

25 individual, received a quit claim deed from Athena.  And just

45

1  some hearsay comments made by counsel that the assessor's

2  office views this as deficient is totally not sufficient for

3  this Court to decide that this is not property of the estate.

4          THE COURT:  Thank you.

5          MR. HARRIS:  This property is titled in Ms. Loza's

6  name.  Any creditors that Dr. Exley had in his estate will be

7  addressed and will be paid as authorized and allowed claims in

8  the Loza estate.  We are not -- Ms. Loza did not accept the

9  deed to this property with the idea of depriving the creditors

10  of Dr. Exley's estate of their rights to this property.

11          And also, what's important is as an exhibit also to

12  the debtor's motion, I -- and it's Page 45 of 75 on the file

13  stamp on document 7 --

14          THE COURT:  Just wait --

15          MR. HARRIS:  -- it's an assignment of a deed of

16  trust --

17          THE COURT:  -- just wait --

18          THE CLERK:  For the record, Your Honor, which exhibit

19  number is that?

20          THE COURT:  Mr. Harris?

21          THE CLERK:  Mr. Harris?

22          MR. HARRIS:  Yes.

23          THE CLERK:  For the record, what is the exhibit

24  number, please?

25          MR. HARRIS:  Exhibit D --

46

1          THE CLERK:  Thank you.

2          MR. HARRIS:  -- and I'm looking at Page 45 of 75 of

3    my motion, which is Document Number 7.

4          THE COURT:  So I've got Exhibit D, which is an

5    assignment of deed of trust --

6          MR. HARRIS:  Page 45 of 75.

7          THE COURT:  Yep.  Yeah, got it.  Thank you.

8          MR. HARRIS:  Okay.  Do you see the -- it says

9    assignment of deed of trust.

10          THE COURT:  Yes.

11          MR. HARRIS:  And this is where Mr. Leverty received

12    an assignment of (indiscernible) deed of trust, but you'll

13    notice that the holder or the obligor under the note was Ray

14    Warren Exley, M.D., Nevada Family Trusts and that since

15    Mr. Exley -- Dr. Exley died last year, Ms. Loza is the

16    successor trustee under that family trust, so even the action

17    of Mr. Leverty trying to foreclose on his deed of trust that he

18    received an assignment on, the family trust is the obligor

19    under that, and Ms. Loza is the successor trustee for that

20    family trust.  And by the foreclosure action taking place after

21    the bankruptcy filing is a clear violation of 362(a)(1).

22          And also, Your Honor, I located a Ninth Circuit case,

23    and it's 922 F.2d 1379, and it's Neuton, N-E-U-T-O-N, and that

24    case basically stands for the proposition that property of the

25    bankruptcy estate includes contingent interest.  And I'll quote

47

1  from that case.  And this is the Ninth Circuit talking.

2          We agree with the BAP's position.  Whether a debtor's

3  contingent interests were acquired by the bankrupt estate was a

4  thorny issue under the old Bankruptcy Act.  In a landmark

5  decision which largely inspired the new Code, the Supreme Court

6  held that the term "property" has been construed most

7  generously and an interest is not outside its reach because it

8  is novel or contingent or because enjoyment must be postponed.

9          And that's Segal v. Rochelle.  That's the Supreme

10  Court -- U.S. Supreme Court case that they're talking about

11  from 1966.

12          Your Honor, I believe that it's a clear violation of

13  the automatic stay provisions of the Bankruptcy Code, 362(a),

14  for Allied Foreclosure Services and Mr. Leverty and his law

15  firm to proceed unilaterally with the foreclosure sale on

16  June 23rd, 2021, at approximately 1:00 to 2:00 p.m.  And the

17  price was 979,000 and that 979,000 is the gross price.  There's

18  no other add-ons.  And it was sold -- and significantly less

19  than what the property is valued at.  From that 969, what's

20  going to have to be paid are the first trust deed held by

21  Mr. Leverty, of course, and any liens that are on the property,

22  and then the rest would be distributed according to Dr. Exley's

23  estate, or in this case, it'll be distributed in Ms. Loza's

24  Chapter 13 case according to a plan.

25          This is the hearing on a stay violation on a -- based

48

1  on the debtor's motion, Your Honor.  This is not a motion

2  brought by Mr. Leverty and his law firm to dismiss the

3  bankruptcy for a bad faith filing.  This is a clear violation

4  of the automatic stay.  It is this court, the United States

5  Bankruptcy Court with the United States Bankruptcy Judge Bruce

6  Beesley decides whether or not there's a stay violation.  The

7  right way to have done this is to have filed a motion to

8  establish whether or not the say is in effect and the right way

9  to have done things would be to postpone the sale and get clear

10 directions from this Court, the United States Bankruptcy Court,

11 which decides and interprets the Bankruptcy Code.

12         So I believe that there -- the debtor believes that

13 there is a clear, clear violation of the automatic stay.  What

14 I'm asking the Court for is that the Court issue an order that

15 the trustee's foreclosure sale that was conducted on June 23rd

16 is void ab initio as requested in my motion that I filed with

17 the Court.  And what I also ask for and this is maybe somewhat

18 novel but instead of addressing damages that Mr. Leverty and

19 his law firm and Allied may be subject to, which I ask for in

20 my motion, I would ask the Court to consider staying the

21 litigation and that the Court order the parties, under Local

22 Rule 9019(1)(A) to a mediation, preferably Judge Spraker,

23 United States Bankruptcy Judge located in Anchorage, Alaska,

24 and that we just continue any decision on whether damages are

25 due from the Leverty Law Firm, Mr. Leverty, or Allied

49

1  Foreclosure Services, and that we proceed to a mediation so

2  that we can stop this insanely complicated tortuously long

3  litigation between the parties.

