# Exhibit 1

# Exhibit 1

# Declaration of Juliana Loza-Exley

I am not a party to the above action and have never been a party to any litigation between Dr. Ray Exley and Gene Leverty or the Leverty Law Firm.

**1.**     On February 1, 2018, Magistrate Cooke make a chambers order requiring that Juliana Loza-Exley appear for a hearing on February 21st, 2018. This order was made "**as if I am a party**"; WHICH I AM NOT.

**2.**     On or about January 30, 2018, I confirmed an appointment in Nice, France for a signing ceremony for the sale of a property in Alpes Maritimes Department of south east France. The property is owned by a family trust and requires the signature of all trustees, myself and my two brothers. The sale process in France legally requires the presence of all parties; both buyer and seller including their Real Estate Attorneys called a Notaire and general a Magistrate. Therefore, as this commitment was made over a week after the Magistrates first order for Dr. Exley's appearance alone. That order made no request for my attendance and therefore was NO CONFLICT FOR ME.

**3.**     Through Defendant Dr. Exley, it was respectfully requested that the hearing be continued until after my return from my business in Europe (ECF 81). The Court flatly denied such request however the Court is in error in its assertion of jurisdiction over a nonparty, in its arbitrary authority to order a non-party (Loza) to appear. The court is clearly conflicted and perhaps externally influenced as to my status PARTY OR NON PARTY

**4.**     *Is Juliana Loza A PARTY OR--- a NON PARTY?* Juliana Loza-Exley is not a PARTY under F.R.C.P. Rule 11 or Rule 17. Despite this, Magistrate Cooke has ordered Loza a nonparty to appear.

**5.**     In the present Magistrate's Order (ECF 83) the court seems to be making broad and unfortunate threats. First to ignore a properly filed and noticed motion and second, to refer me (Juliana Loza) for criminal prosecution for violating a statute which is inapplicable. This is so shocking I must state the incredible breach of ethics as to not lose the importance:

DECLARATION OF JULIANA LOZA IN SUPPORT OF ORDER CONTINUING HEARING DATE

*The motion to enforce settlement will be heard by this court on February 21, 2018 at 10:00 a.m. (Pacific Time) (ECF No. 80). Ray Warren Exley and Juliana Loza-Exley are ordered to appear either in person or telephonically for the entirety of the hearing. If Dr. Exley fails to appear, the court may consider the motion to enforce settlement unopposed and grant the motion in its entirety.*

The Court continues its' threat:

*Juliana Loza-Exley is hereby notified that the court is considering a referral to the State Bar of Nevada for practicing law without a license in this case. If either party fails to appear, both Dr. Exley and Juliana Loza-Exley are notified that they may be subject to sanctions in this matter for failure to follow court a court order pursuant to Local Rule IA 11-8 and under 28 U.S.C. § 1927 and the inherent power of the court.*

Each and every statements of the Court's Order above ECF 83 not only shocking and in my mind, improper and biased to the point of misconduct. In the first quote the Court threatens some level of malpractice or misconduct which is unbelievable in the US Justice System I learned at Boalt Hall.

*" If Exley fails to appear, the court may consider the motion to enforce settlement unopposed and grant the motion in its entirety."*

Dr. Exley filed ECF #62, *"Defendant and Cross Claimants Ray W. Exley's Opposition to Plaintiff/Counter Defendant Leverty & Associates Law, Chtd's Motion to Enforce Settlement Agreement [Plaintiff's Exhibit 22]".* From the above statement in ECF #83, there would seem only one interpretation. The Court is stating that it will make fraudulent claim that Dr. Exley never filed the opposition or reject that filing on some contrived grounds? INCREDIBLE and UNBELIEVABLE of the United States of America.

Parton my naiveté, however THIS IS A SERIOUS BREACH OF COURT ETHICS AND MUST BE INVESTIGATED.

6.    The court cites Local Rule IA 11-8 and under 28 U.S.C. § 1927 plus Inherent Powers of the Court. First, Local Rule IA 11-8 again refers to PARTIES as does 28 USC §1927. To quote the first sentence of the statute: "*Any attorney or other person admitted to conduct cases in any court of the United States…*" Again-- under this rule, Ms. Loza is not UPL, and remains NOT A PARTY or an attorney or other person but she is not

now and never has been admitted to the bar in the US. There is no jurisdiction based upon these facts and 28 USC 1927.

