# Exhibit 2

# Exhibit 2

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LEVERTY & ASSOCIATES LAW CHTD,
a Nevada Corporation,

      Plaintiff,

v.

RAY WARREN EXLEY, an individual,

      Defendant.

_____

RAY WARREN EXLEY, an individual,

      Counter-Plaintiff,

v.

LEVERTY & ASSOCIATES LAW CHTD,
a Nevada Corporation,
      Counter-Defendants.

Case No.: 3:17-cv-00175-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 97, 117

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is the Motion for Sanctions filed by Plaintiff/Counter-Defendant Leverty & Associates Law, Chtd. (Leverty). (ECF Nos. 97, 97-1 to 97-6, 98.) Defendant/Counter-Plaintiff Ray Warren Exley (Exley) failed to file a timely response. Leverty filed a reply brief. (ECF Nos. 101, 101-1 to 101-4.) Exley belatedly filed a request for extension of time to respond to the motion, which was denied. (ECF Nos. 105, 107.) On May 25, 2018, Magistrate Judge Valerie P. Cooke

1  ordered Leverty to file a supplement with itemizations in support of the motion for sanctions.

2  (ECF No. 113.) Leverty filed the supplement on June 11, 2018. (ECF Nos. 117, 117-1 to 117-5.)

3        This action was reassigned to the undersigned as magistrate judge after Judge Cooke

4  recused herself from the action on June 19, 2018, because her nephew, Jeremy Clarke, Esq.,

5  entered an appearance on behalf of Exley. (ECF Nos. 123, 124.) On August 1, 2018, District Judge

6  Miranda M. Du referred the motion for sanctions to the undersigned. (ECF No. 132.)  Leverty

7  moves for sanctions because of: Exley's refusal to sign the written settlement agreement after

8  agreeing to its essential terms on the record in court; his vexatious multiplication of this litigation;

9  and, his repeated violation of court orders. Leverty's request for sanctions is based on the court's

10  inherent power as well as Federal Rule of Civil Procedure 11. Leverty also seeks to recover

11  reasonable attorney's fees and costs incurred  under Nevada's offer of judgment protocol. Finally,

12  Leverty contends that it is entitled to recover costs and expenses incurred in enforcing the

13  settlement agreement under section 15 of the settlement agreement itself.

14        The court finds that Leverty's request for sanctions and fees and costs should be granted

15  in part and denied in part. Sanctions against Exley are clearly warranted under the court's inherent

16  power due to Exley's bad faith conduct, including his refusal to execute the settlement agreement

17  and needless multiplication of this litigation. Leverty can only recover, however, the fees and costs

18  that have a causal connection to the bad faith conduct. Sanctions should not be imposed under

19  Rule 11. Finally, Nevada law precludes the recovery of attorney's fees by Leverty in connection

20  with the offer of judgment and settlement agreement. While Leverty could recover post-offer of

21  judgment costs, the request for costs is not adequately supported.

22  ///

23

# I. BACKGROUND

## A. The Underlying Litigation and Filing of this Action

Given the broad scope of the request for sanctions and the requirements that sanctions under the court's inherent power be causally linked to the offending conduct, it is necessary for the court to provide a detailed summary of this litigation.

This action stems from Leverty's previous representation of Exley regarding a dispute Exley had with his ex-wife concerning real property located in Stateline, Nevada. (*See* ECF No. 1 at 8.) In April of 2014, Exley and Leverty entered into an agreement for legal services, and Leverty provided legal services to Exley concerning this dispute from April 2014 through February of 2017. (*Id.*) Specifically, Leverty filed a complaint on behalf of Exley and against Exley's ex-wife, Lois M. O'Brien, in Douglas County, Nevada. (*Id.* at 9.) Leverty filed a motion for summary judgment on behalf of Exley in that action, which was granted by the State court, and declared Exley to have 100 percent ownership of the property. (*Id.*) This was followed by a one-day trial concerning whether O'Brien was entitled to any offset. (*Id.*) Leverty represented Exley at the trial, and on January 26, 2017, the State court granted Exley's motion for judgment as a matter of law, ruling in favor of Exley as to the offset issue. (*Id.*)

Following this success, on January 31, 2017, Leverty provided Exley with updated itemized statements (statements had been sent from April 2014 through January 2017). (*Id.* at 9-10.) Exley failed to remit payment for the amount due. (*Id.* at 10.) As a result, Leverty filed an action for the failure to pay the amount due under the legal services agreement in State court. (*Id.*)

Exley answered the complaint and filed counter-claims against Leverty. (ECF No. 1 at 15-57.) In those pleadings, Exley states that he is a medical doctor, a certified anesthesiologist, an emergency room specialist, and a scientist. (ECF No. 1 at 16:21-22.) He indicates that he suffered

from several medical setbacks, which resulted in "severely limited energy and limited hours of activity during any 24-hour period. Therefore, much of the 'legal activities' are directed and overseen by his wife, Juliana Loza-Exley whose credentials are listed below." (*Id.* at 17:3-8.) He described Ms. Loza's credentials (which become relevant below) as follows:

> Ms. Loza is officially retired as an international attorney and was licensed to practice in Mexico as an 'Abogada' and "Associate Solicitor' in England. She is also a Certified Company Director in the U.K. and was a Pension Trustee and Administrator/Fiduciary of various Pension Plans in Switzerland, England, Mexico and the United States. She formally retired from most of the above professional occupations in December 2008.

(*Id.* at 17:16-23.)

On March 17, 2017, Leverty made an offer of judgment under State law, and Exley did not accept the offer. (*See* ECF No. 97 at 2; Ginn Decl. ECF No. 97 at 24 ¶ 7.) Exley removed the action to federal court on March 22, 2017. (ECF No. 1.)

**B. Motion to Dismiss/Motion to Strike**

Shortly after the action was removed to federal court, Leverty filed a motion to dismiss the counter-claims and a motion to strike portions of Exley's answer. (ECF Nos. 4, 7.) Leverty argued that the counter-claims failed to state a claim upon which relief could be granted; that claims for fraud, misrepresentation and breach of fiduciary duty must be pled with particularity; that there is no private right of action for the alleged violations of Nevada statutes invoked; and, that many sections of the answer were immaterial and scandalous.

Exley failed to timely file a response to the motions. He contacted Leverty on April 19, 2017, to ask for a two-week extension, and Leverty provided a one-week extension. (*See* ECF Nos. 8, 8-1 to 8-5, 9, 9-1 to 9-5.) Again, Exley failed to file his responsive briefs, so Leverty went ahead and filed reply briefs. (ECF Nos. 8, 9.) Exley belatedly filed an ex parte application for an

4

extension of time to respond to the motions. (ECF No. 11.) District Judge Du gave until May 15, 2017, to file a response. (ECF No. 13.)

Then, on May 2, 2017, Exley filed another ex parte application for an extension of time of thirty days to respond to the motions, which was accompanied by a declaration as well as a motion for leave to amend the answer and counter-complaint (labeled an "errata"). (ECF No. 15.) Leverty filed a response to these filings asserting, among other things, that Exley's request for an extension of time contained various false statements. (ECF No. 17.)

On May 15, 2017, Exley filed a stipulation and order giving Exley additional time to file a response to the motion to dismiss and motion to strike. (ECF No. 18.) Judge Du approved the stipulation, making the responsive briefing due May 22, 2017. (ECF No. 19.)

After all this, Exley still failed to file a response, and Leverty filed additional reply briefing. (ECF Nos. 25, 26.)

At the June 20, 2017, case management conference, Magistrate Judge Cooke gave Exley yet another extension, until July 10, 2017, to file a response to the motion to dismiss Exley's counter-complaint, noting that no further extensions would be granted. (ECF No. 33 at 2.)

Exley, through his newly retained counsel Marie Kerr, Esq. (who entered an appearance on June 19, 2017, ECF No. 32), ultimately filed a non-opposition to the motion to dismiss and motion to strike. (ECF No. 36.) Leverty filed additional reply briefing asking the court to dismiss Exley's counter-complaint with prejudice, and to strike the requested portions of Exley's answer. (ECF Nos. 37, 38.)