4          Thank you, Your Honor.

5          THE COURT:  Thank you.

6          MR. RINEHART:  Your Honor, I'd like to address

7  several things there as Mr. Harris mentioned.  This long

8  tortured history.  It's been laid out real clear.  The tortured

9  history comes from I'm skipping out on attorneys' fees.  We won

10 the house for him, 100 percent ownership interest, and then

11 we're not paying attorneys' fees.  Bounce around.  Fraudulently

12 transferred the property on numerous occasions.  Entered

13 settlements already.  Been done with regard to a settlement

14 before Magistrate Judge Cook.  And then they tried backing out

15 of that settlement.  And then they transferred property again.

16 So this is an ongoing matter.

17         Mr. Harris mentions the idea this is -- I mean, not

18 his idea, but mentions that Your Honor, this is the bankruptcy

19 court.  You are the decider of bankruptcy law.  I'm pretty sure

20 through what I talked about, I address the equitable -- I mean

21 the debtor's estate, why they don't have legal title, why they

22 don't have equitable title.  Clearly, even though Mr. Harris

23 once again brings up the deed saying on this date, June 22nd,

24 we filed this deed putting in Loza's name.  That is something

25 that was rejected and deficient.  He mentions, well, we can't

50

1  take counsel's word.  Let's take judicial notice of that

2  Douglas County parcel, Exhibit Number 11.  That clearly shows

3  right there it is in the name of Ray Warren Exley.  That does

4  not need to be something you can take my argument.  I provided

5  exhibits because unlike defendant/debtor who says, oh, I have

6  an equitable interest but has provided nothing to the Court.

7  Just a bare bones statement saying I have interest.  That is

8  not sufficient to determine that oh, we have a -- that Debtor

9  Loza has an equitable interest.

10        Going back to this Court has the ability to determine

11  bankruptcy matters, I cited a couple Code sections where

12  sanctions are available, where the Court, under its inherent

13  powers in 9011 can impose sanctions including determining that

14  this is not part of the debtor's estate.  The Court can dismiss

15  the debtor's filing as fraudulent.  It is clearly done for a

16  not proper purpose.  This Court cannot allow debtor letter --

17  Debtor Loza to sit back, file this matter for improper purpose

18  and in doing so, collaterally attacking the Ninth Judicial

19  State Court decision that this is in Exley's name himself.

20  That has been clearly laid out by the Court.

21        Once again, he talked about creditors.  Well, we want

22  to make sure Loza's creditors are paid.  I've already addressed

23  this once but it's worth addressing again that these are

24  different creditors.  This is not her sole and separate -- I

25  mean, this is Exley's sole and separate property.  This is not

1    Loza's property.  Loza's debtors listed are different than the

2    creditors, the known creditors who have filed creditor claims

3    in the estate.  Once again, this foreclosure sale -- the monies

4    are going into the Ninth Judicial District Court.  They have

5    the ability to supervise this, determine who has claims.  By

6    taking it out of the Ninth Judicial District Court, that puts

7    those creditors, Exley's creditors who the Court has determined

8    is the owner of the property, takes it away from them.  Like I

9    said, different matter.

10            Also, we tried to mediate with Dr. Exley and Ms. Loza

11   and they attended, like I said, they agreed and breached that.

12   Then that was a settlement that was in -- the -- they had to

13   get sanctioned on because they tried backing out of the

14   agreement by the federal court, and the federal court upheld

15   the settlement agreement, which then they transferred property

16   to get it away from since the judge -- and I hope Your Honor

17   sees this is a history of fraudulent transfers.  And like I

18   said, I've addressed the debtor's estate but also, it's

19   important that once we notice bankruptcy court, these are

20   federal codes I'm giving you with regard to the sanctions,

21   inherent powers, and the statutory in 11 U.S.C. 9011 and 11

22   U.S.C. 105.

23            THE COURT:  Okay.  Go ahead.

24            MR. RINEHART:  Let's see if I want to add anything

25   else.

 1          MR. KAUFMANN:  Your Honor --

 2          MR. RINEHART:  And --

 3          MR. KAUFMANN:  -- this is Gene Kaufmann.  May I had a

 4  couple  of things?

 5          THE COURT:  Yes, sir.

 6          MR. KAUFMANN:  This morning, Mr. Rinehart has, on a

 7  number of occasions, addressed this Ninth Judicial District

 8  Court case, and the four fraudulent transfer findings that the

 9  court made.  I just wish to point out to the Court, again, that

10  this is a default judgment.  And I would also wish to apprise

11  the Court that Mr. Leverty's office reasonably knew -- knew

12  that I and another attorney, Kirk Walker in Las Vegas,

13  represented the entities that had been sued in that lawsuit,

14  and we were never notified that there was a default.  And it is

15  a violation of the Nevada Rules of Professional Conduct, Rule

16  3.5(a), relations with opposing counsel, for a lawyer who knows

17  or reasonably knows the identity of a lawyer representing an

18  opposing party, he or she should not take advantage of the

19  lawyer by causing a default for dismissal to be entered without

20  first inquiring about the opposing lawyer's intention to

21  proceed.

22          That default judgment which took place one month ago

23  today is being addressed.  There's going to be a motion filed

24  in the Ninth Judicial District Court to set aside that default,

25  and there's been communication back and forth between

53

1 Mr. Leverty's office and I've been apprised of communication

2 between his office and Mr. Walker's office inquiring about

3 wouild you be willing to agree to set that aside and there's

4 been a refusal, and there is another case that's been filed to

5 adjudicate and determine the title to the Panorama property.

6          So all of the fraudulent transfers that they've

7 alleged or the findings of those fraudulent transfers are based

8 upon that one default judgment.  Matters should be heard on

9 their merits, and the reason for this bankruptcy was not to

10 avoid creditors.  It's not to defraud creditors.  It's to

11 ascertain and make sure that more creditors can be taken care

12 of because even now with the price of $979,000, it could be

13 that the estate is still insolvent.  And so Mr. Rinehart's

14 saying that oh, wouldn't it be wonderful if the money goes to

15 the Ninth Judicial District Court and the Ninth Judicial

16 District Court can parcel out the money.  Well, Ms. Loza has a

17 equitable interest in the estate, because she's Mr. -- or Dr.