**7.**   Continuing to review 28 U.S.C. § 1927. The statute continues "[thereof who so multiplies the proceedings in any case unreasonably and vexatiously". This is not a threat to Defendant or Ms. Loza but a description of the activities of Mr. Gene Leverty. This is a matter which was settled in the Douglas County Ninth District by a ruling issued solely upon a Brunzell motion filed by Leverty & Associates to adjudicate the fees of Leverty which as GRANTED, essentially unchanged from as submitted by Leverty. Additionally, Leverty has his Attorney's Lien from this court order in Douglas co for nearly $200,000.00 on a property worth at least $1 million. And, he continues to pursue this case, apparently seeking the same result in this federal court. What Leverty is really seeking is to cover-up his many prior criminal acts by sealing the record and having this Court impose the "mediation agreement" to which Exley never agreed, trying to prevent Exley from reporting Leverty's and associates crimes to proper Nevada Law enforcement (Any report to the Nevada Bar is useless as with Exley's complaint regarding the Leverty billing fraud, The Nevada Bar Association will simply destroy it and any evidence it can find given Leverty is its president.) Obstruction of justice, sanctioned by a Magistrate judge, not to mention the constitutional violations manifest in the drafts of the "mediation agreement" prepared by Ginn, which bear no resemblance to the discussions on the record in the "mediation" conducted by Magistrate Cooke. I wonder how long such a ruling filled with criminal intent will stand on appeal and whether criminal charges will be brought by the proper authorities against all of the parties in this criminal conspiracy to extort from Exley $100,000.00 falsely billed to Exley for work done by his wife, and then cover that crime with obstruction of justice and denying Exley his constitutional rights to petition the government for redress of wrongs by the government. The list of criminal acts by Leverty and associates and coconspirators just keeps growing.

**8.**   The Court cites the Inherent Powers of the Court. This is extraordinary; Magistrate Cooke seeks to impose Inherent Powers of the Court over a NON-PARTY to avoid permitting a continuance of a hearing ordering the NON-PARTY to appear or the Court may sanction both a NON-PARTY and PARTY for actions of a NON-PARTY.

Case 21-50466-nmc   Doc 53-1   Entered 12/07/21 16:24:29   Page 5 of 21
Case 3:17-cv-00175-MMD-VPC   Document 84-2   Filed 02/16/18   Page 4 of 20

Special Authorities, which although broad, have limits and is subject to abuse. A careful review of statutes and opinions have one central issue; PARTY. The Inherent Powers extend over PARTIES.[1] Neither Ms. Loza nor the Athena Medical Group, Inc. are PARTIES. *(See F.R.C.P. 11 & 17.)* The inclusion of them as parties was requested by Leverty and Gin on the record at the end of the "mediation", not by Exley as falsely claimed by Gin in some recent filings.

## A PARTY OR NOT A PARTY.... A SIGNIFICANT ISSUE

9.      Ms. Loza-Exley, a NON ATTORNEY, NON-PARTY needn't remind the Court of its clear and repeated inconsistency of "WHO IS WHOM"? The unimpeachable evidence exists in the record that Loza-Exley is NOT A PARTY. But even confronted with absolute evidence that JULIANA LOZA-EXLEY IS NOT A PARTY TO THE ABOVE CAPTIONED FEDERAL ACTION, (or any suit or demand with Leverty and Associates Chtd's) the Court (and Leverty) the Court continues its attempts to characterize and enforce PARTY issues against Loza, who is not a party, by any standard. And, if she were a party, how could she be accused to the unlicensed practice of law, when she assisted Exley when he was prose. It is impossible to be both a party, and be guilty of UPL when assisting another party who is prose. Yet these legal contradictions are repetitively ignored by the court with the continued and repeated threats to Exley and Loza of possible criminal charges to each alleging Loza assistance to Exley is Loza engaging in UPL, trying to prevent Loza from assisting Exley, by falsely insisting that a wife helping her husband in his pro se efforts is UPL, and simultaneously treating her as a party with orders from the court, which as a party would also render the UPL argument nonsense, which of course this all is.

[1] A Westlaw search string consisting of the relevant terms ("inherent power" /s "court") located twenty-eight documents in the U.S.C. database; many are from the Federal Rules of Civil or Criminal Procedure, and none explicitly abrogate inherent authority over non-parties. See WESTLAW, www.westlaw.com (search "'inherent power' /s 'court' and 'nonparty'") (last visited Feb. 15, 2018). In essence, these various cases present two different tests when an exercise of inherent power conflicts with a rule or statute. See, e.g., Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., 313 F.3d 385, 390–91 (7th Cir. 2002). Sahyers and Lin ask whether the statute at issue clearly abrogates the claimed inherent authority over a 'nonparty'. SPEETJENS v. LARSON, No. 3:05 CV 394 BN 2005.

-4-   2018-02-15A JML 1 RWE 2A   DECLARATION OF LIC JULIANA LOZA-EXLEY.DOCX

DECLARATION OF JULIANA LOZA IN SUPPORT OF ORDER CONTINUING HEARING DATE

**10.**     The always ambiguous answer favors the Plaintiff, Eugene Leverty, President of the Nevada (Legal) Bar Association and who is well ensconced and influential in Northern Nevada Judicial Politics. The very Bar with which this Court threatens Ms. Loza-Exley with potentially criminal charges of violation of NRS§7.285. What an incredible conflict of interest for Magistrate Cooke to threaten Loza with referral to the tender mercies of Leverty at the Nevada Bar, which has already refused to process Exley's complaint against Leverty for some of his many prior criminal and unethical acts in this case, saying they were removing any record of his complaint, and he was not to send a new complaint to the Nevada Bar, as it would meet the same fate, trash bin, without due process, or even the appearance of same.