**C. Exley's Motion for Leave to Amend the Answer and Counterclaim**

Exley filed a motion for leave to amend his answer and counter-claim. (ECF No. 12.) He sought to add a violation of the American Bar Association's Rule of Professional Conduct 8.4,

asserting that Leverty had interfered with his efforts to engage local counsel. Leverty opposed the motion on the basis that Exley failed to follow LR 15-1 and because the claims would be legally futile. (ECF No. 14.)

At a June 20, 2017 case management conference, Ms. Kerr advised the court that Exley was voluntarily withdrawing the motion for leave to amend the answer and counter-claim. (ECF No. 33 at 2.)

**D. Exley's Motion to Change Venue**

After Exley missed the extended deadline to respond to the motion to dismiss and motion to strike, but before he retained Ms. Kerr, he filed a motion for change of venue to the Central District of California. (ECF No. 21.) Leverty filed a response, arguing Exley was engaging in impermissible forum shopping and that there was no good cause to change venue. (ECF No. 27.) This motion was filed even though the underlying case was litigated in Douglas County, Nevada; the real property was in Nevada; Leverty is in Nevada; and, Exley himself removed the case to the District of Nevada. Ms. Kerr subsequently advised the court that Exley was also voluntarily withdrawing the motion for change of venue. (ECF No. 33 at 2.)

**E. June 1, 2017 Case Management Conference**

At a June 1, 2017, case management conference, Judge Cooke inquired about Ms. Loza's role in this case. Exley admitted that Ms. Loza was not licensed to practice law in any state in the United States. (ECF No. 91 at 6:23-25.) Judge Cooke advised Exley that since Ms. Loza was not a licensed lawyer, she was prohibited from assisting and/or writing papers on his behalf, as that would constitute the unauthorized practice of law. (ECF No. 28 at 1.) Judge Cooke voiced her concern regarding whether Exley was being candid with the court about the nature of his wife's assistance in this action, and set a further case management conference for June 20, 2017, requiring

the personal appearance of Leverty and Exley. (*Id.*) Exley was required to bring all his legal filings and was to be prepared to testify under oath about his filings and to explain his wife's involvement in the preparation of legal papers on his behalf.

**F. June 20, 2017 Case Management Conference**

Exley did not personally appear for the case management conference as ordered. Ms. Kerr did appear, and advised the court that Exley was unable to attend due to an illness. (ECF No. 33 at 1.) Judge Cooke issued an order to show cause as to why Exley should not be sanctioned for his failure to appear for the court-ordered pre-trial conference. (*Id.*; ECF No. 34.)

The court also conferred with counsel and set a settlement conference for July 27, 2017. (ECF No. 33 at 2.) Dr. Exley was ordered to personally appear for the settlement conference. (*Id.*)

**G. Discovery**

On May 16, 2017, Leverty propounded written discovery to Exley, with responses due by June 19, 2017. No responses were provided. This was discussed at the June 20, 2017, case management conference, and Judge Cooke ordered that discovery was stayed pending the settlement conference, except that Exley was required to provide responses to the outstanding discovery by July 10, 2017. (ECF No. 33 at 2.) Exley served responses that date, but he only responded to 31 out of 83 requests for admission, 8 of 13 interrogatories, and did not provide any documents in response to 206 requests for production. (ECF Nos. 55-1, 55-2, 55-3, 55-4, 55-5.)

Leverty sent a meet and confer letter concerning the responses to Ms. Kerr on July 11, 2017. (ECF No. 55-7; Ginn Decl., ECF No. 97 at 26 ¶ 15.) The letter was then sent to Exley's next attorney, Richard J. McGuffin, Esq. (*Id.*) This was followed by a telephone call and several emails. (Ginn Decl., ECF No. 97 at 26 ¶ 15.) Updated answers to the requests for admission were sent, but not to the interrogatories or requests for production. (Ginn Decl., ECF No. 97 at 26 ¶ 16.)

According to Leverty, a motion to compel would have been filed but for the settlement conference and stay of discovery. (Ginn Decl., ECF No. 97 at 26 ¶ 16 (there are two paragraphs identified as 16, this citation is to the second paragraph 16)).

**H. Motion for Leave to Appear Telephonically for the OSC & Settlement Conference**

On July 21, 2017, Exley, through Mr. McGuffin, moved for an order permitting him to appear telephonically for the OSC and Settlement Conference scheduled for July 27, 2017, indicating that Exley lived in Beverly Hills, California, and had various medical ailments and had been advised not to travel. (ECF Nos. 40, 40-1 to 40-6.)

Leverty opposed the motion, arguing that Exley's conduct suggested he should not be believed. (ECF Nos. 42, 42-1 to 42-8.)

Judge Cooke granted the motion, albeit reluctantly (*see* ECF No. 45 at 1), but ordered that Exley be present telephonically, without fail, for the duration of all proceedings. (ECF No. 44.) He was cautioned that a failure to comply would result in the court considering sanctions. (*Id.*)

**I. July 27, 2017 OSC**

In the minutes of the OSC proceeding, Judge Cooke noted there was no objection to the OSC by Exley, and she construed his silence to the OSC order as agreeing that he should be sanctioned. (ECF No. 45.) As such, Judge Cooke sanctioned Exley for his failure to appear at the June 20, 2017, case management conference, and ordered Leverty to prepare a statement of attorney's fees and costs incurred for preparation and attendance at the conference. (*Id.*) In addition, the court found that Exley should be personally sanctioned in the amount of $2,500, payable to the attorney admission fund by August 28, 2017. (*Id.* at 2.)

///

///

**J. Settlement Conference**

The parties participated in the court-ordered settlement conference following the hearing on the OSC on July 27, 2017. The parties negotiated for most of the day and ultimately reached , a settlement and placed the terms on the record. (ECF No. 46.) Exley and Ms. Loza specifically agreed that the settlement was binding as to Exley, Ms. Loza, as well as Athena, Nevada, an entity with which Exley and Loza were involved. (ECF No. 55-9 at 16-17.) As a result of settlement, Judge Cooke agreed to vacate her earlier order sanctioning Exley $2,500. (ECF No. 46.) The parties were ordered to file a stipulation for dismissal with prejudice by December 1, 2017. (*Id*.) The court retained jurisdiction over the subject matter during finalization of settlement documents, and until the stipulation for dismissal was entered. (*Id*.)

**K. Finalizing the Agreement**

Leverty circulated its first draft of the settlement agreement approximately one week after the settlement conference. (Ginn Decl., ECF No. 55 at 16 ¶ 4.) Several weeks later, McGuffin circulated a different draft. (Ginn Decl., ECF No. 55 at 16 ¶ 5.) At that time, McGuffin advised Ginn: "I would like to schedule a call with you to discuss an issue that has apparently arisen with Athena and get your thoughts." (*Id*.)

On August 23, 2017, McGuffin advised Mr. Ginn that Exley and Ms. Loza could no longer make any representations or take any actions on behalf of Athena, as they had been removed from the Athena positions. (Ginn Decl., ECF No. 55 at 16 ¶ 6.) This was to the astonishment of Mr. Ginn, as Exley and Ms. Loza had represented that they could do so at the settlement conference and this had been an important part of the deal. Ginn told McGuffin that this would require other assurances, and McGuffin stated he would work with his client to provide those assurances. (Ginn Decl., ECF No. 55 at 16 ¶ 8.)

Several additional drafts were circulated, conversations occurred between counsel, and a finalized agreement was within reach, or so they thought. (Ginn Decl., ECF No. 55 at 17 ¶ 14.)

**L. Withdrawal of McGuffin**

Ginn sent multiple emails to McGuffin in the first few weeks of October to ascertain the status of the settlement agreement, believing that they were very close to having a final agreement. (Ginn Decl., ECF No. 55 at 17 ¶¶ 14-15.) Other than one email that essentially said McGuffin was working on it, Ginn got no response. (Ginn Decl., ECF No. 55 at 17 ¶ 15.) Then, in an email dated October 24, 2017, McGuffin stated that he no longer represented Exley. (Ginn Decl., ECF No. 55 at 17 ¶ 16, ECF No. 55-19.)

On October 31, 2017, McGuffin filed a motion for leave to withdraw as counsel of record, citing irreconcilable differences in that Exley failed to effectively communicate and cooperate with counsel, and failed to follow counsel's legal advice. (ECF No. 50.)