18 Exley's widow, that she should be able to participate in that

19 estate and so if we were able to obtain $1.4 million and the

20 estate isn't insolvent right now with the 979,000 that's coming

21 its way, that's $300,000 that would be going to Ms. Loza.

22          So trying to short circuit this is wrong.  The

23 bankruptcy stay is there for a reason, and it is to protect

24 someone's legal or equitable interest in property.  And for

25 Leverty's office to decide on their own that there's been a

54

1  fraudulent transfer here, decide on their own these things that

2  haven't been decided on its merits is simply wrong.  That's the

3  reason the Bankruptcy Code exists.

4       Your Honor knows that I do not have a lot to do with

5  the bankruptcy court.  The last case that I was involved in

6  began 10 years and one day ago.  It was the John Davis Trucking

7  accident out -- that hit the AmTrak train.  It's especially

8  fresh in my mind right now because in addition to being a

9  lawyer involved in that case, I had relatives that were on that

10 train.  My sister and my nephew.  I'm supposed to go to the

11 AmTrak train station this morning, Your Honor, to pick them up

12 because they are here to commemorate the events that happened

13 that day, because it was a profound injury to my nephew and

14 even though he didn't make a claim, he suffered enormously

15 because of that accident.  It changed the course of his life.

16 AmTrak and Union Pacific Railroad immediately filed a case.  A

17 number of other injured parties filed a case. Ultimately, it

18 was either adjudicated or determined that it was about $44

19 million that was owed.  And -- but the creditors didn't --

20 those creditors didn't take things into their own hands once

21 John Davis Trucking filed for bankruptcy.  They respected the

22 automatic stay and Your Honor, these creditors should have done

23 the same.

24       THE COURT:  Thank you.

25       MR. HARRIS:  Your Honor, Steve Harris.  Very, very

1   briefly.  I can respond to Mr. Rinehart's allegations as to

2   their version of the events and issues, but I think what is of

3   primary importance right now today is that the integrity of

4   this Court, the United States Bankruptcy Court, must be

5   preserved and maintained, and parties do not have the right to

6   unilaterally decide on their own whether or not the stay is in

7   place or is not in place.  And that's why I brought the

8   motions, because there's a clear violation by Allied and

9   Leverty as to the automatic stay provisions at 362(a).

10          Now, I've asked that the trustee foreclosure sale be

11  voided and that's in accordance with the Schwartz case, which

12  is cited in my motion, and I would ask for an order on that.

13  And I would hope the Court would follow through with my

14  suggestion and put any damages occasioned by the stay

15  violation, put them out in the future and have the Court, under

16  Local Rule 9019(1)(a), order the parties to mediation to the

17  next available mediator, and to put a stay on these litigation

18  proceedings to see if we can get things resolved.  Thank you.

19          THE COURT:  Thank you.

20          So here's what I'm going to do --

21          MR. RINEHART:  Your Honor, this is --

22          THE COURT:  I'm sorry.  Go ahead.

23          MR. RINEHART:  -- Jess Rinehart.  I think I see a

24  number of things to impact there.

25          The first thing, last thing mentioned was order us to

56

1  mediation.  Once again, that happened.  Federal Court already

2  ordered us to mediation.  We settled the matter.  Then they

3  backed out.  And then the (indiscernible), the Court had to

4  then uphold that settlement agreement that was agreed upon and

5  then issue sanctions above -- I mean, appropriately $45,045 for

6  it.

7        Mr. Harris mentioned -- talks about the integrity of

8  the Court.  Th is is a clear violation of the stay.  While I've

9  obviously laid out factually why it's not a violation fo the

10  say, that it's not in the bankruptcy estate, this is also a

11  clearly improper bad faith file.  The Court cannot offer -- the

12  integrity of the Court and Mr. Harris.  The Court cannot allow

13  Ms. Loza to do a bad faith, improper filing before the Court

14  collaterally attacking Ninth Judicial State Court judgments.

15        They mentioned the default.  They were served with

16  the default.  All the parties received default.  The Ninth -- I

17  mean the state court, the Ninth Judicial Court reviewed

18  pleadings, had sufficient documents after hearing argument,

19  viewing pleadings in evidence, drew upon that and determined

20  those were fraudulent transfers.  So even if Mr. Kaufmann

21  mentioned, oh, well, you talked about fraudulent transfers.

22  No.  Those were determined by a judgement.  Those are a

23  judgment on this matter.  It's not just talking about it.

24        Once again, we need to emphasize that there has been

25  no stay violation here because of real property and evidence by

57

1  Exhibit 17.  It's held in the name of Exley and not the family

2  trust, Athena, Loza.  No one else has ownership interest here.

3  It is clearly in Exley's name pursuant to a court order that

4  they are now trying to collaterally attack via improper, bad

5  faith filing before this Court so this Court has the inherent

6  powers and statutory authority to not allow that.  To not allow

7  this collateral attack on a state court judgment.

8          MS. LOZA:  Your Honor, this is --

9          MR. RINEHART:  Thank you.

10         MS. LOZA:  -- Ms. Loza.  I'd like to -- I would

11 really like to address the Court, if I may?

12         THE COURT:  Ms. Loza, go ahead, please.

13         MS. LOZA:  Your Honor, first of all, the entire

14 matter began in a courtroom in Douglas County on January 19th,

15 2017, when Judge Gregory requested that Lois O'Brien signed a

16 quit claim deed deeding my husband the entire --

17         MR. RINEHART:  Your Honor --

18         MS. LOZA:  -- property.  The entire property.

19 This --

20         MR. RINEHART:  Your Honor, I'm going to object --

21         MS. LOZA:  -- in that --

22         MR. RINEHART:  Your Honor, I'm going to object --

23         MS. LOZA:  -- in that --

24         MR. RINEHART:  Your Honor, I'd like to object.  There

25 are two lawyers arguing and Ms. Loza arguing --

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

58

1          MS. LOZA:  Ms. Loza is --

2          MR. RINEHART:  -- on behalf --

3          THE COURT:  Everyone be quiet.

4          MS. LOZA:  You have slandered -- you have slandered

5     me.