> *NOTE: These several judicial and personal conflicts and indecision in this case by Magistrate Cooke, present unmistakable grounds for referral to senior Judicial Officials or better the Presiding Circuit Court Judge for an independent determination, which has been requested by Exley, but denied by Magistrate Cooke. Any decision by this Court adverse to Exley will be appealed based upon this court's inconsistent and contradictory rulings and overwhelming evidence of bias and extrajudicial communications; and the obvious outside the tainted influence of the vexatious motives and soap opera politics of Plaintiffs, Gene Leverty, Bill Ginn and Jess Rinehart.*

**11.**     The powers and authority of a Federal Magistrate in a Civil matter are found primarily in **28U.S.C.§636(c).**   Yes there was an Order by Judge Du (ECF #3) but did the parties consent? PARTIES are required to acquiesce to the disposition by Magistrate. LR IB 2-2. Special Provisions for the disposition of civil cases by A United States Magistrate Judge is SOLELY BASED UPON CONSENT OF THE PARTIES - **28U.S.C.§636(c).**

The docket would suggest NO SUCH CONSENT WAS GIVEN-- at least by EXLEY. The order allegedly based upon the "mediation" which Magistrate is now threatening to impose upon Exley, was written exclusively by the Leverty organization, was filed under seal and Exley has yet to see the "official recorded copy". The alleged unsealed version provided to Exley by Ginn, bears only a slight similarity to the issues on record

DECLARATION OF JULIANA LOZA IN SUPPORT OF ORDER CONTINUING HEARING DATE

from the "mediation" which was conducted with Exley represented by McGuffin,[2] who had severe undisclosed conflicts with Leverty and was clearly lying to Exley while working to support Leverty's efforts in this case.[3]

The court's order (ECF 81) also asserts that "On January 23, 2018, a motion hearing was set after consultation with both parties for February 21, 2018 at 10:00 a.m. (ECF No. 80)." At no time did the court consult with me about my schedule. Juliana Loza-Exley is NOT A PARTY and therefore I was not consulted and therefore I did not have either the standing or opportunity to participate in the "decision making process of hearing date".

### Ms. Juliana Loza Has a Previous Legal Obligation and Will Not Be Available By Any Means to Appear on February 21st, 2018 In the Reno District Court

12.    I will not be in the U.S. or available for any appearance by telephone for the hearing on February 21st. Had the court, in its January 23, 2018 Chambers Ruling (ECF 80), included Ms. Loza-Exley, then an opportunity existed to change date of her Notaire Appearance in France, thus obviating any conflict. HOWEVER THE COURT DID NOT MAKE SUCH AN ORDER for another week- a second thought. The CONFLICT is of the Court's own creation and the Court should resolve this conflict, not the NON PARTY.

13.    I am not positive but suspect the court has no experience with the sale of property in France or Europe. It is not as in the US. The parties are *required to attend in*

---

[2] Richard McGuffen was, in Exley and Loza's opinion working for Leverty's goals. When retained, McGuffin did not disclose conflicts of interest with Leverty. To state the objective of Exley as stated was to seek a dismissal as vexatious and/or dismissal due to Res Judicata. It is believed McGuffen he did not pursue client's orders due to the conflicts in that a named partner, Alling, was the college roommate of Leverty at Law School and continued this friendship. McGuffen who failed to file the motions and execute the direct orders of Exley at the time of retention, did not file either of two motions, one for a change of venue, and the other for res judicata. Following the "mediation" McGuffin stated did not file the Res Judicata motion "on orders" and the Change of Venue to keep Exley as a client. These lies and other failures to act in Exley's best interest reasons for McGuffin's termination.
    Statements in Plaintiff's sealed motion for enforcement of Settlement, validated those and other breaches in Attorney Client confidences which were either prompted or benefited Plaintiff.

*person* unless a representative has been arranged in advance; a process that takes at least a month.

However, because the property in a European Union Trust, there is no alternative so to my being physically present in Nice, France for the Escrow and signing. If I fail to be present, it will at a minimum postpone the sale and could potentially terminate the sale, but result in significant penalties to my brothers and me for breach of contract, under the applicable laws there.

The French title transfer process requires the physical presence of all parties. The sellers, my brothers and me, the buyers, four partners (I understand one is Norwegian, one German and two French), our respective ***Notaires*** *(Real Estate Attorneys in France)* and of course the Magistrate, all of whom will be present after each travels from their respective homes, in many different countries.

Therefore the court's requirement for my participation in my husband's dispute in Nevada, which continues to be an unsubstantiated, is not sufficient to prevent the imposition of French contract penalties or to justify postponing the sale. Penalties for my failure to attend the Notaire session will include the travel expenses, costs of the Notaires and probably a 5% fine. Since sale price of the property being sold is €2.7 million which is over $3 million, any fine by the Notaire or Magistrate will be exorbitant and I doubt either Mr. Leverty or the Court wants to pay between €150,000 and €270,000 which is allowed under EU and French laws, as a penalty if I fail to appear at the agreed upon date and time for this transfer of ownership of real property, which date directly conflicts with the recent "orders" by MJ Cooke for my appearance in Reno on directly conflicting dates, even though I am not a party to the litigation in Reno.