Leverty filed a non-opposition, noting that numerous drafts of the settlement agreement had been circulated, but Exley had refused to execute the agreement. (ECF No. 51.) Leverty simultaneously filed a request for a status conference because no final settlement agreement had been signed or agreed to by Exley, and it did not appear that would occur before the December 1, 2017, deadline considering the withdrawal of counsel. (ECF No. 52.)

Judge Cooke granted McGufffin's motion to withdraw. (ECF No. 53.) She denied the request for a status conference, indicating that instead she would consider a motion to enforce the settlement agreement on shortened time. (*Id.*)

After McGuffin ceased to represent Exley, Leverty sent the latest draft of the settlement agreement directly to Exley, asking him to sign it. (Ginn Decl., ECF No. 55 at 17 ¶ 17, ECF No.

55-21.) Exley responded that nothing that had been exchanged between Leverty and McGuffin was approved. (ECF No. 55-23.)

**M. Motion to Enforce the Settlement and Related Matters**

On November 9, 2017, Leverty filed a motion to enforce the settlement agreement. (ECF Nos. 55, 55-1 to 55-22.) Leverty argued that the court had authority to enforce the agreement because the terms were agreed to on the record in court, enforcement was appropriate under basic contract law, and the parties had a valid and enforceable agreement. Leverty's motion also requested that sanctions be imposed in connection with Exley's failure to execute the settlement documents.

This was accompanied by a motion for leave to file the motion to enforce the settlement agreement under seal because it contained confidential settlement communications. (ECF No. 55.) Exley opposed the motion to seal and used that occasion to include a diatribe about his version of events leading to this litigation and to air his complaints about Leverty, and even requested that Rule 11 sanctions issue against Leverty. (ECF No. 56.) Exley then filed his own motion to seal, where he stated that he wanted to seal certain documents accompanying his response to the motion to enforce the settlement agreement, but then he copied and pasted Leverty's points and authorities and even Leverty's request that the entirety of the motion to enforce the settlement agreement and exhibits be sealed. (ECF No. 59.) Judge Cooke granted Leverty's motion to seal, and denied Exley's motion to seal, noting the contradiction in Exley's filings. (ECF No. 61.)

Exley also opposed the motion to enforce the settlement agreement. (ECF Nos. 62, 62-1 to 62-8.) Judge Cooke set the motion to enforce the settlement agreement for a hearing on February 21, 2018. Exley filed three motions to continue the hearing, which Judge Cooke denied. (*See* ECF Nos. 84, 86, 87, 88 at 2.)

11

At the hearing, Judge Cooke had Exley and Ms. Loza, sworn and they were canvassed by the court. (ECF No. 88 at 1, transcript at ECF No. 95.) Judge Cooke admonished Exley and Ms. Loza again about the unauthorized practice of law, as Exley admitted she had drafted the brief in opposition to the motion to enforce the settlement agreement. (*See* ECF No. 95 at 24-25, 27-28.) Exley and Ms. Loza maintained they did not have the transcript from the settlement agreement, which required Judge Cooke to read the transcript into the record, only to have Exley and Ms. Loza later acknowledged they had received the transcript. (*See* ECF No. 95 at 29-51.)

Judge Cooke advised the parties that she would issue a report and recommendation that the motion to enforce the settlement agreement be granted and would allow Leverty to file a motion for attorney's fees for having to undertake litigation caused by the conduct of Exley and Ms. Loza. (*Id.*) In addition, Judge Cooke indicated that she would issue a separate order to show cause why Exley and Ms. Loza should not be sanctioned under 28 U.S.C. § 1927, the court's inherent powers, and the Local Rules, for the improper practice of law and disobeying court orders, requiring Ms. Loza to appear in person, and Exley to provide an affidavit from a treating physician verifying his inability to travel to the hearing. (*Id.*) She subsequently vacated the order to show cause and allowed Leverty to re-file its request for sanctions. (ECF No. 94.)

Judge Cooke issued her report and recommendation that the motion to enforce the settlement agreement be granted on March 19, 2018. (ECF Nos. 92, 92-1.)

District Judge Du accepted and adopted Judge Cooke's report and recommendation on the motion to enforce the settlement agreement; found that the parties entered into an enforceable settlement agreement; and, that Exhibit 22 to ECF No. 55 (as amended in the report and recommendation) reflected the agreement upon which judgment would be entered. (ECF No. 102.)

12

1  As such, District Judge Du ordered the case dismissed with prejudice pursuant to the terms of the

2  operative settlement agreement. (*Id*.)

3  **N. Exley's Request for Accommodations**

4        Exley filed a motion requesting accommodations under the Americans with Disabilities

5  Act (ADA), setting forth in detail his various medical conditions and asking that court proceedings

6  take place in the morning and that he be able to participate by telephone.(ECF No. 69.) Leverty

7  opposed the motion. (ECF No. 71.) Judge Cooke denied the motion as moot because the court had

8  not issued any order requiring Exley's appearance in person in the court. (ECF No. 75.)

9  **O. Exley's Objection to Judge Cooke's Denial of the Motion to Vacate the Mediation**

10 **Agreement and her Subsequent Orders**

11       Like many of his other filings, Exley's objection recited his version of events and perceived

12 wrongdoings by Leverty and argued that the State court decision ordering payment on the

13 attorney's lien was res judicata in this case. Exley also criticized Judge Cooke's  reprimand of

14 Exley and Ms. Loza in connection with the unauthorized practice of the law. Finally, Exley

15 attacked the settlement agreement as one-sided. (ECF No. 70.)

16       Leverty filed a response to the objection, asserting that it was untimely and, in any event,

17 did not show that Judge Cooke's decisions were clearly erroneous or contrary to the law. (ECF No.

18 72.) District Judge Du overruled the objection. (ECF No. 103.)

19 **P. Request for Sanctions, Attorney's Fees and Costs**

20       Leverty filed the motion for sanctions on April 18, 2018. (ECF Nos. 97, 97-1 to 97-6.)

21 Leverty argues that Exley should be sanctioned for: (1) his refusal to sign the settlement agreement;

22 (2) his vexatious multiplication of this litigation; and (3) his repeated violation of court orders.

23 Leverty argues that Exley should be sanctioned under the court's inherent power and for violating

13

Rule 11. In addition, Leverty seeks to recover fees and costs under Nevada's offer of judgment protocol. Finally, Leverty argues that an award of fees for litigating the enforcement of the agreement is proper under section 15 of the settlement agreement itself.

Exley did not timely file a response. On May 10, 2018, Leverty filed a reply brief. (ECF No. 101.)

On May 16, 2018, Exley filed a belated request for an extension of time to respond to the motion for sanctions. (ECF No. 105.) Leverty opposed the request. (ECF No. 106.) Judge Cooke denied the request because Exley had not demonstrated good cause or excusable neglect under Local Rule 26-4. (ECF No. 107.)

On May 25, 2018, Judge Cooke issued an order that in conformity with Local Rule 54-14, Leverty must file an itemization of the fees and costs sought and description of the work performed, as well as a  discussion of the factors set forth in Local Rule 54-14(b)(3). (ECF No. 113.) Leverty filed a supplement to the sanctions motion on June 11, 2018. (ECF Nos. 117, 117-1 to 117-5.)

## II. DISCUSSION

### A. Sanctions are Not Appropriate Under Rule 11

Leverty argues that Exley should be sanctioned under Rule 11 for his vexatious multiplication of this litigation. (ECF No. 97 at 20-21.)

Federal Rule of Civil Procedure 11 provides that when an attorney or unrepresented party signs a pleading, motion or other paper, and presents it to the court, he or she certifies that it: (a) "is not being presented for any improper purpose"; (b) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous legal argument for extending, modifying, or reversing existing law or for establishing new law"; (c) "the factual contentions have

evidentiary support or, if specifically so identified, will likely have evidentiary support after a

reasonable opportunity for further investigation or discovery"; and, (d) "denials of factual

contentions are warranted on the evidence or … reasonably based on belief or a lack of

information." Fed. R. Civ. P. 11(a), (b)(1)-(4). The court may impose appropriate sanctions for a

violation of the rule. Fed. R. Civ. P. 11(c)(1).