6          THE COURT:  Be quiet.  Ma'am, you go ahead.

7          MS. LOZA:  Yes.

8          THE COURT:  Sir --

9          MS. LOZA:  Mr. Rinehart was present --

10          THE COURT:  Ma'am, stop, stop, stop for a moment.

11          MS. LOZA:  I'm sorry.

12          THE COURT:  Please go ahead.

13          MS. LOZA:  Yes.

14          THE COURT:  Calm down a little bit.  Go ahead --

15          MS. LOZA:  Okay.

16          THE COURT:  -- what you have to say --

17          MS. LOZA:  Thank you, Your Honor.  Okay.

18          THE COURT:  -- other parties can --

19          MS. LOZA:  Okay.

20          THE COURT:  -- go ahead and speak afterwards.  Please

21     do not interrupt her.

22          MS. LOZA:  Okay.

23          THE COURT:  Go ahead, ma'am.

24          MS. LOZA:  Thank you, Your Honor.

25          Judge Gregory ordered Dr. O'Brien to sign the quit

59

1  claim, which he'd refused to do.  The judge hands it -- the

2  judge handed the -- the quit claim to the clerk, who handed it

3  to Mr. -- Mr. Ginn, who's Mr. Rinehart's associate.  Mr. Ginn

4  took the quit claim and gave Dr. Exley an empty envelope.  He

5  stole the quit claim from the Court, from Dr. Exley, and when

6  we tried to -- when we tried to record it the next day, there

7  wasn't anything in the envelope.

8          Now, prior -- prior to the hearing, I had negotiated

9  a $750,000 mortgage and all we needed to do was establish

10 Dr. Exley's ownership.

11         They then filed -- they then refused to turn over the

12 quit claim.  They then filed a lien which under _Golightly_ was a

13 fraudulent lien.  They then prevented us -- tried to prevent us

14 from getting our -- our judgment against Dr. O'Brien by

15 refusing to sign the -- the affidavit.

16         Mr. Rinehart refers to the $130,000 loan.  The

17 $130,000 loan was a (indiscernible) loan, which was to pay off

18 Mr. Leverty.  We got the loan for 150,000.  Our net was

19 133,000.  Our attorney at the time, Mr. Jones (phonetic),

20 contacted Mr. Leverty.  I contacted Mr. Leverty and said we're

21 ready.  Do you want to -- we need to sign contract.  We have

22 the money and -- and let's go.  Their answer was to adjudicate

23 the effectively fraudulent lien which, by the way, the -- Judge

24 Gregory set that aside and -- along with other various

25 litigations.

60

1          The next thing that happened was that we had the
2    mediation in which they denied that they had -- they had sought
3    a adjudication on the very -- this was in the federal case --
4    on the very issue that they were litigating.  The reason that
5    we could not sign the -- we submitted varying versions of
6    the -- this was in the federal case now -- of the -- of the
7    settlement agreement.  They improperly included me as a party
8    to the agreement.  I prepared a settlement between me and
9    Mr. Leverty's office, and my husband and Mr. -- for counsel to
10   sign between Dr. Exley.  They refused those because they
11   inssited on including the ERISA pension plan.

12         Now the -- they then sealed all the documents and we
13   never received a copy of their proposed settlement.  In the
14   hearing with Judge -- with Magistrate Judge Cook, they never
15   addressed the issue, and in -- but the -- but the order, which
16   you signed, which Mr. Leverty's office had supplied, included
17   the pension plans and which the Court removed.

18         Now they have sealed those and prevented us from
19   having them.  As part of that agreement, by the way Your Honor,
20   I think it was Section 4, Mr. Leverty agreed to assist in any
21   way possible Dr. Exley in getting a lien -- a line of credit on
22   the property.  We transferred -- something that's been admitted
23   is a loan from 1987, which Mr. Leverty's office codified in
24   2014 for 200,000 which because of interest and requirements of
25   ERISA is now up to $1.4 million.  That -- he's completely

61

1  ignored -- ignores that, and that is the reason and issues

2  within ERISA why the plan took ownership of the property,

3  because Dr. Exley would've been fined $300,000 for a -- for a

4  deemed distribution.

5           I'm almost done with this.

6           THE COURT:  Go ahead.

7           MS. LOZA:  Then, as part of this fiduciary duty,

8  Athena 3, who was the owner -- Athena 1 who had the note

9  couldn't legally hold the property because of the defined

10 contribution plan -- the defined benefit plan.  Athena put the

11 property on the market on the 21st of April, 2018.  We signed

12 an agreement to sell.  The price was 900-and-something

13 thousand.  Well, this was, you know, a number of years ago.

14 Anyway, we were in the midst of closing escrow.  Now escrow

15 included the total and absolute adherence to the -- to the --

16 excuse me a second -- to the Douglas County falsely adjudicated

17 hundred of fees plus interest and instead of -- and when

18 Mr. Ginn was contacted, he said, well, why don't you just pay

19 them directly to us, and we said, well, there's a court order.

20 We have to pay it to the -- to the Douglas County.  They then,

21 on the 7th of May, filed a lis pendens which blocked the sale.

22 We filed an emergency motion to exonerate the -- or to remove

23 the lis pendens.  It was denied by Magistrate Cook.  We then

24 hired new counsel.  She also denied that; however,

25 approximately a year later when Judge Cobb was now the

62

1  magistrate, they found that the lis pendens was improper.

2          Mr. Leverty then filed an appeal in the Ninth

3  Circuit.  The Circuit -- the Ninth Circuit absolutely rejected

4  Mr. Leverty's claims and stated that Mr. Leverty had no -- had

5  no claim, whatsoever, on the property.  There have been five --

6  then, just the most recently after my husband passed away --

7          THE COURT:  It's all right.

8          MS. LOZA:  -- and he passed away because Leverty

9  demanded he appear in court and he had a stroke in court on

10 the -- on the 30th of -- on the 29th of October, 2019.