## Alleged Unauthorized Practice of the Law and Violation of NRS§7.285

**14.**     Within the June 1, 2017 (ECF 28) transcript there are repeated threats to "THE WIFE" **Juliana** Loza-Exley and to my husband the Defendant and Cross Complainant, alleging me (LOZA) engaged in the Unauthorized Practice of the Law, a

violation of NRS§7.285 (2014) (UPL). Magistrate Cooke is also on the record threatening referral to the Nevada Bar, sanctions or criminal penalties at the suggestion of Plaintiff's attorney Mr. Ginn. Unfortunately there was nothing in the testimony to justify that threat: First, Juliana Loza is not licensed to practice law in any state in the United States of America. I have never applied for practice and never granted a waiver. The UPL Statute NRS§7.285 refers to "ATTORNEYS". I am not an attorney. I am a Licenciada de Leyes. I am an associate Barrister (retired), but I am NOT an attorney in the US, and never have been, although I trained at Boalt Hall at Berkeley and The City Law School in London as part of my degrees in international laws from UNAM in Mexico City. (I am fluent in English, Spanish and French.) Moreover, there is no independent conclusion by the Court that UPL had been committed. Exley stated in the June 1, 2017 transcript of the CMC on Page 6:13-17

> *Dr. EXLEY:       Just for your information, to help you with what you're trying to accomplish, we are going to file a motion today for summary judgment.*
> *THE COURT:     Okay. Who is we?*
> *DR. EXLEY:      Oh, my wife and I.*
> *THE COURT:     Okay. So your wife can't practice law here.*

Prior to the "we" statement by Dr. Exley, there were eight (8) times when "WE" was spoken by the Court and Mr. Ginn without comment by MJ Cooke. But the first time Exley used it, Magistrate Cooke demanded (above) his meaning, and immediately claimed that any assistance to Exley who was prose then, was UPL by Loza. There is nothing in any federal of Nevada code which supports Magistrate Cooke's statements that Loza's help to Exley was UPL. The ONLY conclusion to the inconsistent actions by Magistrate Cooke is that there WAS improper Exparte communication between Judge Cooke and Mr. Leverty's firm which motivated such editorial

From the 6/1/2017 transcript Page 17: 8:17

> *MR. GINN:        Your Honor?*
> *THE COURT:     Yes.*
> *MR. GINN:        May I just request that the Minutes reflect the admonitions recording the unauthorized practice of law?*
> *THE COURT:     Yes.*
> *MR. GINN:        Thank you.*
> *THE COURT:     Oh, trust me. They will.*

DECLARATION OF JULIANA LOZA IN SUPPORT OF ORDER CONTINUING HEARING DATE

*Thank you. Court is adjourned.*

Magistrate Judge Cooke goes on discuss Juliana Loza-Exley as though I were licensed to practice in some other U.S. State citing "Pro Hac Vice"; praise be if only I could Pro Hac Vice into the Nevada Bar from Mexico or Britain. As to any violation of UPL, the Federal Practice Manual, Chapter 4, Section 2[4] provides no grounds for the court's position. Primarily there are significant references to Attorneys and Providers, all licensed practitioners or commercial enterprises, but nowhere, to be redundant NOWHERE does it cite a violation by a NON U.S. licensed or formally licensed ATTORNEY. Previously licensed ATTORNEY, who is not now licensed to practice law, and does not charge for the legal assistance, as Loza did not charge Exley. Any reference to spouse and interested party committing UPL is also absent. In fact every citation obtainable on the subject in either the internet or WestLaw make no reference to a prohibition of the assistance provided by anyone, including family members to the Pro-Se representation of another family member. In fact some of the Self-Help pages available on federal court websites suggest that a Pro-Se seek "competent assistance where ever possible including family members and non-attorney friends and the internet or self-help clinics or phone help".

15.     A strict interpretation of F.R.C.P. 11 & 17 is clear and supports the conclusion that LOZA IS NOT A PARTY, thus making demands upon her and orders to her, as if she were a party, does not change her status as a nonparty. But why does the Court threaten a NON PARTY, NON ATTORNEY with UPL for assisting her husband, when he was pro se. ? The allegation is not only questionable on an evidentiary basis, it has no basis in Nevada or Federal law.

16.     Therefore the Unauthorized Practice of Law would seem to require the "violator and offender" to be an attorney either from another US jurisdiction and/or suspended or disbarred. This is not the case with me, Juliana Loza-Exley. As stated throughout this document, *"I am not now nor ever have been a member of the* ~~communist party~~ *Bar Association of any US State or Territory or any jurisdiction which allows privileges to either Barristers or Licensiadas de Leyes"*.

---

[4] http://federalpracticemanual.org/chapter4/section2

DECLARATION OF JULIANA LOZA IN SUPPORT OF ORDER CONTINUING HEARING DATE

17.     The Court by the above statements intimidated Dr. Exley thereby causing him to spend significant amounts of money; $30,000 to date, in retaining attorneys to defend against a vexatious litigation case which is Res Judicata. Although in no way proven violation of UPL (NRS §7.285) the assistance of his wife, Juliana Loza-Exley, the threat stated at the end of the record of June 1, 2017 *MR. GINN: May I just request that the Minutes reflect the admonitions recording the unauthorized practice of law? THE COURT: Yes.* Fearing incarceration, Dr. Exley was intimidated into ceasing his Pro-Se representation. Dr. Exley's Respectful and Justified Request to Continue the Proceedings Until March 21st is Rebuffed with Threats.