A motion for sanctions under Rule 11 must be separate from any other motion, and Leverty

included the request for Rule 11 sanctions in a broader motion for sanctions. Fed. R. Civ. P.

11(c)(2). In addition, a Rule 11 motion must be served under Rule 5 and cannot be filed until after

the party against whom sanctions are sought is given twenty-one days from service to withdraw or

correct the challenged conduct. *Id.* Leverty made no indication that it complied with Rule 11's safe

harbor provision.

While the court may initiate the sanction process under Rule 11 sua sponte, this would have

required the court to issue an order to show cause to have Exley demonstrate why specifically

described conduct did not violate Rule 11. Fed. R. Civ. P. 11(c)(3). This step was not taken under

Rule 11 prior to the case being reassigned; therefore, the court is not able to sua sponte order

sanctions under Rule 11 at this juncture. In any event, the court has discretion to rely on its inherent

powers rather than a federal rule or statute. *See Fink v. Gomez,* 239 F.3d 989, 993-94 (9th Cir.

2001).  For these reasons, the request for sanctions under Rule 11 should be denied.

**B. The Court's Inherent Power to Impose Sanctions**

A federal district court has inherent authority to sanction conduct abusive of the judicial

process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). The inherent power is "not

conferred by rule or statute," but exists for courts "to manage their own affairs so as to achieve the

orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct.

1178, 1186 (2017) (quotation marks and citation omitted). This power, however, is to be exercised with restraint and discretion. *Chambers,* 501 U.S. at 44. To impose sanctions under the inherent power, a court is required to make an explicit finding of bad faith or willful misconduct. *See In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003); *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Recklessness, when combined with an additional factor such as frivolousness, harassment, or an improper purpose, may support sanctions. *See In re Girardi,* 611 F.3d 1027, 1061 (9th Cir. 2010); *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001); *Fink*, 239 F.3d at 994. Mere negligence or recklessness alone will not suffice. *In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009). Thus, "sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink*, 239 F.3d at 994.

Under the court's inherent power, sanctions may include: fines, awards of attorney's fees and expenses, contempt citations, issue and evidence preclusion, default judgment and even dismissal. S*ee e.g. Goodyear,* 137 S.Ct. at 1186 (citation omitted) (one permissible sanction under court's inherent power is an assessment of attorney's fees and costs incurred by the other side); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472-73 (D.C. Cir. 1995) (fines); *Roadway Express Inc. v. Piper*, 447 U.S. 752, 765 (1980) (attorney's fees and contempt); *Fink,* 239 F.3d at 992 (citation omitted) ("the Court left no question that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Link v. Wabash R.R.*, 370 U.S. 626, 633 (1962) (upholding dismissal with prejudice for failure to prosecute).

**C. Fee Shifting & Attorney's Fees as a Sanction Under the Court's Inherent Power**

The only specific sanction requested in Leverty's motion requests is award of attorney's fees and costs.

16

The assessment of attorney's fees is within the court's power, "even though the so-called 'American Rule' prohibits fee shifting in most cases." *Chambers*, 501 U.S. at 45, 46 (citation omitted). This serves "the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy. "*Chambers*, 501 U.S. at 46 (citation and quotation marks omitted).

In a case where the court's jurisdiction is based on diversity of citizenship of the parties, such as this one, "[o]nly when there is a conflict between state and federal substantive law are the concerns of *Erie R. Co. v. Tompkins* … at issue." *Chambers*, 501 U.S. at 52. In *Chambers,* the court examined whether sanctions in the form of attorney's fees could be awarded under the court's inherent power in a diversity action where the forum state had a statute providing that attorney's fees were not allowed to a successful litigant unless authorized by statute or contract. *Id.* at 54. The Supreme Court explained that "the imposition of sanctions under the bad-faith exception [to the American Rule] depends not on which party wins the lawsuit, but on how the parties conduct themselves during litigation." *Id*. at 53. As such, "the party, by controlling his or her conduct in litigation, has the power to determine whether sanctions will be assessed." *Id.* The Supreme Court concluded that there was no conflict between the state court rule where sanctions were being imposed under the court's inherent power for conduct during litigation. *Id*. at 54.

Consistent with *Chambers,* Nevada's statutory scheme providing for an award of attorney's fees only by statute or agreement does not prevent the court from awarding fees under its inherent power for bad faith conduct in federal litigation; however, the court must now address the separate issue of whether fees may be awarded to a law firm plaintiff represented in litigation by attorneys within the firm.

**D. The Court May Impose a Sanction of Attorney's Fees Under its Inherent Power in a Diversity Action Where the Law Firm Plaintiff is Represented by Attorneys within the Firm**

In this case, there is a law firm plaintiff suing to recover fees incurred in its successful representation of a client, and the law firm is being represented by attorneys within the firm.

The Nevada Supreme Court has held that attorneys representing themselves or their law firms in litigation may not recover attorney's fees under the Nevada statute allowing fees when authorized by statute or agreement, under Rule 11, under the State's offer of judgment protocol, or under the State's prevailing party statute. *See Dezzani v. Kern*, 412 P.3d 56, 134 Nev. Adv. Op. 9 (2018) (precluded attorney representing herself and her law firm from recovering fees under both the statute allowing fees by statute or agreement and Rule 11, but allowing the recovery of costs); *Frank Settlemeyer & Sons, Inc. v. Smith & Harmer, Ltd.*, 197 P.3d 1051, 124 Nev. 1206 (2008) (prohibiting award of attorney's fees where law firm filed notice of attorney's lien and then action for recovery of fees owed where firm sought fees based on unaccepted offer of judgment); *Sellers v. Dist. Ct.*, 71 P.3d 495, 119 Nev. 256 (2003) (precluding pro se litigant who was an attorney from recovering of attorney's fees under prevailing party statute).

Neither the United States Supreme Court, the Ninth Circuit, nor the Nevada Supreme Court has specifically addressed whether an attorney representing himself or herself or his or her law firm may recover attorney's fees when awarded as a sanction under the court's *inherent power* because of another party's bad faith conduct during litigation.

In considering an appeal in a patent case from the Northern District of California, the Federal Circuit held that an attorney pro se litigant could not recover attorney's fees incurred as a sanction for a discovery violation under Rule 37, but the district court erred in failing to consider

18

whether a sanction of attorney's fees was appropriate under the court's inherent power. *Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365, 1376 (Fed. Cir. 2002). The Federal Circuit recognized "there is no federal statutory or appellate precedent for imposing attorney fees sanctions in favor of a *pro se* attorney under a court's inherent power." *Id.* at 1377.

The Federal Circuit concluded that there was "no reason why in proper circumstances [attorney fees sanctions] may not be applied in favor of a *pro se* attorney under inherent power." *Id.* The court reasoned that the "failure to do so … would place a *pro se* litigant at the mercy of an opponent who might engage in otherwise sanctionable conduct, but not be liable for attorney fees to a *pro se* party." *Id.* The court recognized that there are options other than imposing attorney's fees as a sanction, such as evidence preclusion or default judgment, but stressed that "attorney fees are such a valuable and frequently used tool in the armamentarium of trial judges that we see no reason for categorically ruling them out of consideration." *Id.*

At least two district judges within the Ninth Circuit have followed *Pickholtz* in allowing an attorney representing himself to recover attorney's fees as a sanction under the court's inherent power. *See Brown v. Stroud*, No. C-08-02348 JSW (DMR), 2012 WL 2709058, at *8 (N.D. Cal. 2012); *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1011 (D. AZ. 2011).

The court finds the reasoning of *Pickholtz* persuasive and recommends adopting this approach. The court's inherent powers are those "necessary to the exercise of all others." *Chambers*, 501 U.S. 32 (1991). They derive from the "control necessarily vested in courts to manage their own affairs" and are not "governed … by rule or statute." *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962). The court is not constrained by application of the term "incurred" which has caused courts to disallow sanctions to attorneys representing themselves or their law firms in

19

Case 21-50466, mm. Doc. 53-2   Entered 12/07/21 16:24:29   Page 21 of 42

the case of sanctions under other fee shifting statutes and Rule 37. Instead, the court imposes sanctions under its inherent power only when confronted with bad faith conduct.