11         Anyway -- excuse me -- and then Leverty said, well, I

12 don't have -- I can't present case because I'm not ready.  I

13 then made an effort over the last three years to get financing

14 on the property.  Mr. Leverty has clouded the title with his

15 false and ridiculous recordings to the extent that we have had

16 to file the quiet claim.  As late as last Wednesday, I had a --

17 I had 50 -- $500,000 in a escrow account awaiting title

18 insurance.  They couldn't issue the title insurance because of

19 all of the -- of the vicious and vexatious recordings which

20 Mr. Leverty has done.  From the very moment that Dr. Exley had

21 the property, they're fast of the quit claim.  Their refusal to

22 provide the quit claim.  They're suing Dr. Exley.  Their

23 refusal to sign the (indiscernible) agreement -- I had to hire

24 a lawyer for $30,000 who basically said we're going to take you

25 into deposition, and you're going to depose on the bills and

63

1 then we'll use that as your declaration.  But the Court then
2 gave Dr. Exley an independent from the -- the adjudication, the
3 claims to Dr. Exley.  Dr. Exley called Mr. Leverty and said,
4 Gene, take this.  This is 180-something-thousand.  You're
5 claiming 151,000 in legal fees based on billings of 90,000.
6 That didn't matter.  You take the settlement with Lois and
7 we're done.  He refused.  Dr. Exley then had to expend a
8 significant amount of money in the sister -- sister state.
9 Then Mr. Leverty tried to come back and claim -- and claim
10 contempt of court because he hadn't given the money to Leverty
11 through -- after having collected it.  Judge Gregory completely
12 rejected that.  And in fact, the case -- Judge Gregory rejected
13 everything.  And that case has been remanded back from the
14 Supreme Court without a decision, simply that it needs to be
15 reconsidered by Judge Gregory, which should take precedence
16 over the -- over the fraudulent transfer case.
17         I was never served anything (indiscernible).
18 Mr. Leverty, Mr. Ginn, Mr. Guess -- sorry -- all were fully
19 aware that I was represented by this -- either myself, the
20 plan, or the estate -- or the estate, or Dr. Exley were
21 represented by Mr. Sullivan and by Mr. Walker.  They ignored
22 this and we -- we're filing -- we've -- there was a mess up and
23 we're filing the motion to set aside that decision.  These are
24 all very, very carefully planned means by which -- to defraud
25 Dr. Exley of his property and totally under -- I can't figure

64

1  out why, but the issue before you, Your Honor, is do we let

2  these -- do we let their fraud and their innuendo and -- oh, by

3  the way.  There -- there's a non -- there's a non-defamation

4  clause in the settlement agreement as well, which I guess even

5  just by what Mr. Rinehart said today has been violated.  And --

6  and we just -- we need to be able to take a step back and

7  review all of what's gone on in terms of the questionable

8  actions by Mr. Leverty, including the most recent, which I

9  think is probably the most poignant in the fact of the

10 filing -- first of all, there's so many wrong misstatements

11 of -- throughout the entire pleadings that he made that was --

12 that was adopted by default that you could fill a book with.

13 You could fill a -- you could sell a matchbook with the truth

14 and a library book -- and a library with the false, the most

15 important of which is that Athena was a safe for Dr. Exley.

16 Dr. Exley resigned from the Board of Athena in 2014 and has not

17 been directly associated with Athena.  He is -- it's an ERISA

18 pension plan.  It's a qualified ERISA pension plan, and these

19 people just steam roll that.

20         I really employ Your Honor to look at the truth, not

21 at the slander, the innuendo of Mr. -- Jess, what's your last

22 name?

23         MR. RINEHART:  Rinehart.

24         MS. LOZA:  Rinehart.  That's right.  Mr. Rinehart

25 who, you know, very eloquent (indiscernible) very eloquently

1   spouted lies, and we can very clearly, with very clear

2   evidence, counter everything he said, especially the aspects of

3   the false -- of the false (indiscernible).  All -- every single

4   action by me, by Ms. Van Buren, by the rest of the board of

5   directors of the Athena pension plans was done under ERISA and

6   very clearly.  ERISA doesn't forgive, and we are qualified, and

7   those were all done to prevent loss of assets to either

8   taxation or to -- or to fraudulent claims by -- such as those

9   by Mr. Leverty.

10          I really appreciate, Your Honor, taking the time to

11   listen to what I had to say.

12          THE COURT:  Certainly.

13          MS. LOZA:  Thank you so much.

14          THE COURT:  Thank you very much.

15          MR. LEVERTY:  Your Honor, this is Gene Leverty.  Can

16   I say a word --

17          THE COURT:  Please go ahead.

18          MR. LEVERTY:  -- with regard to a response?

19          THE COURT:  Yes.  Please go ahead.

20          MR. LEVERTY:  Yes, Your Honor.

21          It's quick.  All I ask is -- say to support this is

22   that the Court, with respect to the Nevada Supreme Court

23   overruled Judge Gregory and said that how he applied the law

24   with regard to our lien was not correct, and he did send it

25   back, but it -- and he didn't say that the Supreme Court upheld

66

1  that our lien was still in effect.   Number -- with regard to

2  our first for attorneys' fees.

3         With regard to the second we purchased, we purchased

4  it with the understanding that they had -- Dr. Exley and

5  Ms. Loza had obtained a loan and that in the process of that

6  loan, that Athena agree to the -- that loan and, therefore, it

7  was not subject to Athena.   Now, they're contending and filed

8  papers that it -- that Dr. -- that Athena didn't have that

9  right and they also content something that's very important.

10  There's documentation that at one point that alleged ERISA

11  entity that Athena was paid in full and it was only after

12  litigation that suddenly that lien wasn't paid as determined

13  later on.   So we have records to demonstrate that the lien with

14  regard to Athena was totally satisfied, and then after, it

15  became more apparent that they wanted to use it than Ms. Loza

16  and Ms. Van Buren who I think are one in the same person, but

17  they, at that point, descended after the loan was made

18  allegedly what -- that Athena forgave the loan.