18.     As to the court's recent statement, which seems to be an extra judicial comment in its February 14, 2018 chambers ruling:

> *"Ray Warren Exley and Juliana Loza-Exley are ordered to appear either in person or telephonically for the entirety of the hearing. If Dr. Exley fails to appear, the court may consider the motion to enforce settlement unopposed and grant the motion in its entirety. Juliana Loza-Exley is hereby notified that the court is considering a referral to the State Bar of Nevada for practicing law without a license in this case. If either party fails to appear, both Dr. Exley and Juliana Loza-Exley are notified that they may be subject to sanctions in this matter for failure to follow court a court order pursuant to Local Rule IA 11-8 and under 28 U.S.C. § 1927 and the inherent power of the court."*

19.     The statements during the June 1, 2017 Status Conference and recent Court Order (ECF 82) imply that Juliana Loza-Exley is party as the court has ordered her appearance. Then within the same document, the Court "threatens" Ms. Loza-Exley with both sanctions (only applicable to party) and referral to the Nevada State Bar of which Plaintiff Leverty is the President. This is an absolute conflict of interest as has been demonstrated when the same Nevada Bar Association, refused to accept a complaint against Mr. Gene Leverty. (I must parenthetically look out the window to see if I'm actually in Venezuela.)

20.     Through Defendant Dr. Exley, I very justifiably and respectfully requested that the Court to continue the hearing until after my return from my previously scheduled business in Europe. Although I should not need to justify my absence, the Notary Transfer will result in a significant influx of personal funds as the result of the sale of our family

trust's property in France. It is *possible, though not certain* that if so disposed, my funds *could* be used to resolve the issues with Leverty.

**21.** Given arguendo, if there were authority for the court to order, with all due respect to the court, it is not practical for me to compromise my prescheduled business because some dishonest attorney "persons" are trying to extort $100,000 from my husband by contriving to mislead the court to obtain forced settlement agreement containing clauses to prevent disclosure of their many criminal acts to the Bar or to law enforcement, (in so many words) to cover-up their criminal and unethical activities extorting Dr. Exley and actively preventing him from transacting a loan for the primary purpose of paying "reasonable attorney's fees" and then conspiring with the Defendant in the underlying case to prevent the obtaining of her signature on the a replacement quitclaim deed to replace the original was stolen by deception from Exley by the Leverty Firm.

Various state judges and a former federal prosecutor have been consulted and to a one, opine that Federal and Nevada state crimes were unquestionably committed. The transcript of the post mediation hearing held in a federal courtroom confirms this.[5] The attempts by Leverty to cover-up the Leverty Firm's billing fraud, attempts at extortion, Hobbs Act violations and other acts, have has been core of the difficulty in obtaining an agreement, as Leverty always agrees to a settlement, then in the final draft adds language not previously discussed or agreed to by Exley, to seal the records, and prevent Exley from disclosing to the Bar or law enforcement Leverty's prior criminal acts, executing the extortion of Exley for $100,000.00. If the court reviews early versions of the "mediation agreement" and the at least 5 subsequent revisions and then comparing them with the usury laden "extortion" which Leverty submitted with their Motion to Enforce the Mediation following the departure of compromised counsel Mr. McGuffen the motives of Leverty are unmistakable, cover-up all of his prior criminal and unethical actions from the Bar and law enforcement by court orders, because he could not trick Exley into signing such an agreement, despite

---

[5] Gene Leverty specifically required that Dr. Exley and anyone associated with him, be barred from making any criminal complaint... to which the Magistrate Cooke makes a confirming "ugh".

three prior attempts to settle the dispute by negotiation. The only sticking points, were the clauses to cover up Leverty's criminal actions.

22.    As an officer of the court in Mexico and Britain, I cannot and will not be a party to an agreement which I believe serves only to suborn obstruction of justice and state and federal crimes; theft of property, Hobbs Act violations, extortion, billing fraud and other illegal or questionable acts. Yes there is fraud as Leverty agreed during prior settlement discussions that his bills were inflated and to which Leverty agreed to accept over $20,000 in reductions for a total of $130,000, not due until January 2019. However as with the Leverty version of the "usury agreement", there is always the "last minor clause", which creates almost unlimited liability for the opposite party, Exley and is impossible to accept". Such was the Item 12 in the previously *almost agreed to negotiation* and will be for any alleged agreement. As with the underlying agreement that I would take the *heavy oar and do the research and draft the pleadings* with Bill Ginn "tiding up the language to conform to NRS and file, there is no possibility of an "honest meeting of the minds", because Leverty and Ginn must hide their many criminal acts in this case from the bar and law enforcement, if they don't want to be disbarred and possibly be criminally indicted and likely convicted.

23.    I have reviewed all the court papers and the various draft attempts at a mutually acceptable agreement consistent with minutes of the July 27th 2017 "hearing which outlined the conditions for a Settlement Agreement". From the assertions made in Mr. Ginn's moving papers "Plaintiff/Counter-Defendant Leverty & Associates Law, Chtd.'s Motion To Enforce Settlement Agreement (Filed Under Seal)" it is clear there was never any intent by Leverty to reach a negotiated Settlement Agreement. As the documents were filed under seal, it is inappropriate for me to comment directly, however the terms of the proposed "Settlement Agreement" are nothing short of "get out of jail free cards times 5". Leverty has admitted to stealing the quitclaim from the courtroom and refusing to file the change in ownership which would have given Dr. Exley the ability to get a mortgage at the best rates through a family member. This was requested of Leverty by Exley from the date of the Summary Judgement in the underlying case since October 24th, 2016.