While another case might present the opportunity to impose other sanctions to adequately address bad faith conduct, in this case the other available sanctioning tools are simply not practical. The court could impose a fine, but that would be arbitrary. A sanction of attorney's fees accurately reflects the time that Leverty spent addressing Exley's bad faith conduct. Issue or evidence preclusion, default judgment, and dismissal are not appropriate here as a settlement has already been enforced.

The court is not precluded from awarding attorney's fees in this case because it sits in diversity because the Nevada Supreme Court has itself not addressed an award of attorney's fees as a sanction under the court's inherent power to an attorney or law firm representing itself. As the Fifth Circuit aptly noted in the decision that was ultimately affirmed in *Chambers*:

> *Erie* guarantees a litigant that if he takes his state law cause of action to federal court , and abides by the rules of that court, the result in his case will be the same as if he had brought it in state court. It does not allow him to waste the court's time and resources with cantankerous conduct, even in the unlikely event a state court would allow him to do so.

*NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 894 F.2d 696, 706 (5th Cir. 1990).

In conclusion, the court finds it is appropriate to award attorney's fees as a sanction under the inherent power in this action involving a law firm represented by partners and associates within the law firm.

**E. The Causal Connection Requirement**

In *Goodyear*, the Supreme Court reiterated that  when attorney's fees are imposed as a sanction, it must be "compensatory rather than punitive in nature." *Goodyear*, 137 S.Ct. at 1186 (citation omitted). This means that "the fee award may go no further than to redress the wronged

party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (citation omitted). Consequently, "the court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.* In other words, there must be a causal connection between the sanction imposed and the bad faith conduct on which the sanction is based. *Id.* at 1186-87. Otherwise, the sanction is akin to punishment, which requires criminal-style procedural guarantees. *Id.* at 1186. Generally, the court cannot shift fees for work the victim of the bad faith conduct would have incurred anyway. *Id.* at 1187. The court's inquiry is focused on whether the specific litigation expenses "would or would not have been incurred in the absence of the sanctioned conduct." *Id.*

The court is still allowed to use its judgment and exercise discretion in determining the amount of the sanction. *Id.* "But … trial courts undertaking that task 'need not, and indeed should not, become green-eyeshade accountants' (or whatever the contemporary equivalent is)." *Id.* "The essential goal' in shifting fees is 'to do rough justice, not to achieve auditing perfection." *Id.* This means that the court is permitted to consider the "overall sense of a suit" and may use estimates for computing the fees.

In an "exceptional case," a district court may shift *all* the party's fees, as was done in *Chambers*. *Id.* In *Chambers*, this was appropriate because "literally everything the defendant did— 'his entire course of conduct' throughout, and indeed preceding, the litigation—was 'part of a sordid scheme' to defeat a valid claim.'" *Id.* at 1188 (quoting *Chambers*, 501 U.S. at 51, 57).

**F. Exley's Conduct that Warrants the Imposition of Sanctions**

A reading of the history of the case set out above makes it easy to conclude that Exley acted not only in bad faith, but vexatiously and wantonly to cause delay and disruption to the court,

1 and for an improper purpose. At times he was deliberately deceptive, and on various occasions he

2 acted in defiance of court orders. The sanctionable conduct includes the following:

3 **1. Filings that Were Reckless, Frivolous, Intended to Harass or for an Improper**

4 **Purpose**

5 First, Exley filed documents and motions that were not only reckless, but frivolous,

6 intended to harass or for another improper purpose, and in many cases were ultimately voluntarily

7 withdrawn when Exley was represented by counsel.

8 Initially, the answer and counter-claim filed by Exley contained many extraneous and

9 salacious statements, and positions that were simply untenable. Had Exley voluntarily withdrawn

10 the offending portions of the answer and counter-claim within a reasonable amount of time of

11 receiving the motion to dismiss and motion to strike, the court would not be assessing sanctions

12 for this conduct. Instead, Exley dragged the process out for months, refusing to acknowledge the

13 merits of the motions. In addition, he consistently disregarded courtesies from Leverty and orders

14 of the court giving him extensions of time to explain his positions in a response. Ultimately, when

15 he retained counsel, non-oppositions were filed to the motions, conceding their validity.

16 Instead of responding to the motion to dismiss and motion to strike, as he implied he would

17 in requesting various extensions, he filed a motion to amend the counter-claim to add a violation

18 of the ABA rules of professional conduct containing more insults against Leverty, disjointed and

19 distorted factual allegations, and spurious claims. This motion too was ultimately withdrawn by

20 Exley's counsel.

21 Then, Exley filed a motion for a change of venue even though the underlying case had been

22 litigated in Douglas County, the real property was in Nevada, Leverty was in Nevada, and Exley

23

himself had removed the action to the federal district court for the District of Nevada. Once again, the motion was withdrawn.

Yet another example is when Exley took pains to oppose a motion by Leverty to file a document under seal, only to then file his own motion to seal where he copied Leverty's request to seal documents.

**2. The Continued Involvement of Ms. Loza in Legal Research and Drafting in the Case**

Second, Exley engaged in bad faith conduct with respect to the continued involvement of Ms. Loza in the research and drafting of documents submitted to the court despite Judge Cooke's admonitions that she was engaging in the unauthorized practice of law. When Judge Cooke became aware that Exley was utilizing his wife to litigate his case, it necessitated another status conference on June 20, 2017, that Leverty was required to prepare for and attend. It was apparent throughout the litigation that despite Judge Cooke's warnings that Ms. Loza could not assist in litigating this matter for Mr. Exley, she continued to do so.

**3. Failure to Follow Court Orders**

Third, Exley frequently deliberately failed to follow court orders.

Exley failed to file briefing after requesting and being granted various extensions of time in connection with Leverty's motion to dismiss and motion to strike to which Exley ended up filing non-oppositions.

Then, Exley failed to personally appear at June 20, 2017, case management conference, despite a court order, which resulted in the issuance of an OSC, on July 27, 2017, which Leverty was also required to prepare for and attend.

Exley even failed to file a timely response to the motion for sanctions, despite being given another opportunity when he failed to address the topic when it was raised in the motion to enforce the settlement agreement.

### 4. Refusal to Sign the Settlement Agreement

Finally, the conduct that perhaps most exhibits bad faith and a deliberate intention to thwart the judicial process is Mr. Exley's refusal to sign the written settlement agreement after countless hours were spent by the court, court staff, parties and attorneys to prepare for and reach a resolution of this case. This, in turn, required Leverty to file a motion to enforce the agreement, and consequently the expenditure of a significant amount of time and effort by the court and Leverty.

In *Doi v. Halekulani*, the Ninth Circuit held that the district court was within its discretion to impose sanctions under its inherent power where it had enforced a settlement against a party who refused to sign the written agreement after agreeing to the terms in open court. 276 F.3d 1131, 1140-41 (9th Cir. 2002). The Ninth Circuit emphasized that federal judiciary resources are "strained to the breaking point"; therefore, it could not "countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her." *Id*. at 1141. "The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation." *Id*.

"Needless satellite litigation" is exactly what occurred here when Exley refused to sign the settlement agreement after agreeing to its essential terms in open court. The court could not agree more with the Ninth Circuit that this type of behavior cannot be condoned. Judge Cooke and her staff, the parties and attorneys (on both sides) all took time to prepare for the settlement conference in this case, and then spent most of a day pursuing a resolution of this action. The record is crystal clear that Exley and Ms. Loza agreed to the essential terms, and specifically represented they could

bind Athena. Judge Cooke made sure to clarify each one of the terms with precision and confirmed that each of the parties and attorneys understood and agreed to the terms.

This was followed up with attorneys on both sides taking great effort to create a written document that reflected that agreement. All this was done, only to be disavowed by Exley. This, of course, necessitated the expenditure of a great deal more time on briefing for the motion to enforce the settlement, and attendance at the hearing on the motion. The settlement was ultimately enforced by District Judge Du on the recommendation of Judge Cooke.

For refusing to sign the settlement agreement, Leverty should recover the fees for time spent: negotiating with Exley's counsel after Leverty was informed, contrary to the representations made in court, that Exley and Ms. Loza could not bind Athena; on the motion to enforce the settlement agreement; on the reply brief filed in response to Exley's opposition, which was disjointed and contained a dearth of extraneous arguments and information; opposing Exley's various motions to continue the hearing which Judge Cooke denied; preparing for and attending the hearing that turned out to be quite lengthy; and, on the opposition to Exley's objection to the court's denial of his motion to vacate the settlement agreement (which was overruled by Judge Du).