19         The last thing with regard to service of process.

20  The services of process was -- we got -- they were served.   She

21  was served.   We have proof with regard t the courts that we

22  filed for the default.   She was served and she's knowledgeable

23  of it and -- you know, so the story goes on.   We both have our

24  sides.   Our side is the fact that we attempted to work with

25  these people numerous times and without success because that

67

 1   wasn't their intent.  All the -- at this point -- and I want to

 2   bring to the Court's attention that I take -- we have not done

 3   anything with regard to damaging with regard to Ms. Loza or

 4   Dr. Exley.  We have, in fact, made sure in the Ninth Circuit

 5   with regard to the default, that we were clear that the money

 6   would be put into the courts and interpled so it could be

 7   properly dispersed at the time.  So, you know, we are -- have

 8   moved in the direction of protecting the creditors, not vice

 9   versa.  And we are not bankruptcy lawyers.  I can assure you.

10   However with regard to our analysis with regard to whether or

11   not Ms. Loza had an interest demonstrated to us that she had no

12   interest and today, they have failed to show that she has an

13   interest with regard to Ray Exley's estate other than what they

14   just told you and they've -- she's also -- that no showing with

15   regard to that she is going to inherit Athena 3 or what --

16   Athena 3 has -- I think the most truthful thing she said is

17   that the 150 -- I mean the initial loan was to Dr. Exley and to

18   Ms. O'Brien -- Dr. O'Brien, his ex-wife.  That loan was made by

19   Athena 1, not Athena 3.  For whatever reasons they played with

20   that and transferred it a well.  So this is a shell game, Your

21   Honor and this is just another further action by Ms. Loza who

22   represents herself as being a lawyer but she's not admitted

23   anywhere.  In fact, Judge Cook, Magistrate Cook determined that

24   she could not go forward in her courtroom because she was not

25   an attorney and she represented and she indicated that she's an

68

1  attorney somewhere in a foreign country.  I'm not sure where.
2  But we ask this Court -- most importantly, as -- we didn't do
3  anything sanctionable with regard to this.  The sanctionable
4  part has always been with regard to our dealings.  We'
5  ve attempted to work with Ms Loza and Dr. Exley, and the
6  representations that we have somehow not agreed, it's only that
7  we didn't agree to take less than what we thought we were
8  entitled to.  That's not holding up somebody.  It's basically
9  negotiating and they refused negotiation.  Thank you, Your
10 Honor.
11             THE COURT:  Thank you.
12             MS. LOZA:  May I rebut, Your Honor?
13             THE COURT:  You may.
14             MS. LOZA:  Yes.  First of all, the note from Athena 1
15 to Dr. Exley was drawn up by you, as a codification.  The
16 discharge was rejected by the -- by all of the title company
17 because your office made a mistake in the name of the plan
18 being released.
19             Subsequent, Dr. O'Brien has recanted her statement
20 that the loan was repaid and in fact, demanded in the family
21 law matter that she get the $200,000 that was owed to her.  In
22 part, base on your advice, we did not file a retraction of
23 that.  As far as the -- your intent, I'm just curious, how did
24 you come upon possession of the quit claim.
25             MR. KAUFMANN:  Ms. Loza, as your attorney --

69

1  Mr. Kaufmann's here speaking here, you should address your

2  comments only to the Court and not to --

3            MS. LOZA:  Okay.

4            MR. KAUFMANN:  -- Mr. Leverty.

5            MS. LOZA:  I'm sorry.  Thank you.  I'm sorry, Your

6  Honor.

7            Thank you Steve -- or thank you, Gene.

8            Anyway, there has been -- the -- just the very fact

9  that in the midst of a sale, a bonafide sale, by the way, for

10 which Athena has been sued for failure to complete because of

11 Mr. Leverty's lis pendens, they block the sale.  They were

12 going to be paid all of their money.  They blocked the sale.

13 Then they appealed the blocking of the sale and both the

14 District Court in Nevada, as well as the Court of Appeals, both

15 said that they were wrong in doing that.  That was malicious.

16 That was vexatious.  There was no reason for that.

17            The settlement, as far as he's concerned, is -- was

18 the -- he was offered 130, he accepted 130, and then decided he

19 was going to -- he could get more.  The only person who's been

20 dishonest, vexatious in this entire mess has been Vernon

21 Leverty.  He could have had this entire thing settled numerous

22 time, but he preferred to steal documents, file false document,

23 not be honest with the Court.  And by the way, the issue of

24 the -- that the Supreme Court rejected was that the lien did

25 not qualify as a one-action lien.

70

 1          Now, base on the facts rather than the
 2    misinterpretation, his portrayal, that was not a charging lien
 3    and it was not a charging lien because the property had been --
 4    the judgment had been registered in December of 2016 prior to
 5    the lien and, therefore, Mr. Leverty did not even have the
 6    authority to file the attorney's lien.
 7          In any event, I really think that, as Your Honor can
 8    probably see, that this is a mess.  I have been blocked on a
 9    dozen, half a dozen opportunities to liquidate -- to finance
10    the property and to settle these issues and each and every
11    time, Vernon Leverty or his comrades have blocked that, and he
12    just -- he's excellent in misrepresenting the truth.  There's
13    no (audio interference) misrepresenting facts of the enemy as
14    truth, and I'm going to implore Your Honor to give us an
15    opportunity to step back from this.  The only thing I would
16    like most important is if we were able to clear the title to
17    the point where I can get my rightful and Dr. Exley's rightful
18    and Athena pension plan rightful ownership of the property, we
19    can promote that and then we can take care of the mounting and
20    ridiculous fees and costs and move forward as whole people, not
21    as fractured, damaged, and exploited by a smooth-talking, very
22    literate, very well educated, and in more sane times, very
23    articulate and collaborative individual than Mr. Vernon
24    Leverty.  Thank you, Your Honor.
25          THE COURT:  Thank you.