1     Leverty refused to file the Brunzell Declarations with the required billing detail to

2    assist Exley in obtaining a judgment against O'Brien for Exley's fees and costs. The

3    claimed billing detail for the alleged extra $100,000.00 supposed done by Jess Rinehart,

4    (who did nothing), were only forced from Leverty by the extraordinary and costly efforts of

5    Exley and his attorney Mr. Charles Zumpft and the cooperation of Ninth District Judge

6    Gregory who issued Post Judgment Discovery AGAINST LEVERTY which Mr. Zumpft

7    used to "encourage Leverty" to produce the billing detail for the fraudulently billed extra

8    $100,000.00. Those documents arrived too close to the filing cutoff to be proofed, and were

9    only certified to the Douglas Co court by Leverty, which of course was a fraud on that

10   court. A later review of Leverty's billing was submitted to the Douglas County Court which

11   was verified by affidavit of Mr. Ginn and Leverty law contains $100,000.00 of fraudulent

12   billing against Exley, alleging work was done by Rinehart at Leverty, which was never

13   done by anyone at Leverty. It was done by Loza. Of course, the representations that Loza's

14   work, was done by Rinehart was fraud on that court, which again explains Leverty's

15   insistence on preventing any disclosures about these and his other criminal actions in this

16   case to the bar, law enforcement or the public. It would not look good for the bar president

17   to be shown attempting to extort his former friend and client of an unearned $100,000.00.

18     After Leverty refused for weeks or months to return the stolen quit claim from

19   O'Brien to Exley, which prevented Exley from getting clear title, and the loan to pay

20   Leverty, as agreed for over a year, Mr. Zumpft was also able to obtain an order for clear

21   title to Dr. Exley from Judge Gregory in 45 minutes which was recorded within the hour.

21   Leverty claimed a "calendared hearing was required" and between October 24 and January

22   10, 2017 Leverty refused to transfer the title; again obstructing Exley from getting a

23   favorable loan to finance the property and pay Leverty.[6]

24     Why was all of this nonsense done, because Leverty was attempting cover his

25   criminal actions by maneuvering Exley into agreeing to his non-disclosure terms,

26   and onerous liquidated damages upon disclosure of Leverty's criminal actions? The

---

[6] At the time of the Order for Summary Judgment by Judge Gregory on October 21, 2016, the estimated fees due Leverty were approximately $85,000 less the credits for work performed by Juliana Loza.

cover-up by negotiated agreement failed 3 times, so Leverty is now attempting to obtain the same result with the "orders" from Majistrate Cooke, falsely and frequently based upon the "mediation", while little in the transcript is now present in the most recent draft of orders submitted by Ginn to Majistrate Cooke, which she is now threatening to impose on Exley.

These legal gymnastics were required because of the obstruction and breach of fiduciary duty by the Leverty Firm at a price of over $25,000 and the loss of complete loss of a favorable mortgage opportunity.

24.    I Am Absolutely Certain That Plaintiff's Influenced Dr. Exley's former counsels, Marie Kerr and Richard McGuffen. Ms. Kerr withdrawing both Dr. Exley's Opposition to the complaint and the Motion for Change of Venue. Though Ms. Kerr told the Court "I have approval to withdraw both of those today." Ms. Kerr DID NOT and was immediately rewarded by Dr. Exley with discharge for insubordination.

25.    Mr. McGuffen too was taking orders from Kremlin/Leverty. Mr. McGuffen was not authorized to entertain Mediation and certainly not with a mediator, the Magistrate, who had expressed such biased and improper opinions in the 2 previous appearances. However once the "mediation" was agreed to by McGuffin not Exley, Mr. McGuffen told Dr. Exley he could not withdraw. Be proposing a mediation and not filing the Motion for Dismissal and Res Judicata, propounded in Dr. Exley's motion (ECF #57) and the dismissal of the Change in Venue by Ms. Kerr, both counsel had proven by their own statements in pleading and declarations their allegiance to Mr. Gene Leverty.

26.    The Court also failed to seriously address Dr. Exley's Motion to Set aside the Mediation and Motion for Res Judicata. The court answered this very serious motion with a simple DENIED in ECF #00. In fact if Magistrate Cooke had actually reviewed and ruled upon Dr. Exley motion, she would have recognized that the Plaintiff's case was without merit. That she should have made a ruling to Dismiss with Prejudice awarding Sanctions to DR. Exley as a Sua Sponte ruling—As did Chief Presiding Justice the Honorable Gloria Navarro in _____

DECLARATION OF JULIANA LOZA IN SUPPORT OF ORDER CONTINUING HEARING DATE

27.    In response to MS. Kerr's unauthorized withdrawal of the Motion to Change Venue, most inappropriately Magistrate Cooke commented " It was good that Ms. Kerr withdrew the motion for change of venue, because she (Magistrate Cooke) would not have granted it anyway." This opinion was offered even though Magistrate Cooke never saw the motion or the opposition, which was never submitted, because Kerr withdrew the motion under pressure from Leverty or Magistrate Cooke, yet to be determined.