**G. Fees Should Not be Awarded Where there is no Causal Connection to the Misconduct**

**1. Informal Efforts to Settle the Case**

Leverty seeks to recover 11.9 hours-worth of fees for informal negotiations to reach a settlement that were unsuccessful in May and June of 2017, asserting that Exley made things more difficult and was constantly changing the terms and backing out of things he previously agreed to.

The court cannot say that the 11.9 hours would not have been spent but for Exley's bad faith conduct. Informal settlement discussions are a typical aspect of most cases, and just as typical

are negotiations that are made more difficult because a party is representing himself or herself. The court does not countenance Exley's behavior in connection with these negotiations, but it cannot conclude based on the limited information about these negotiations in the record that this conduct was in bad faith or was tantamount to bad faith.

**2. Fees for Opposing Exley's Motion to Appear at the OSC and Settlement Conference by Telephone**

While Leverty says that this motion was filed in bad faith, that argument is not supported by the record. Judge Cooke ultimately granted the motion. While she was reluctant to do so, that was the outcome, and the court cannot discern bad faith under these circumstances.

**3. Discovery**

Leverty seeks to recover fees for preparing discovery requests to Exley (15.08 hours). Leverty would have had to prepare discovery to Exley in any event. Therefore, Leverty should not be allowed to recover these fees.

Counsel for Exley, Ms. Kerr, eventually served inadequate responses which necessitated meet and confer correspondence and communications. Updated responses to the requests for admission were sent, but not the interrogatories or requests for production. Leverty did not file a motion to compel because discovery had been stayed pending the outcome of the settlement conference, which was just weeks away.

Leverty seeks to recover for 13.5 hours spent in the meet and confer process. (ECF No. 117 at 6.) The question is whether Leverty can recover fees for the meet and confer process when no motion to compel was ever filed, and sanctions were not sought under Rule 37.

In *Chambers*, the Supreme Court held that a federal court is not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned

26

under the statute or the Rules." *Chambers*, 501 U.S. at 50. The Court cautioned, however, that district courts must "exercise caution in invoking [their] inherent power, and … must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees[.]" *Id*. (citation omitted). "Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id*. If, "in the informed discretion of the court, neither the statute nor the Rules are up to task, the court may safely rely on its inherent power." *Id*.

Here, the court finds sanctions under the inherent power are inappropriate for two reasons. First, Leverty could have availed itself of the tools under the Rules for addressing perceived misconduct in the discovery arena—namely, a motion to compel and a request for sanctions under Rule 37. Leverty made a tactical decision to defer that action because a settlement conference was on the horizon, but those avenues were still available. Second, the meet and confer process was conducted through Leverty's communications with Exley's then counsel and not Exley himself. The court cannot determine that the meet and confer process was due to Exley's own bad faith. Therefore, inherent power sanctions for time spent on the meet and confer process should not be awarded.

**4. The June 1, 2017, Case Management Conference**

Leverty seeks to recover fees in connection with attending the June 1, 2017, case management conference, as well as for post-conference discussions. This was the initial case management conference held by Judge Cooke in the case, which Leverty would have been required to attend in any case. While Exley's behavior at subsequent conferences justify the recovery of fees, there is no causal connection between any misconduct and Leverty having to attend this particular case management conference.

**5. Opposing Exley's Motion to Avoid Appearing in Person**

Exley, through Mr. McGuffin, filed a motion to appear at the OSC hearing by telephone. (ECF No. 40.) Leverty seeks to recover for 9.3 hours spent opposing this motion. Exley's motion, in comparison to most of Exley's other filings, was concise and straightforward, and was ultimately granted by Judge Cooke, albeit reluctantly. Therefore, the court cannot conclude that this work was tied to Exley's bad faith conduct.

**6. Fees for Drafting the Settlement Conference Statement and Appearing for the Settlement Conference, Including Fees for Time Mr. Ginn Spent Traveling to Reno**

Leverty indicates that 35.65 hours were spent preparing for and drafting its settlement conference statement, and 18.25 hours were spent attending the show cause hearing and settlement conference. While Leverty should recover fees for having to attend the show cause hearing because of Exley's misconduct, fees should not be allowed for drafting the settlement conference statement or attending the settlement conference, which Leverty was required to do regardless of Exley's conduct.

Mr. Ginn also seeks fees for the 3.25 hours he spent traveling to Reno for the OSC and settlement conference. The attorneys representing Leverty were required to attend the settlement conference regardless of Exley's conduct preceding or after the settlement conference. Moreover, the docket reflects that both the Leverty firm and Mr. Ginn are in Reno. Therefore, the fees for travel should not be awarded.

**7. Finalizing the Settlement Agreement**

Leverty requests fees for finalizing the settlement agreement—19.2 hours from the conclusion of the settlement conference through the date Exley terminated Mr. McGuffin. The court cannot conclude that Leverty would not have spent the time finalizing the agreement in any

event. The only exception to this is the communications that Mr. Ginn was required to have with Mr. McGuffin when Exley apparently changed the position he and Ms. Loza had taken at the settlement conference that they could bind Athena. Leverty should be able to recover fees for reviewing Mr. McGuffin's August 23, 2017 letter on this issue; Mr. McGuffin's response of September 25, 2017; and, the September 26, 2017 telephone conference between the two hashing out the terms in light of this issue.

### 8. Exley's Motion for ADA Accommodations

Leverty seeks fees for 5.7 hours spent opposing Exley's request for ADA accommodations. On November 28, 2017, Exley filed a request for ADA accommodations and supporting declaration. (ECF No. 69.) The motion cites his health issues and asked that court sessions be held in the morning, and that he be allowed to appear telephonically. Judge Cooke denied the motion as moot because she had not issued any order requiring Exley's future appearance in court. Judge Cooke did not conclude the motion was brought in bad faith or for an improper purpose, and she had previously allowed him to appear telephonically because of his various medical ailments. Therefore, the court cannot conclude that the request for accommodations was brought in bad faith or an improper purpose.

### 9. Fees for Time Mr. Ginn Spent Traveling to Reno for the Hearing on the Motion for Enforcement of the Settlement Agreement

Mr. Ginn seeks to recover fees and costs for travel to the hearing on the motion to enforce the settlement agreement before Judge Cooke on February 21, 2018. While Exley certainly necessitated the filing of the motion, Mr. Ginn and the Leverty firm are in Reno, Nevada, and his was a hearing on Leverty's own motion. If the hearing date conflicted with travel plans abutting

1  the hearing date, Mr. Ginn could have requested another date. The court cannot conclude that

2  Mr. Ginn's travel from outside of Reno was necessitated by Mr. Exley's conduct.

3      **10. Other Unspecified Fees**

4      Leverty references another 34.69 hours not specifically identified in their initial filing,

5  which include preparing initial disclosures, attending the early case conference, preparing the joint

6  case conference report, telephone calls with counsel, and other routine items, as well as fees for

7  work on motions that were ultimately unfiled. For this type of routine litigation work, there is no

8  causal connection to Exley's bad faith conduct; therefore, these fees should not be awarded. Nor

9  can the court discern a causal connection between Exley's bad faith conduct and the documents

10  that Leverty never even filed. Therefore, these fees should also be disallowed.

11  **H. Computation of Fees**

12      **1. Standard**

13      In cases where attorney's fees are awarded as a sanction under the court's inherent power,

14  courts have applied traditional methods for calculating the fee award, including reference to local

15  rules and the lodestar analysis. *See e.g. Lahiri v. Universal Music and Video Distrib. Corp.*, 606

16  F.3d 1216, 1222-23 (9th Cir. 2010); *Sanchez v. Bank of America*, No. 09-5574 SC, 2010 WL

17  2889033, at * 4-5 (N.D. Cal. July 22, 2010); *Mr. Rooter Corp. v. Mr. Plumber, Rooter and*

18  *Plumbing Servs., LLC,* No. 3:07-cv-00156-LRH-RAM, 2008 WL 4533978 (D. Nev. Oct. 6, 2008).