ACCESS TRANSCRIPTS, LLC                    1-855-USE-ACCESS (873-2223)

1          MR. RINEHART:  Your Honor --

2          THE COURT:  Anyone else?

3          MR. RINEHART:  Your Honor, this is Jess Rinehart.

4          THE COURT:  I'm sorry.  Say, again, sir.

5          MR. RINEHART:  Do you mind if I -- Your Honor, this

6  is Jess Rinehart.  Do you mind if I add something?

7          THE COURT:  You may.

8          MR. RINEHART:  Couple things here.  Obviously, that

9  was a lot of inflammatory statements by Ms. Loza on her own

10 who's represented by counsel.  She talks about the truth, being

11 enemy of lies, and something along those lines.  But we have

12 some issues here and she's talking about the -- this -- not

13 allowed lien, not a -- this lien is not allowed.  It's totally

14 illegal what she was saying.  I have a -- in front of me,

15 and -- the order of reversal (indiscernible) Supreme Court that

16 the District Court erred on the matter, and it's being sent

17 down for reversal on it, that it's a valid lien.  Ms. Loza, I

18 think we need to concentrate on those actual facts in evidence,

19 not a lot of inflammatory statement (indiscernible).

20          She also said oh, this default was done in such a

21 way, it was done behind my back.  I didn't know.  Didn't

22 anything.  I would like to point out, have Your Honor look at

23 Exhibit 16.  She mentioned the judgment against her as

24 fraudulent.  They didn't -- so she was -- but if Your Honor can

25 look at Exhibit 16.

72

```
 1              THE COURT:  Sir, you're breaking up.  Could you
 2   please repeat what you said?
 3              MR. RINEHART:  Yes, Your Honor.
 4              She mentioned the judgment by default was done behind
 5   her back, didn't know about it, wasn't -- she didn't -- she
 6   wasn't served or anything like that.  If I could point your
 7   direction of Your Honor to Exhibit Number 16.
 8              THE COURT:  Hang on.  Hang on.  Exhibit 16.  Let's
 9   see here.  Can you find me Exhibit 16, please.
10              MS. LOZA:  What document is that?
11              MR. RINEHART:  That would be Exhibit 16 to our
12   opposition --
13              THE COURT:  Yes, ma'am.
14              MR. RINEHART:  -- that was filed this morning.
15              THE COURT:  So hang on for just a second here.
16              MR. RINEHART:  Of course, Your Honor.
17         (Pause)
18              THE COURT:  Okay.  Exhibit -- thank you.  So
19   Exhibit 16 is a declaration of service and complaint.  Is that
20   correct?
21              MR. RINEHART:  Yes, Your Honor.  And I'd like to
22   direct your attention to the second page.  The party was served
23   was Juliana Mayer Loza -- Mayer Loza.
24              MS. LOZA: I was not present.
25              MR. RINEHART:  So I guess the -- that the Court's to
```

73

1  believe here is that this affiant, who works for serving people

2  is apparently lying to the Court.  I think we see a theme here.

3          MS. LOZA:  Yeah, yours.

4          MR. RINEHART:  Of course, we also heard a lot fo

5  things about the settlement agreement and all these things that

6  Leverty is wrong in settlement agreement.  I'd like to remind

7  the Court that the settlement agreement was upheld and they

8  were sanctioned $45,000 for their behavior.  The other courts

9  dealing with them, have noticed a trend and have ruled as such.

10 The judgment --

11         MS. LOZA:  Why --

12         MR. RINEHART:  -- shows four fraudulent transfers.

13 The Court has decided --

14         THE COURT:  Ma'am --

15         MR. RINEHART:  -- that based upon the evidence --

16         THE COURT:  -- ma'am, please -- please let him

17 speak --

18         MR. RINEHART:  -- provided to the Court --

19         THE COURT:  -- don't interrupt --

20         MR. RINEHART:  -- they can't make unilateral

21 decisions just on their own accord.  There has to be presented

22 evidence.  Based upon that evidence, the pleadings on file,

23 they determined it was fraudulent.

24         THE COURT:  Okay.  Thank you very much.  I'm going to

25 take the matter under advisement.  We'll be in recess.  Thank

74

1  you.

2          (Proceedings concluded at 12:05 p.m.)

3                        * * * * *

4

5

6

7

8

9

10

11

12

13

14                **C E R T I F I C A T I O N**

15

16          I, Alicia Jarrett, court-approved transcriber, hereby

17  certify that the foregoing is a correct transcript from the

18  official electronic sound recording of the proceedings in the

19  above-entitled matter.

20

21

22

23  _Alicia J. Jarrett_

24  ALICIA JARRETT, AAERT NO. 428    DATE:  August 5, 2021

25  ACCESS TRANSCRIPTS, LLC


ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC
6151 LAKESIDE DRIVE
SUITE 2100
RENO, NEVADA 89511
TELEPHONE: (775) 786-7600

1   CASE NO.:   20-PB-00129

2   DEPT. NO.   I

3   The undersigned affirms that the below
    document does not contain the social
4   security number of any person.

5

6           IN THE NINTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

7                   IN AND FOR THE COUNTY OF DOUGLAS

8

9

10  IN THE MATTER OF THE ESTATE OF,      NOTICE OF LODGED WILLS

11  RAY WARREN EXLEY,

12              Deceased.

13  _____/

14

15       Special Administrator, JULIANA M. LOZA, by and through her

16  attorney, GENE M. KAUFMANN, of SULLIVAN LAW  hereby lodges the

17  attached Wills of RAY WARREN EXLEY.

18       The most recent of the Wills is attached as Exhibit A, and

19  is a copy of a Will that is the true Will of the Decedent.   To

20  date, the original of this Will has not been located.

21  Therefore, a second holographic Will is attached as Exhibit B.

22  Substantively, the Wills are similar in that both name

23  Decedent's spouse, JULIANA M. LOZA, Executrix, to serve without

24  bond, and both name her as the primary beneficiary.

25       At this time, the Special Administrator is not seeking to

26  probate either of these Wills since it appears that the Decedent

27  did not have any assets subject to probate.