28.    In its current order (ECF 83) The Court has made threatening statements to Dr. Exley and LOZA supported by unsubstantiated allegations to me and my husband of the Court enforcing penalties regarding wholly unproven alleged that assistance to Defendant's Pro-Se filings equate with NRS§7.285 the Unauthorized Practice of Law (UPL). This is despite LOZA having none of the requisites including being an attorney the US or prohibited from practice in the State of Nevada. The Court does not state the authority with which these seeming extortion and threats of prosecution and sanctions are made since **I AM NOTAPARTYTOTHIS LITIGATION** . The court simultaneously fails to cite by what authority it is now trying to order my appearance; after being informed by Dr. Exley's request for change of appearance (ECF 81) and what by what authority I am even included in the action at bar.

29.    The Court DID NOT CONSULT LOZA PRIOR TO ITS JANUARY 21st 2018 ORDER. I am not an appendage to Dr. Exley asking him for a conflict check is the same as not asking me. Had I been consulted as to my availability when scheduling the February 21st hearing, there was an opportunity to make changes in my France appointment as this was not finalized until January 30, 2018 over a week after the court's Order for the February 21st hearing.

30.    Lastly, I find it ironic that the Court and Leverty are alleging that I committed UPL when the basis of the Fee Dispute is that Leverty is committing Fraud, by billing for work that I performed. The fraud was my submitting hours were submitted to Judge Gregory, falsely claiming that work was done by Jess Rinehart which is blatantly false. So what is the difference? I create do the legal research finding the willing law, Nevada partnership law, which Leverty missed, and the legal briefs, Motions for Summary Judgment, Discovery Responses and Briefs for this case. Then Leverty falsely bills Exley

and the Douglas co Court, claiming my work was done by his junior associate Mr. Rinehart. Months before the summary judgement motion was in Leverty's office, Exley and I specifically requested that Rinehart NOT participate in the Case in any form or circumstance. Ginn agreed to that request, in emails; the reason being that Rinehart did not understand theory of the case which was a breach of Partnership Agreement and Rinehart insisted it was a Marvin case; based in community property law, which was wrong on the facts and an absolutely losing proposition. Despite extensive attempts to educate Rhinhart to use the partnership law, he could not accept this "theory of the case." He refused to make arguments based upon Nevada Partnership law, which was not only the winning argument, but the truth, as the marriage which was the alleged basis for Rhinhart's community property theory occurred 9 years after Exley bought the property with only his funds, O'Brien contributed nothing to this purchase and later she was proven in court to have contributed nothing to the upkeep. It was Exley's sole and separate property going into the marriage. According to Leverty there was no UPL when I was doing his work on the case, only when I attempted to assist my husband resisting Leverty's attempted extortion of $100,000.00 from Exley, by the false allegation that Rhinhardt did work which was never done by him.

When Leverty refused to make a serious effort on the Motion for Summary Judgment (MSJ), I wrote the MSJ and my motion nearly unchanged from my final draft, was the winner when it was submitted to Judge Gregory by Leverty and Ginn. Whether Leverty and Ginn want to accept this or not, the emails from June-August 2016 are full of my drafts, when compares with the final and successful pleading are 99% my work.

    **31.**    Ipso Facto this must be why Leverty is upset about my participating in my husband's case when the conditions of Gene Leverty accepting Dr. Exley's case, was that I would do 90% of the work LEGAL WORK which Leverty submitted as work by his firm. Again, the emails submitted during in the case a bar are Discovery are replete with these references. One from June 11, 2014 is particularly explicit.

*Email on Wed, Jun 11, 2014 at 5:08 PM, from Bill Ginn <> wrote:*
*Dear Jill,*
*Gene Leverty asked for me to respond on his behalf as he is out of the office for the*
*rest of the day. Based on the draft complaint that you have provided to us, we*

DECLARATION OF JULIANA LOZA IN SUPPORT OF ORDER CONTINUING HEARING DATE

*believe that we can get the complaint ready to file with the Ninth Judicial District Court by Friday. If you could please cc: me with the updated draft, that would be appreciated.*
*If you have any questions, please do not hesitate to let us know.*
*William R. Ginn, Esq. (This was the original complaint, which was filed in Exley v. O'Brien, which I, Loza, wrote as agreed by Leverty and Ginn, and filed by them as their work product. )*