19      **2. Local Rule 54-14**

20      Local Rule 54-14(b) requires a request for attorney's fees to include: (1) a reasonable

21  itemization and description of the work performed; (2) an itemization of all costs sought to be

22  charged as part of the fee award; (3) a brief summary of: (A) the results obtained and amount

23  involved; (B) the time and labor required; (C) the novelty and difficulty of the questions involved;

(D) the skill requisite to perform the legal service properly; (E) the preclusion of other employment by the attorney due to acceptance of the case; (F) the customary fee; (G) whether the fee is fixed or contingent; (H) the time limitations imposed by the client or circumstances; (I) the experience, reputation and ability of the attorney(s); (J) the undesirability of the case; (K) the nature and length of the professional relationship with the client; (L) awards in similar cases; and (M) any other requested information. The request must also be accompanied by an affidavit from the attorney responsible for the billings in the case authenticating the information, and confirming the fees and costs charged are reasonable. LR 54-14(c). When no response is filed, as is the case here, the court may grant the motion after conducting an independent review of the record. LR 54-14(e).

The court will address the 54-14(b)(3) factors, except that the customary fee factor will be addressed, *infra*, and some of the factors do not apply given that this case involves a law firm being represented by attorneys within the firm.

There is no question that Leverty obtained a successful result in this case, and that the time and labor required were significant, especially given the limited nature of the substantive issues of the complaint. While the claims were not novel or difficult, Exley's conduct made difficulty the norm throughout this litigation. The claims asserted did not require any special skill; however, navigating and responding to Exley's filings surely did. This case undoubtedly burdened the other work these attorneys were performing. The attorneys involved all have a good reputation before this court. Finally, it is fair to say that anytime an attorney must sue a client for fees, it is an undesirable case.

**3. The Lodestar Analysis**

When a party establishes it is entitled to an award of attorney's fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433

1   (1983). A determination of whether a fee is reasonable is generally based upon the traditional

2   "lodestar" calculation set forth in *Hensley*. First, the court must determine a reasonable fee by

3   multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.

4   *Id*. Second, the court must decide to adjust the lodestar amount based on an evaluation of factors

5   articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), that have not been

6   subsumed in the lodestar calculation. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir.

7   2000) (citation omitted). The factors include those set forth in Local Rule 54-14. The court has

8   discretion to adjust the amount awarded to address excessive and unnecessary effort, and as such

9   may exclude hours that are excessive, redundant or otherwise unnecessary. *Id*.

10              **a. Reasonable Hourly Rate**

11          Reasonable hourly rates are determined by the "prevailing market rates in the relevant

12   community." *Blum v. Stevenson*, 465 U.S. 886, 895 (1984); *Moreno v. City of Sacramento*, 534

13   F.3d 1106, 1111 (9th Cir. 2008). The burden is on the moving party to demonstrate the requested

14   rates are in line with those in the community for similar services by lawyers of reasonably

15   comparable skill, experience and reputation. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir.

16   2001) (internal quotation marks and citation omitted). Affidavits or declarations of the moving

17   attorney and other attorneys regarding prevailing rates in the community are sufficient evidence.

18   *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citations

19   omitted). The court may also rely on its own familiarity with the rates in the community to assess

20   those sought in the pending case. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

21          The determination is not made by "reference to the rates actually charged by the prevailing

22   party." *Schwarz v. Sec. of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (citation

23   omitted).

32

Three attorneys were involved in working on this case: Vernon E. Leverty (VEL), William R. Ginn (WRG), and Jess P. Rinehart (JPR). They were granted fees in the underlying State court litigation at the rates of $350, $300, and $200, respectively. (Ginn Decl., ECF No. 97 at 24 ¶¶4-5.) In the reply brief, Leverty seeks increased hourly rates of $450 for Mr. Leverty, $400 for Mr. Ginn, and $350 for Mr. Rinehart. (ECF No. 101 at 9.) Leverty cites a recent District of Nevada (in the unofficial southern division in Las Vegas) case awarding fees at hourly rates of $450 per hour for an attorney with 30 years of experience, and $375 for an attorney with 12 years of experience (in that case, the court also approved the hourly rate of $250 for an associate with seven years of experience). (ECF No. 101 at 9, citing *SVI, Inc. v. Supreme Corp.*, No. 2:16-cv-01098-JAD-NJK, 2018 U.S. Dist. Lexis 69727, at *7 (2018 WL 1718560) (D. Nev. Apr. 9, 2018)). In the supplement to the motion for sanctions, Leverty indicates that Mr. Leverty's normal hourly rate for litigation is $450 hour, Mr. Ginn's is $350-$400, and Mr. Rinehart's is $250-$275. (ECF No. 117 at 13; Ginn Decl., ECF No. 117-3 ¶ 7.) The supplement cites another case from the unofficial southern division of the District of Nevada, *Cohen v. Gold*, No. 2:17-cv-00804-JAD-NJK, 2018 WL 1308945, at *7 (D. Nev. Mar. 12, 2018), where the court found that a rate of $250 was reasonable for an attorney with five years of experience.

In 2011 and 2015, rates of $400 and $450 for lawyers with thirty-plus years of experience were approved in cases in the unofficial northern division of the District of Nevada. *See Doud v. Yellow Cab*, 3:13-cv-00664-WGC (Terry Keyser-Cooper, Esq. requested and received an hourly rate of $400); *Van Asdale v. Int'l Game Tech.*, Case No. 3:04-cv-00703-RAM (Margo Piscevich, Esq. requested and received an hourly rate of $450). In the *Doud* case, the court also approved the hourly rate of $350 for an attorney who had been practicing for 20-plus years.

33

1      Mr. Leverty has 47 years of experience; Mr. Ginn indicates that he has been practicing for

2 19 years; and, Mr. Rinehart has nine years of experience. (ECF No. 97 at 27 ¶ 17; ECF No. 101 at

3 9; Ginn Decl., ECF No. 117-3; Leverty Decl., ECF No. 117-4; Rinehart Decl., ECF No. 117-5.)

4      Based on Mr. Leverty's experience, and the fact that the court has awarded this rate to

5 practitioners with 30-plus years of experience, the requested rate of $450 per hour is reasonable.

6 The court will approve the high-end of Mr. Ginn's customary hourly rate of $375, based on the

7 approval of a rate of $350 for an attorney with similar experience in 2015. Finally, the court will

8 approve an hourly rate of $275 for Mr. Rinehart based on his nine years of experience, his

9 customary rate, and the court's own familiarity with rates in this legal community.

10               **b. Reasonableness of the Time Spent**

11          **i. Motion to Dismiss,  Motion to Strike, and Related Work**

12      Leverty spent 16.25 hours on work associated with the motion to dismiss and motion to

13 strike, which is broken down as follows: 9.95 hours drafting the motions (and communications

14 regarding an extension for a response) (2.2 by VEL and 7.75 by WRG); 3.25 hours drafting the

15 first set of replies (WRG); 2.75 hours drafting the second set of replies (WRG); and, .3 hours on

16 the third and final reply (WRG). In addition, 6.6 (WRG) hours were spent opposing Exley's motion

17 for an extension of time and on the response to Exley's errata.

18      The court finds the time spent drafting the motions and first set of replies to be reasonable.

19      The court finds that the 2.75 hours spent on the second set of replies to be unreasonable.

20 The second set of replies contain a page and a half of substantive information, much of which is

21 copied from the initial replies, and is followed by Mr. Ginn's declaration and exhibits that were

22 also provided with the initial replies. The court recommends limiting the recovery for the second

23 set of replies to .75 hours.

The final .3 hours spent (WRG) on the third reply brief is reasonable.

The court likewise finds reasonable the time spent opposing Exley's motion for extension of time and errata. These two filings were difficult to comprehend, requiring the court and the parties to wade through a vast amount of information that was ultimately immaterial to the request for extension of time. The filings also contained many salacious accusations and other arguments about the merits of the case that Leverty was required to address.

In sum, Leverty should be able to recover the following: 2.2 hours for Mr. Leverty and 18.65 hours by Mr. Ginn in connection with work related to the motion to dismiss and motion to strike.

### ii. Motion for Leave to Amend

Mr. Ginn spent 5.45 hours opposing Exley's motion for leave to amend that was ultimately withdrawn when Exley retained counsel, which the court finds reasonable.