28  ///

Dated:   July 22, 2021          SULLIVAN LAW
                                A Professional Corporation


                        By:     _____
                                GENE M. KAUFMANN, Bar No. 6704
                                Attorneys for Petitioner,
                                JULIANA M. LOZA

                                1625 State Route 88, Suite 401
                                Minden, NV 89423

                                Telephone:   (775) 782-6915
                                Telecopier:  (775) 782-3439

2

**EXHIBIT A**

# LAST WILL AND TESTAMENT OF RAY WARREN EXLEY, M.D.

I, Ray Warren Exley, being of sound mind wish to provide the following instructions for the dispersion of all of my worldly possessions, including all real and personal property, including all rights owned or assigned to me as patents, or copyrights, and including benefits of any legal proceeding(s) including my divorce from my former wife Lois Margret O'Brien, MD of Los Angeles, CA. I also bequeath all rights and benefits of my Athena Medical Group, Inc., ERISA Retirement Plans and Trust and all Insurance policies known or unknown to which I am a subject beneficiary or owner. I am also the Trustee of the Ray Warren Exley, M.D. Nevada Family Trust and my wife Juliana Loza is the successor Trustee who shall succeed me in that Trust.

I am a citizen and Resident of Stateline, NV 89449 and therefore, I wish that if any probate is necessary, that it will be in Nevada, preferably in Douglas County Courts, in Minden, Nevada.

The primary and irrevocable beneficiary of my entire estate is my wife, Ms. Juliana Mayer Loza Exley, (aka Juliana Loza) to whom I bequeath 100 percent. She shall serve as executor, without bond.

Should Ms. Juliana Loza be unable to serve as Executor, my wife's dear cousin, Ms. Ingrid van Vuerings shall serve as executor, serving without bond. Should Juliana pre-decease me Ms. Van Vuerings shall receive the bequeathment made to Juliana. Should both Juliana and Ingrid pre-decease me, the entirety of my estate shall be passed to my brother, Charles Edward Exley of Humeston, Iowa.

At Charles' sole discretion or should he pre-decease me, Charles may waive receipt of any part or all of his bequest, in favor of his two children, Lisa and Cindy, whom if they or my brother Charles are beneficiaries, may serve at the discretion of Charles Exley as co-executors, without bond.

To my former wife, Ms. Lois M. O'Brien is bequeathed $10.00 but is otherwise she totally excluded from receiving any benefit or rights to anything of value which is in my estate

Any person who contests these directions, or files litigation challenging this will is automatically excluded 100% from any bequest from my estate, including rights to patents pensions, or any other assets to be distributed by this will..

Signed _____                4-12-2020

RAY WARREN EXLEY                                          Date of signing

Witness #1 _____ 4-12-20        James Tucker

Signature                          Date                   Printed name

Witness #2 _____ 4/12/20        Griselle Peterson

Signature                          Date                   Printed name

This will is only one page

EXHIBIT B

① Last Will & Testimony

I, Ray Warren Exley M.D., being of sound mind have the following directions in the event of my death.

① This document was written on 2 Aug 2012 and supercedes and replaces all prior wills or other instructions —

② I appoint Jillian Loza also known as Jillian-Mayer Loya without Bond. RE / as Executrix Her compensation should be as prescribed by applicable law — as should all of this Will.

1/4 Page  I bequest, give, and/or transferred to Ms. Jillian Mayer-Loya all of my worldly assets,

including everything I own.

I instruct Ms Loya that she
is to pay my outstanding
debts according to her best judgment
of whether the claims are honestly
justified. I wish that the
following persons outstanding bills
be paid as soon as possible -

(1) Charles Exley — My brother
(2) Mr Gary Capata, my CPA
3   Mr Tom Moran my attorney

If at the time of my death I was
before the most recent set
of patents on my medical discoveries

4/4 Page #

expire, they become very valuable. I request Ms. Soza to share that with the following again in amount according to her judgement. My suggestions are as follows. If the value is together at the time of disbursement.

① My brother & sister (Carol) should get equal shares in amount of between $100,000.00 $500,088.00 per each - each year the profits are strong enough to support this bequest and not compromise any of Ms. Soza's needs in her judgement. (meant by maximum)

2. Jerri Tait should get $10,000.00 to $100,500.00/yr - under same terms as #1 above for my sets

3. Joan Carol (Blechman) - at 9502 High R Place same as number 2 above.

my former neighbor

3/4 Pages

This is the last Page +
end of this Will.

Ray Exley    2 Aug 2012

Witness: Shelly Goldberg    8/2/12
Shelly Goldberg

witness:    Avi Osadon    8/2/12

Codecyl.

I, Ray Exley, add the following
instruction. Should ms. Long die
before me an w, the 24hrs of my death
then her name should be replaced
with my brother Charles Exley in this
Will.    He will be executed, etc.    Ray Exley    8-3-12

4 Pages

CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am not a party to this action and I served a true and correct copy of the document entitled NOTICE OF LODGED WILL addressed to:

Elliot S. Blut
300 South Fourth Street, Suite 701
Las Vegas, Nevada 89101

[X] BY U.S. MAIL: I deposited for mailing in the United States mail, both regular first class mail and Priority Mail, with postage fully prepaid, an envelope containing the above-identified document at Minden, Nevada, in the ordinary course of business.

[ ] BY MESSENGER SERVICE: I delivered the above-identified document to Reno-Carson Messenger Service for delivery to the offices of the addressee.

[ ] BY HAND DELIVERY: I hand delivered an envelope containing the above-identified document to the addressee stated above, in the ordinary course of business.

[ ] BY ELECTRONIC EMAIL SERVICE: I sent an email to E-Mail addresses of counsel stated above, in the ordinary course of business.

Dated 7/22/2021

By: _____
     Susan Happe



SULLIVAN LAW

NEVADA · CALIFORNIA · ARIZONA

1625 Highway 88, Suite 401
Minden, NV 89423

Elliot S. Blut
300 South Fourth Street, Suite 701
Las Vegas, Nevada 89101