32.    In fact the complaint Leverty filed on June 12, 2014 was virtually word for word the Loza draft detailed above. Further emails attest to my performing all the "legal work" for the legal research, Discovery, Exhibits and Declarations including drafting nearly every document used in the Exley v O'Brien case, which was submitted by Leverty. I attended both Depositions and convinced Mr. Ginn and Mr. Gene Leverty not to abandon the case prior to the depositions as they wished claiming "the case is a looser and we don't want to keep investing in this pink elephant. At that point I only asked that Mr. Ginn continue through the depositions which were in Los Angeles which is where Ginn spent his weekends at his home in Los Angeles, where his wife and child live full time. To facilitate Exley in the Exley v O'Brien case, for depositions I would do essentially all of the legal research, personally guarantee the reporter's fees would be paid and attend as Ginn's paralegal. I told them we would prevail if they would stop thinking and using community property law and focus pre-1984 Nevada Partnership law. As such partnership law would give Exley 100% of the property since we had proof he had paid 100% of the purchase, upkeep and investment; an empty partnership. And this was the basis of my MSJ which won the case for Exley, while Leverty had billed only $67,000.00 at the time of summary judgment. This increased by a suddenly added extra $100,000.00 after the summary judgment, and Leverty complaining he did not make enough money on the case, which might explain his resistance to filing the MSJ, he wanted to churn up the fees even more, which was stopped with the winning of the MSJ, so he went to plan B, extortion of Exley for an unearned extra $100,000.00 and silence Exley from reporting these criminal acts, first by agreement with Exley which failed, so now Leverty is trying to trick Magistrate Cooke into issuing orders to cover his criminal acts, by the order which she is threatening to imposing allegedly, but falsely based upon a bogus mediation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
21
22
23
24
25
26
27
28

33.     It was also my work on the Motion for Summary Judgment which Leverty submitted essentially unchanged from my draft, which resulted in the Summary Judgment (MSJ). In fact, both Gene Leverty and Bill Ginn refused to compose the MSJ. And, after I wrote it they refused to submit the MSJ. They only submitted it after they were advised Exley would retain another attorney to submit the MSJ, if they would not. Then about 2 months after the MSJ was awarded to Exley, suddenly Leverty filed this suit against Exley in Washoe Co, removed to federal court. Then after the suit was filed, but not served and unknown to Exley, while still representing Exley, Leverty suddenly presented a new bill, two months after this alleged work was done, for an additional $100,000.00 claiming Mr. Rinehart did 90 hours in one month on the MSJ, when he did nothing. The MSJ was entirely MY WORK. As a note about fraud, my draft of the MSJ took no more than 4-6 hours to complete the first draft. The mind boggles how anyone who graduated from any reputable law school could take 90 hours in 1 month, more than TWO SOLID WEEKS OF NONSTOP WORK for an MSJ of fewer than 20 pages (almost 5 hours per page). Leverty also billed an additional 6 hours claimed by Mr. Ginn to "REVIEW AND EDIT" my work (the twenty pages), now changed to be for review of the work of the 90 hour wonder. Rinehart never did any work on the MSJ as he was forbidden to work on the MSJ, because he never understood the Nevada Partnership law, which was the basis for the MSJ.

34.     Upon consultation, most practicing federal attorneys were shocked that a busy magistrate would or even should be the mediator in a conflict between the President of the Nevada Bar Association and a former client, so full of issues of "who did the work" etc." in this unique arrangement where Leverty accepting the representation was contingent upon the fiancé of the client who is not a licensed attorney doing virtually all the legal work, as occurred in this case.

35.     Therefore, without being problematic, I, Ms. Juliana Loza-Exley am previously committed to complete a business transaction in Nice, France on the 20th and 21st of February. Dr. Exley (and I) are respectfully requesting the consideration be provided and reschedule approved by the court without the further necessity for review by judicial superiors.

A straightforward interpretation of F.R.C.P. 11 & 17 leads to the only conclusion, LOZA IS NOT A PARTY, thus making demands and orders moot. But why does the Court threaten a NON A PARTY, NON ATTORNEY with UPL? The allegation is not only questionable as to an evidentiary basis, but questionable as to a legal basis; btw there is none. Juliana Loza-Exley is not a party, claimant or counsel in any proceeding in which she is not a specifically named party. I can speculate that standing and jurisdiction of parties is applicable in the USA. It is in Spain, in Mexico and certainly in England and I may propound upon those jurisdictions as I have been so licensed there.

I was not informed at the time the original date was set, January 23rd for a February 21st hearing date, that I, a non-party would be required to appear.

A. Had the court made the order including me Juliana Loza-Exley as a non-party whose attendance was requested, I would have made different plans for the Nice, France appointment.

B. This will also give the court time to sort out whether threatening non-party, non-attorney Juliana Loza-Exley with UPL when none of the statutes provide for a family member who attended law schools, is prohibited from providing research and editing for their HUSBAND.

C. The Court's Inherent powers extends PARTIES as characterized in *F.R.C.P. Rule 17. Plaintiff and Defendant*. A District Court *does not* have authority to enjoin one who is not party to action. SPEETJENS v. LARSON, No. 3:05 CV 394 BN 2005.

**36.** It would seem in the best interest of honest juris prudence that the Court reconsider its demands and unbridled threats against Juliana Loza-Exley and Dr. Exley and grant the motion by Dr. Exley to continue the hearing on enforcement an unintelligible and usury alleged agreement, which is only aimed at protecting Leverty and his associates from likely criminal and civil difficulties.

I declare under penalty of perjury, under California law, that the foregoing is true and correct.

DECLARATION OF JULIANA LOZA IN SUPPORT OF ORDER CONTINUING HEARING DATE

Executed on February 15, 2018 at Beverly Hills, California.

JULIANA LOZA-EXLEY

_____/s/_____
JULIANA LOZA-EXLEY
Non-Party