### iii. Exley's Change of Venue

17.85 hours were spent by Mr. Ginn in opposing Exley's motion for change of venue. A review of the response to the motion reveals a lengthy retort, which is supported by extensive research, declarations, as well as exhibits. The court finds this to be reasonable.

### iv. June 20, 2017 Case Management Conference

This is the case management conference ordered by Judge Cooke that Exley failed to personally attend. Mr. Ginn spent 4.5 hours preparing for the hearing. Then, Mr. Ginn and Mr. Leverty each spent .75 hours attending the hearing. The court finds this to be reasonable.

### v. Attending the OSC Hearing on July 27, 2017

Mr. Leverty and Mr. Ginn each spent 7.2 hours attending the OSC and settlement conference that date. The attorneys would have been required to attend the settlement conference

regardless of Mr. Exley's conduct necessitating the OSC. Therefore, it is reasonable to allow recovery of fees for attending the OSC hearing before the settlement conference, but not for attending the settlement conference. The OSC commenced at 9:06 a.m. and adjourned at 9:20 a.m. (ECF No. 45); therefore, .3 hours for Mr. Leverty and .3 hours Mr. Ginn to attend the OSC is reasonable.

### vi. Negotiating and Finalizing the Written Settlement Agreement

Again, Leverty would have had to engage in work to negotiate and finalize the written agreement following the settlement conference regardless of Exley's subsequent failure to execute the agreement. Therefore, fees for engaging in this work should not be allowed, except that: Leverty should be able to recover fees for Mr. Ginn's review Mr. McGuffin's August 23, 2017 letter on this issue; his September 25, 2017 response; and the September 26, 2017 telephone conference between the two hashing out the terms.

Leverty's filings do not contain a separate itemized entry for the review of the August 23, 2017 letter, but the court finds .3 hours is a reasonable amount to award for this task by Mr. Ginn. The records reflect that Mr. Ginn spent .3 in drafting the September 25, 2017 email to McGuffin, and .9 hours on the telephone call with McGuffin on September 26, 2017. The total for these three tasks is 1.5 hours.

### vii. Motion to Enforce the Settlement and Related Filings

46.35 hours were spent drafting the motion to enforce the settlement agreement and the motion to seal, opposing Exley's motions, and drafting reply briefs. Of that, 44.1 hours were spent by Mr. Ginn and 2.25 hours by Mr. Leverty. The court has reviewed the billing attributed to these filings (ECF No. 117 at 9) and finds the time spent to be reasonable under the circumstances.

**viii. Opposition to Exley's Objection to Denial of his Motion to Vacate the Settlement Agreement**

Exley filed a document which was styled as an objection to Judge Cooke's denial of his motion to vacate the settlement agreement. (ECF No. 70.) It contained a lengthy history of Exley's version of events leading up to the settlement agreement; an unsuccessful res judicata argument; criticism of Judge Cooke's decisions; as well as unsubstantiated claims that the settlement was one-sided.

Mr. Ginn spent 5.2 hours preparing a response to the objection, which the court finds to be reasonable. (ECF No. 72.)

**ix. Hearing on Motion to Enforce the Settlement**

Leverty seeks to recover a total of 24.9 hours in connection with the hearing on the motion to enforce the settlement agreement, including reviewing communications from the court and Exley's motions to continue the hearing, preparation for and attending the hearing, as well as Mr. Ginn's travel to and from Burbank for the hearing.

Leverty should be allowed to recover fees for reviewing communications from the court regarding the hearing and Exley's motions to continue the hearing, and for preparation and appearing at the hearing. As was discussed above, Leverty should not recover fees for Mr. Ginn's travel to and from Reno.

In sum, Leverty may recover the following fees in connection with the hearing on the motion to enforce the settlement agreement: 3.15 hours for Mr. Leverty; 3.6 hours for Mr. Rinehart; and, 7.9 hours for Mr. Ginn.

///

///

37

### c. Total Fees

The total amount of fees is **$45,045**. This is calculated as follows: 8.65 total hours for Mr. Leverty at a rate of $450 is $3,892.50; 107.1 total hours for Mr. Ginn at a rate of $375 is $40,162.50; and, 3.6 hours for Mr. Rinehart at a rate of $275 is $990.

### d. Costs

Leverty also seeks to recover costs in the amount of $2,640, which includes: $884.90 in copying costs, $1,024.92 in legal research costs, $263.50 in filing fees, $20.10 in postage, $361.34 in travel/lodging costs, and $59 for service of process. (ECF No. 117 at 14, ECF No. 97-6.)

Here, costs are sought as a sanction under the court's inherent power, and not as a prevailing party under Rule 54. Therefore, there must be a causal connection between the bad faith conduct and the sanction imposed, which Leverty has failed to demonstrate.

Leverty may, however, recover costs under Nevada's offer of judgment protocol, which is discussed below.

## I. NRCP 68

Here, Exley rejected Leverty's offer of judgment, and Leverty ended up obtaining a settlement for payment of attorney's fees in the underlying litigation which District Judge Du ordered as a judgment. The Nevada Supreme Court has specifically held that an attorney or law firm representing itself in an action to recover fees is not entitled to recover attorney's fees under Nevada's offer of judgment protocol. *Frank Settlemeyer & Sons, Inc. v. Smith & Harmer, Ltd.*, 197 P.3d 1051, 1060-61, 124 Nev. 1206, 1220 (2008). Therefore, Leverty is not entitled to recover post-offer attorneys' fees under NRCP 68; however, it may recover its post-offer costs under Rule 68.

In Nevada, a court has discretion in determining what expenses to allow as costs. *See Bergmann v. Boyce*, 856 P.2d 560, 565-66, 109 Nev. 670, 679 (1993) (citations omitted). "[C]osts must be reasonable, necessary, and actually incurred." *Cadie Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1054, 131 Nev. —(2015). A request for an award of costs must contain justifying documentation that demonstrates how the costs were necessary to and incurred in the action. *Bobby Berosini, Ltd. v. PETA*, 971 P.2d 383, 386, 114 Nev. 1348, 1352-53 (1998). This means "something more than a memorandum of costs." *Cadie*, 345 P.3d at 1054. For example, in *Cadie*, the Nevada Supreme Court said that a request for photocopying costs must be supported by documentation substantiating the reason for the copy. *Id*. (citation omitted).

Preliminarily, Leverty may not recover its legal research costs because the Nevada Supreme Court has held that computer-aided research is not a recoverable cost. *Bergmann*, 856 P.2d at 566-67.

As to the remaining costs, Leverty's initial motion only contains a ledger listing costs with no explanation as to how the costs were necessary to the action. (*See* ECF No. 97-6 at 2-3.) The supplement identifies the actual costs sought (ECF No. 117 at 14), but again, it does not contain any explanation about the costs sought. For these reasons, costs should not be allowed under NRCP 68.

**J. Request for Costs and Fees Incurred in Enforcing the Settlement Agreement Under the Agreement Itself**

Leverty included an argument that it can recover fees and costs related to enforcement of the settlement agreement itself. The Nevada Supreme Court's decisions in *Dezzani*, *Settlemeyer* and *Sellers* preclude Leverty's recovery of attorneys' fees under the settlement agreement itself, but the court has recommended that these fees be awarded under the court's inherent power.

Leverty did not provide any explanation specifically connecting any of the requested costs to the litigation to enforce the settlement agreement, and more broadly, did not explain how the costs sought were reasonable and necessary. Therefore, Leverty should not recover costs under the terms of the settlement agreement itself.

## III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Leverty's motion for sanctions. Sanctions should be imposed against Exley under the court's inherent power, but not to the extent requested. Sanctions should not be imposed under Rule 11. Sanctions should not be imposed under State law under either NRCP 68 or the language of the settlement agreement itself. Leverty's request for costs should be denied. Leverty should be awarded  and Exley sanctioned in the amount of: **$45,045.** Exley should be required to pay this amount within 30 days of any order adopting and accepting this Report and Recommendation.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

///

///

///

///

Case 21-50466-nmc Doc 53-2 Entered 12/07/21 16:24:29 Page 42 of 41

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: November 5, 2018.

_____
William G. Cobb
United States Magistrate Judge